

**U.S. Department of Justice**
United States Attorney
Northern District of Texas

*1100 Commerce St. 3rd Floor*     *Telephone (214) 659-8600*
*Dallas, Texas 75242*     *Fax (214) 659-8602*

August 15, 2019

Lyle W. Cayce, Clerk
United States Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA  70130-3408

Re:    Government's letter brief
       *In Re: Orlando Hall*, No. 19-10345

Mr. Cayce:

The government responds as follows to the Court's July 9, 2019, directive for letter briefs addressing the effect of *United States v. Davis*, 139 S. Ct. 2319 (2019), on Hall's request for authorization to file a successive 28 U.S.C. § 2255 motion.  In short, *Davis* has no impact on Hall's convictions or sentences, so this Court should deny his request for authorization.

*Davis* invalidated the definition of "crime of violence" set out in 18 U.S.C. § 924(c)(3)(B)'s residual clause.  But *Davis* had no impact on 18 U.S.C. § 924(c)(3)(A)'s elements clause.  Kidnapping resulting in death—the offense on which Hall's Section 924(c) was predicated—is a crime of violence under the elements clause.  Hall thus cannot make a prima facie showing that he will benefit from the rule of *Davis*, and his application should be denied.

1.    **A jury finds Hall guilty of kidnapping resulting in death, carrying a firearm during that crime of violence, and other unchallenged convictions.**

Hall's coconspirators shattered the glass door of an apartment with a baseball bat.  *See United States v. Hall*, 152 F.3d 381, 389 (5th Cir. 1998). Inside, a 16-year old high-school student was on the phone with 9-1-1.  *Id.*  She was tackled and dragged to a car where Hall and another man were waiting.

*Id.* Hall raped her. *Id.* She was then driven to Arkansas, where she was tied to a chair and raped repeatedly. *Id.* The next day, Hall and a co-conspirator went into the bathroom with her; Hall came out and told his coconspirator that she "kn[e]w too much." *Id.* Hall dug her grave in a nearby park, and he led her—blindfolded—to the grave site. *Id.* at 389-90. He covered her head with a sheet and then hit her in the head with a shovel. *Id.* at 390. She tried to flee, but she was tackled. *Id.* at 390. Hall and another man then took turns hitting her with the shovel. *Id.* The other man then gagged her, dragged her into her grave, poured gasoline over her, and buried her. *Id.*

The United States charged Hall with interstate kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) (Count One), conspiracy to commit kidnapping (Count Two), traveling in interstate commerce to promote possession of marijuana with intent to distribute (Count Three), and with using or carrying a firearm during and in relation to a crime of violence (Count Six). *See United States v. Hall*, 4:94-CR-121-Y-2, Dkt. No. 15 (N.D. Tex. Nov. 22, 1994) (Superseding Indictment).[1] At the guilt phase, the district court instructed the jury as to the elements of Count One:

> First: That the defendant, knowingly acting contrary to the law, kidnapped, seized, confined, or inveigled the person described in the indictment, Lisa Rene, as charged;
>
> Second: That the defendant held such person for ransom, reward, or some other benefit that the defendant intended to derive from the kidnapping;
>
> Third: That the defendant intentionally transported such person in interstate commerce while so kidnapped, confided, or inveigled; and

---

[1] Specifically, Count Six alleged that the four named defendants "aided and abetted by each other, did knowingly use and carry, firearms, during and in relation to a crime of violence, namely, kidnapping in violation of [18 U.S.C § 1201(a)(1)] and conspiracy to commit kidnapping, in violation of [18 U.S.C. 1201(c)]." *See Hall*, 4:94-CR-121-Y-2, Dkt. No. 15 at 8.

Fourth: That the death of Lisa Rene resulted.

*Hall*, 4:94-CR-121-Y-2, Dkt. No. 444 at 10. And to find Hall guilty of Count Six—the Section 924(c) count—the court instructed the jury that it must find:

First: That the defendant committed the crime of interstate kidnapping *as alleged in Count One of the Indictment*; and

Second: That the defendant knowingly used or carried a firearm during and relation to the defendant's commission of the crime of interstate kidnapping.

*Hall*, 4:94-CR-121-Y-2, Dkt. No. 444 at 16 (emphasis added).

The jury found Hall guilty on all four counts, and—following the penalty phase—recommended that Hall be sentenced to death on Count One. *See Hall*, 152 F.3d at 390. The district court sentenced Hall to death on Count One, a term of life in prison on Count Two, a concurrent, 60-month term on Count Three, and a consecutive term of 60 months on Count Six. *Id.*

## 2. This Court affirms Hall's conviction in 1998 and denies his request for successive authorization in 2016.

This Court affirmed Hall's conviction and sentence in 1998. *See id.* at 389. In 2006, this Court affirmed the denial of Section 2255 relief. *See United States v. Hall*, 455 F.3d 508 (5th Cir. 2006). And it denied Hall's request to file a successive Section 2255 motion in 2016. *See In re: Hall*, No. 16-10670 (5th Cir. June 20, 2016).

Hall now seeks permission to file a successive Section 2255 motion.

## 3. This Court should again deny successive authorization because Hall cannot show that he benefits from the rule of *Davis*.

## A. Hall does not satisfy the standards that govern this Court's gatekeeping role.

To warrant authorization, Hall must show that his proposed Section 2255 motion contains either newly discovered evidence that would establish his innocence or "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *See* 28 U.S.C. § 2255(h); *see also Reyes-Requena v. United States*, 243 F.3d 893, 897-99 (5th Cir. 2001). It is not enough to simply invoke a new, retroactively-applicable rule of constitutional law. *See In Re Robinson*, 917 F.3d 856, 868-69 (5th Cir. 2019). Hall must at least make a prima facie showing that the new rule entitles him to relief. *See id.* (denying successive authorization where the movant failed to make a prima facie case that his claim had "possible merit" under the rule on which he relied).

Hall relies on Section 2255(h)'s "new rule" prong to argue that *Johnson v. United States*, 135 S. Ct. 2551 (2015)—and now *Davis*—invalidated Section 924(c)'s residual clause. *See In Re: Hall*, No. 19-10345, Dkt. No. 1 at 7-8 (5th Cir. Mar. 28, 2019). Hall argues further that his predicate offense does not satisfy Section 924(c)'s force clause, so the district court must vacate his Section 924(c) conviction and order a resentencing on all four counts. *Id.* at 9-10. Hall is wrong that he benefits in any way from the rule of *Davis*.

**B.    Hall cannot benefit from the rule of *Davis* because the challenged conviction does not depend on Section 924(c)'s residual clause.**

Section 924(c) criminalizes using or carrying a firearm during and in relation to "any crime of violence." 18 U.S.C. § 924(c)(1)(A). Section 924(c) defines the phrase "crime of violence" in two, alternative provisions. Section 924(c)(3)(A) defines it as a felony that "has an element the use, attempted use, or threatened use of physical force against the person or property of another." This subsection is known as the "elements clause." Section 924(c)(3)(B) defines "crime of violence" as a felony "that[,] by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." This subsection is known as the "residual clause." *Davis*, 139 S. Ct. 2323-24.

In *Davis*, the Supreme Court struck down as unconstitutionally vague the residual clause. *Id.* at 2336. But *Davis* has no impact on Section 924(c)(3)(A)'s definition of "crime of violence" under the elements clause.

*In Re Hall*, No. 19-10345
Government's letter brief – 4

*Davis* does not render Hall's conviction on Count Six invalid because his predicate crime of violence—kidnapping resulting in death under 18 U.S.C. § 1201(a)—qualifies as a "crime of violence" under Section 924(c)(3)(A)'s elements clause: it has as an element the use, attempted use, or threatened use of physical force against the person or property of another. To argue otherwise, Hall's application for authorization claims that his Section 924(c) conviction was predicated on either kidnapping or conspiracy to commit kidnapping and that neither of those offenses satisfies the elements clause. *See In Re: Hall*, No. 19-10345, Dkt. No. 1 at 9-10. But his application does not address whether Section 1201(a) is divisible or acknowledge that the jury found him guilty of a kidnapping offense that required it to find an additional element—that the kidnapping resulted in death.

To determine whether an offense falls within the elements clause, courts generally apply a "categorical approach." *See, e.g.*, *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (describing categorical approach in context of Armed Career Criminal Act). Where, as here, the statute of conviction lists multiple alternative elements, as opposed to alternative means of committing a single element, it is "divisible" into different offenses. *Id*. at 2249. To classify a conviction under a divisible statute, a court may "look[ ] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, [the] defendant was convicted of." *Id.*; *see United States v. Reyes-Contreras*, 910 F.3d 169, 174 (5th Cir. 2018) (en banc).

Because the death-results provision of the kidnapping statute triggers an enhanced penalty, 18 U.S.C. § 1201(a) (increasing the sentencing range if "the death of any person results"), that provision is an element of the aggravated offense of kidnapping resulting in death. *See Burrage v. United States*, 571 U.S. 204, 210 (2014) ("Because the 'death results' [penalty] enhancement [in 21 U.S.C. § 841(b)] increased the minimum and maximum sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt."); *United States v. Ruiz-Hernandez*, 890 F.3d 202, 210 (5th Cir.) ("resulting-in-death element" in 8 U.S.C. § 1324(a)(1)(B)(iv) "increases the applicable statutory maximum sentence and thus must be submitted to the jury and found beyond a reasonable doubt"), *cert. denied*, 139

S. Ct. 278 (2018); *United States v. Lentz*, 524 F.3d 501, 512 (4th Cir. 2008) ("death resulted" is an essential element of the offense of kidnaping resulting in death). The kidnapping statute is therefore divisible into different offenses— kidnapping that does not result in death and kidnapping that does result in death. And the jury found Hall guilty of kidnapping that resulted in the death of Lisa Rene and of carrying a firearm during *that* crime of violence. *Hall*, 4:94-CR-121-Y-2, Dkt. No. 444 at 10, 16.

Moreover, kidnapping resulting in death has as an element the use, attempted use, or threatened use of physical force against the person or property of another. "Physical force" in this context means "force capable of causing physical pain or injury to another person," *Johnson v. United States*, 559 U.S. 133, 140 (2010) (interpreting analogous provision of the Armed Career Criminal Act), including any "amount of force necessary to overcome a victim's resistance[.]"); *see also Stokeling v. United States*, 139 S. Ct. 544, 555 (2019). The force may be applied by someone other than the defendant, *see Reyes-Contreras*, 910 F.3d at 182; it may be indirect and involve no actual bodily contact, *see id.* at 180-82, 184; and it need not be intentional, *see id.* at 183 ("the 'use of force' does not require intent because it can include knowing or reckless conduct").

Under *Reyes-Contreras*, to prove the offense of kidnapping resulting in death, the government will virtually always have to prove that the victim was subjected to "physical force" within the meaning of Section 924(c)(3)(A). *See* 910 F.3d at 187 n.38. The requirement that "death results" from the kidnapping requires a causal connection between the kidnapping and the death; it would not be sufficient, for example, to show that the victim happened to die of natural causes during the course of a kidnapping. *See id.*; *see also Burrage*, 571 U.S. at 214 ("a phrase such as 'results from' imposes a requirement of but-for causation"); *United States v. Hayes*, 589 F.2d 811, 821 (5th Cir. 1979) (holding that the "death results" provision of 18 U.S.C. § 242 incorporates general principles of causation and noting that death would not "result" from a Section 242 violation if the victim is struck by lightning while being detained pursuant to an illegal arrest). And establishing that connection will virtually always require proof that force capable of causing physical pain or injury or of overcoming a victim's resistance was used during the course of

the commission of the offense—whether or not the force was direct or intentional. *See Reyes-Contreras*, 910 F.3d at 180-84.

Indeed, where, as here, kidnapping resulting in death is charged as a capital offense, to return a recommendation of death the jury necessarily must find that the defendant intentionally killed his victim; intentionally inflicted serious bodily injury that resulted in his victim's death; intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person and the victim died as a result of the act; or intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act. *See* 18 U.S.C. § 3591(a)(2); *see also United States v. Hall*, 4:94-CR-121-Y-2, Dkt. No. 458 at 4 (N.D. Tex. Nov. 3, 1995) (Penalty Phase Instructions). All of those statutory aggravating factors entail intentional conduct that caused a victim's death. *Capital* kidnaping resulting in death, therefore, categorically has as an element—imported from 18 U.S.C. § 3591(a)(2)—the use, attempted use, or threatened use of physical force against the person or property of another because no defendant can be found guilty of that offense without a finding that he used force capable of causing physical pain or injury against another person.

The existence of possible hypothetical scenarios in which death might result from a kidnapping without the use of "physical force" does not change the categorical analysis under Section 924(c)(3)(A). The Supreme Court and this Court have cautioned against using "legal imagination" to treat an offense as categorically overbroad. *See Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (internal quotation marks omitted); *id.* ("there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime'") (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)); *Reyes-Contreras*, 910 F.3d at 187 ("A more realistic approach comports with reason and common sense."); *United States v. Ceron*, 775 F.3d 222, 229 (5th Cir. 2014) (per curiam) (reliance on a "clever hypothetical" to show that an offense can be committed without the use of force "is the type of argument the Supreme Court has instructed [courts] to avoid crediting"). Hall would need to point this Court to at least one case in which a court found the death-results element of kidnapping resulting in death

where there was no application of "physical force." *See United States v. Castillo-Rivera*, 853 F.3d 218, 223 (5th Cir. 2017) (construing *Duenas-Alvarez*, 549 U.S. at 193); *United States v. Hill*, 890 F.3d 51, 56 (2d Cir. 2018) ("[T]here must be a realistic probability, not a theoretical possibility, that the statute at issue could be applied to conduct that does not constitute a crime of violence. To show that a particular reading of the statute is realistic, a defendant must at least point to his own case or other cases in which the courts in fact did apply the statute in the manner for which he argues. To that end, the categorical approach must be grounded in reality, logic, and precedent, not flights of fancy.") (cleaned up), *cert. denied*, 139 S. Ct. 844 (2019). Hall's case is no example, and the government is not aware of another one. And as explained, no such case *could* exist in the capital context, where kidnaping resulting in death must always include the additional element of intentional violence.

Because Hall's Section 924(c) conviction is predicated on a crime of violence under the elements clause, he cannot get relief under *Davis*. His request for authorization should be denied.

> **C.** **Should the Court determine that Hall has made a prima facie showing for relief under *Davis*, it should authorize Hall's successive Section 2255 motion, subject to plenary review by the district court consistent with binding precedent.**

If this Court determines that Hall has made a prima facie showing—that is, "sufficient, albeit slight, merit" to warrant the district court's further exploration of his *Davis* claim, *see In re Hearn*, 418 F.3d 444, 447-48 (5th Cir. 2005), then it should authorize his successive Section 2255 motion. *Davis* satisfies Section 2255(h)(2)'s requirements for authorization—*Davis* states a new rule of constitutional law that was not previously available, and *Davis* has been made retroactive to cases on collateral review by the Supreme Court. *See In re Sparks*, 657 F.3d 258, 260-61 (5th Cir. 2011) (explaining that multiple Supreme Court cases, taken together, may necessarily dictate that a new rule is retroactive); *see also In re Hammoud*, No. 19-12458-G, ___ F.3d ___, 2019 WL 3296800, at *3-4 (11th Cir. July 23, 2019) (holding that the Supreme Court's holdings in *Davis* and *Welch v. United States*, 136 S. Ct. 1257 (2016), necessarily dictate that *Davis* is retroactive); *In re Matthews*, ___ F.3d ___, 2019 WL

3808351, at *1 (3d Cir. Aug. 14, 2019) (holding that is "undisputed" that *Davis* satisfies Section 2255(h)(2) under the Third Circuit's gatekeeping standards).[2]

However, the government acknowledges that, in at least one order, a panel of this Court has noted, in dicta, that the Supreme Court "has not stated that its holding in *Davis*, a case on direct review, applies retroactively on collateral review of a criminal conviction." *See In re Williams*, No. 19-10522, at 2 (5th Cir. July 31, 2019). There, the panel noted that *Davis* itself did not address retroactivity. *See id.* (citing Justice Kavanaugh's dissent questioning whether the majority's new rule will be retroactive). And the panel cited approvingly to the gatekeeping standard of *In re Jackson*, 776 F.3d 292, 293 (5th Cir. 2015)—that the movant must point to a Supreme Court case that expressly holds *Davis* retroactive or that applies *Davis* to a collateral proceeding.[3] The panel did not discuss whether other Supreme Court decisions had "necessarily dictated" the retroactivity of *Davis*'s holding. *See Tyler v. Cain*, 533 U.S. 656, 666 (2001) (holding that the Supreme Court "can make a rule retroactive over the course of two cases" or "[m]ultiple cases . . . if the holdings in those cases necessarily dictate retroactivity"); *see also In re Sparks*, 657 F.3d at 260-61 (applying *Tyler* to conclude that the Supreme Court had necessarily dictated a rule as retroactive in three cases). Under the standard for determining retroactivity—iterated in *Tyler* and *Sparks*—the Supreme Court's decision in *Davis*, taken together with its decision in *Welch*, necessarily dictates that *Davis* is retroactively applicable. *See In re Hammoud*, 2019 WL 3296800, at *3-4.

---

[2] If this Court authorizes Hall to file his successive Section 2255 motion, the government reserves its right to raise all of its defenses—procedural and otherwise—to Hall's claim, but the government will raise those defenses in the district court. *E.g.*, *Hammoud*, 2019 WL 3296800, at *5 (noting that the district court must decide the merits of the successive Section 2255 motion in the first instance, along with any defenses and arguments that the government may raise in opposition). In agreeing here that the rule of *Davis* can satisfy Section 2255(h), the government is not waiving additional defenses to Hall's claim for relief.

[3] The government's view is that *Jackson*'s formulation of the standard is erroneous. Although a movant could satisfy Section 2255(h) by identifying a Supreme Court case that expressly holds *Davis* retroactive or that applies *Davis* to a collateral proceeding, *Tyler* makes clear that he may also do so by pointing to Supreme Court cases that together necessarily dictate retroactivity. *See Sparks*, 657 F.3d at 260-61.

## 4. Conclusion

Because Hall's Section 924(c) conviction is predicated on a crime that satisfies the force clause, he cannot show even a prima facie case that he benefits from *Davis*. Therefore, this Court should deny him authorization to file a second or successive Section 2255 motion.

Respectfully submitted,

Erin Nealy Cox
United States Attorney

*s/ Jonathan Bradshaw*
Jonathan Bradshaw
Assistant United States Attorney
Colorado Bar No. 43838
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
jonathan.bradshaw@usdoj.gov

*/s/ Leigha Simonton*
Leigha Simonton
Assistant United States Attorney
Texas Bar No. 24033193
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8669
leigha.simonton@usdoj.gov

cc: Robert N. Hochman, Esq.
(*via* ECF filing)

*In Re Hall*, No. 19-10345
Government's letter brief – 10

# <u>CERTIFICATE OF COMPLIANCE</u>

      1.     This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,363 words.

      2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Calisto MT font.

*s/ Jonathan Bradshaw*
Jonathan Bradshaw
