# In the United States Court of Appeals for the Fifth Circuit

In re Orlando Cordia Hall,

*Movant*

On Motion for Authorization to File a
Second or Successive Motion Under 28 U.S.C. § 2255

## Brief Of Court-Appointed Amicus Curiae

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Amicus Curiae*

Counsel of record certifies that the following persons and entities have an interest in the outcome of this case:

Orlando Cordia Hall

 /s/ Jonathan F. Mitchell 
JONATHAN F. MITCHELL
*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

Certificate of interested persons................................................................ i

Table of contents.................................................................................... ii

Table of authorities ............................................................................... iii

Interest of amicus curiae.........................................................................1

Statement of compliance with Rule 29 ...................................................1

Statement of case....................................................................................1

Argument ............................................................................................... 4

Conclusion .............................................................................................14

Certificate of service.............................................................................15

Certificate of electronic compliance .....................................................16

Certificate of compliance......................................................................17

# Table of Authorities

**Cases**

*Dickerson v. United States*, 530 U.S. 428 (2000) ............................................................. 8

*Franchise Tax Board of California v. Hyatt*, 139 S. Ct. 1485 (2019) ........................... 8

*Graham v. Florida*, 560 U.S. 48 (2010) .................................................................12

*In re Hall*, No. 16-10670 (5th Cir. June 20, 2016) ................................................. 2

*In re Hammoud*, 931 F.3d 1032 (11th Cir. 2019) .....................................................4, 7

*In re Sparks*, 657 F.3d 258 (5th Cir. 2011) ........................................................12, 13

*Jackson Women's Health Org. v. Dobbs*, 945 F.3d 265 (5th Cir. 2019) ......................9

*Johnson v. United States*, 135 S. Ct. 2551 (2015)...................................................5

*Knick v. Township of Scott*, 139 S. Ct. 2162 (2019) ............................................... 8

*Lawrence v. Texas*, 539 U.S. 558 (2003) ............................................................... 8

*Montgomery v. Louisiana*, 136 S. Ct. 718 (2016)...................................................12

*Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) ...................................................... 8

*Payne v. Tennessee*, 501 U.S. 808 (1991) ............................................................ 8

*Rasul v. Bush*, 542 U.S. 466 (2003) .................................................................... 8

*Smith v. Allwright*, 321 U.S. 649 (1944) ............................................................. 8

*Teague v. City of Flower Mound*, 179 F.3d 377 (5th Cir. 1999) ............................. 13

*Tyler v. Cain*, 533 U.S. 656 (2001) ............................................................6, 7, 10, 12

*United States v. Davis*, 139 S. Ct. 2319 (2019) ................................................ 1, 3, 4, 9

*United States v. Davis*, 903 F.3d 483 (5th Cir. 2018)...............................................3

*United States v. Hall*, 152 F.3d 381 (5th Cir. 1998)................................................ 2

*United States v. Hall*, 455 F.3d 508 (5th Cir. 2006) .............................................. 2

*Welch v. United States*, 136 S. Ct. 1257 (2016)..................................................5, 12

**Statutes**

18 U.S.C. § 1201(a)(1) ....................................................................................... 2

18 U.S.C. § 1201(c) ........................................................................................... 2

18 U.S.C. § 924(c) ............................................................... 2, 3, 5

18 U.S.C. § 924(e)(2)(B)(ii) ......................................................5

28 U.S.C. § 2255(h) ......................................................... passim

28 U.S.C. § 2255(h)(2) ...................................................... passim

**Other Authorities**

Donald A. Dripps, *Constitutional Theory for Criminal Procedure:*
   *Dickerson, Miranda, and the Continuing Quest for Broad-but-Shallow*,
   43 Wm. & Mary L. Rev. 1 (2001) ........................................... 8

## Interest of Amicus Curiae

Amicus curiae Jonathan F. Mitchell was appointed by the Court to argue in support of the view that this Court should deny Mr. Hall's motion for authorization to file a second or successive motion under 28 U.S.C. § 2555 because the Supreme Court has not yet held that *United States v. Davis*, 139 S. Ct. 2319 (2019), applies retroactively to cases on collateral review, as required by 28 U.S.C. § 2255(h)(2).

## Statement of Compliance with Rule 29

No counsel for a party authored any part of this brief. And no one other than the amicus curiae financed the preparation or submission of this brief.

## Statement Of Case

In 1994, Orlando Cordia Hall and his henchmen kidnapped 16-year-old Lisa Rene and forced her into a car, where Hall raped her and forced her to perform oral sex. Later, Hall's accomplices drove Ms. Rene from Texas to Arkansas, where they checked into a motel, tied Ms. Rene to a chair, and took turns raping her. Hall initially stayed behind in Texas but flew to Arkansas the next day and joined his accomplices at the motel room. Hall and another colleague took Ms. Rene into the bathroom for approximately 15 to 20 minutes; when Hall emerged from the bathroom, he announced: "She know too much."

Hall dug a grave in a nearby park. Then Hall and two of his collaborators blindfolded Ms. Rene and marched her to the grave site. When they arrived at the grave, Hall covered Mr. Rene with a sheet and hit her in the head with a shovel. Ms. Rene screamed and tried to flee. Another man tackled her, and

then all three of the men (including Hall) took turns hitting Ms. Rene with the shovel. Eventually Ms. Rene was gagged, thrown into the grave, covered with gasoline, and buried alive.

A jury convicted Hall of four offenses: (1) Kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1); (2) Conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c); (3) Traveling in interstate commerce to promote possession of marijuana with intent to distribute; and (4) Using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Hall was sentenced to death on the kidnapping conviction, life imprisonment for the conspiracy, a concurrent 60-month term for the drug offense, and a consecutive 60-month term for the section 924(c) conviction.

Hall's convictions and sentences were affirmed on direct appeal, and his initial section 2255 motion was unsuccessful. *See United States v. Hall*, 152 F.3d 381 (5th Cir. 1998); *United States v. Hall*, 455 F.3d 508 (5th Cir. 2006). In 2016, Hall moved for permission to file a second or successive section 2255 motion, but the Court denied this request. *See In re Hall*, No. 16-10670 (5th Cir. June 20, 2016).

On March 28, 2019, Hall filed another motion for authorization to file a second or successive section 2255 motion. Hall argued that his section 924(c) conviction should be vacated because the definition of "crime of violence" in 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague. When Hall filed this motion, the Supreme Court of the United States had not yet ruled that 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague. But this Court had pronounced

section 924(c)(3)(B) unconstitutionally vague in *United States v. Davis*, 903 F.3d 483 (5th Cir. 2018), and the Supreme Court had granted certiorari to consider the question.

When Hall filed his motion on March 28, 2019, he could not satisfy the requirements of 28 U.S.C. § 2255(h), which provides:

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—
>
> **(1)** newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> **(2)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). Although Hall's motion contained a "new rule of constitutional law" because it relied on this Court's decision in *United States v. Davis*, 903 F.3d 483 (5th Cir. 2018), Hall could not show that this "new rule" had been "made retroactive to cases on collateral review by the Supreme Court." The Supreme Court had not even weighed in on the constitutionality of 18 U.S.C. § 924(c)(3)(B), and it certainly had not "made" the *Davis* rule "retroactive to cases on collateral review." But rather than denying Hall's motion, the Court chose to hold the motion in abeyance pending the Supreme Court's ruling in *United States v. Davis*, 139 S. Ct. 2319 (2019).

On June 24, 2019, the Supreme Court issued its ruling in *Davis* and held that 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague. On July 9, 2019, this

Court directed the parties to brief whether Hall's motion should be granted in light of *Davis*. The government's brief conceded that *Davis* has been "made retroactive to cases on collateral review by the Supreme Court" within the meaning of 28 U.S.C. § 2255(h)(2), relying on *In re Hammoud*, 931 F.3d 1032 (11th Cir. 2019). In response to this concession, the Court directed amicus to argue the opposite view: that *Davis* has *not* been "made retroactive to cases on collateral review by the Supreme Court" under 28 U.S.C. § 2255(h)(2).

## ARGUMENT

To obtain authorization to file a second or successive section 2255 motion, Hall must show that *United States v. Davis*, 139 S. Ct. 2319 (2019), is: (1) a "new rule of constitutional law" that (2) has been "made retroactive to cases on collateral review by the Supreme Court" and (3) was "previously unavailable." 28 U.S.C. § 2255(h)(2). *Davis*'s holding unquestionably qualifies as a "new rule of constitutional law," and *Davis* was "previously unavailable" when Hall initially sought collateral relief in 2004. But Hall cannot obtain authorization to initiate a new round of collateral proceedings, because *Davis* has never been "made retroactive to cases on collateral review by the Supreme Court."

The majority opinion in *Davis* said nary a word about whether the Court's ruling would be retroactive. *See Davis*, 139 S. Ct. at 2321–36; *see also id.* at 2354 (Kavanaugh, J., dissenting) (asking rhetorically, "who knows whether the ruling will be retroactive?"). And no Supreme Court ruling since that time has said that *Davis* applies retroactively to cases on collateral review. Neither Hall

nor the government disputes any of this. Yet they both appear to be saying that *Davis* has been "*made retroactive* to cases on collateral review *by the Supreme Court*"—even though there is *no* decision of the Supreme Court that has "made" *Davis* "retroactive."

Hall's argument does not even engage the language of section 2255(h)(2). Hall merely relies on the fact that the Supreme Court gave retroactive effect to the holding of *Johnson v. United States*, 135 S. Ct. 2551 (2015). *See* Hall's Letter Br. at 2 (citing *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016), which explicitly held that "*Johnson* is retroactive in cases on collateral review."). *Johnson* had pronounced 18 U.S.C. § 924(e)(2)(B)(ii) unconstitutionally vague, a statute that is somewhat similar to the statute that *Davis* disapproved.[1] *Hall* claims that the Supreme Court's decision to give retroactive effect to *Johnson* is all that he needs to satisfy section 2255(h)(2):

> [B]ecause *Johnson* is fully retroactive, it follows that *Dimaya* and *Davis* are, too. *See Welch v. United States*, 136 S. Ct. 1257, 65 (2016); *In re Hammoud*, No. 19-12458-G, 2019 WL 3296800, at *4 (11th Cir. July 23, 2019) (published opinion holding *Davis* is retroactively applicable) (attached as Exhibit A); *In re Sparks*, 657 F.3d 258, 261-62 (5th Cir. 2011). Mr. Hall's application thus relies on a "new rule of constitutional law, made retroactive to

---

1.  18 U.S.C. § 924(e)(2)(B)(ii), the statute at issue in *Johnson*, defines "crime of violence" to include any felony that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(c)(3)(B), by contrast, defines "crime of violence" to include any felony that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

cases on collateral review," which was "previously unavailable."
*See* 28 U.S.C. §§ 2244(b)(2)(A), 2255(h)(2).

Hall's Letter Br. at 2. The problem with this argument is that the text of section 2255(h)(2) requires Hall to show that *Davis* has been "*made* retroactive"—past tense—"by the Supreme Court." It is not enough for Hall to predict that the Supreme Court will make *Davis* retroactive when it gets around to deciding the question. And it not enough for Hall to base this prediction on a ruling from the Supreme Court that made a similar but different rule of constitutional law retroactive to cases on collateral review. The statute requires a ruling from the Supreme Court that has already "made" *Davis* retroactive to cases on collateral review. And that Supreme Court decision must be on the books *before* a court of appeals authorizes another round of collateral proceedings. *See Tyler v. Cain*, 533 U.S. 656, 662 (2001) ("Based on the plain meaning of the text . . . the requirement is satisfied only if this Court *has held* that the new rule is retroactively applicable to cases on collateral review." (emphasis added)).

The government makes a similar but more sophisticated argument. Like Hall, the government relies on *Welch*'s decision to give retroactive effect to *Johnson*—and it uses *Welch* to predict that the Supreme Court will likewise give retroactive effect to *Davis*. *See* Govt's Letter Br. at 9. And like Hall, the government makes no attempt to reconcile its argument with the text of section 2255(h)(2), which requires a showing that *Davis* has already been "*made* retroactive" to cases on collateral review "by the Supreme Court" 28 U.S.C.

§ 2255(h)(2). But the government suggests that the binding precedent of the Supreme Court compels this atextual construction of the statute, and it relies on the following passage from *Tyler v. Cain*, 533 U.S. 656 (2001):

> Justice BREYER observes that this Court can make a rule retroactive over the course of two cases. See *post,* at 2488 (dissenting opinion). We do not disagree that, with the right combination of holdings, the Court could do this. But even so, the Court has not made *Cage* retroactive. Multiple cases can render a new rule retroactive only if the holdings in those cases necessarily dictate retroactivity of the new rule. The only holding in *Sullivan* is that a *Cage* error is structural error. There is no second case that held that all structural-error rules apply retroactively or that all structural-error rules fit within the second *Teague* exception. The standard for determining whether an error is structural, see generally *Arizona v. Fulminante,* 499 U.S. 279 (1991), is not coextensive with the second *Teague* exception, and a holding that a particular error is structural does not logically dictate the conclusion that the second *Teague* exception has been met.

*Tyler v. Cain*, 533 U.S. 656, 666–67 (2001). The government thinks this passage from *Tyler* compels this Court to act as though the Supreme Court has already "made" *Davis* retroactive—because (in the government's view) the Supreme Court's decision to make *Johnson* retroactive "necessarily dictates" that the Supreme Court will make *Davis* retroactive as well.[2] There are many problems with this argument.

The first problem is that the Supreme Court has no obligation to follow its retroactivity precedents—even when those precedents appear to "dictate" a

---

2.   The Eleventh Circuit made a similar argument in *In re Hammoud*, 931 F.3d 1032, 1038–39 (11th Cir. 2019).

certain result. *See Payne v. Tennessee*, 501 U.S. 808, 828 (1991) ("Stare decisis is not an inexorable command"). The Supreme Court overrules precedent every term.[3] And even when the Supreme Court does not overrule its precedent, it will often find ingenious or highly strained ways to distinguish or escape previous holdings. *See, e.g.*, *Obergefell v. Hodges*, 135 S. Ct. 2584, 2602 (2015); *Rasul v. Bush*, 542 U.S. 466, 475–49 (2003); *Dickerson v. United States*, 530 U.S. 428, 438–441 (2000); *see also* Donald A. Dripps, *Constitutional Theory for Criminal Procedure: Dickerson, Miranda, and the Continuing Quest for Broad-but-Shallow*, 43 Wm. & Mary L. Rev. 1, 33 (2001) ("The Supreme Court of the United States, however, doesn't 'have to' do anything, as the decision in *Dickerson* once again reminds us."). The Supreme Court could decide to overrule *Welch* before it rules on the retroactivity of *Davis*, or it could decide to overrule

---

3. This term the Supreme Court has already overruled *Apodaca v. Oregon*, 406 U.S. 404 (1972), and *Johnson v. Louisiana*, 406 U.S. 356 (1972). *See Ramos v. Louisiana*, 140 S. Ct. 1390 (2020). Last term the justices overruled *Nevada v. Hall*, 440 U.S. 410 (1979), and *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). See *Franchise Tax Board of California v. Hyatt*, 139 S. Ct. 1485 (2019) (overruling Hall); *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019) (overruling Williamson County). For all the Court's rhetoric about *stare decisis*, the truth is that the justices overrule precedent whenever they see fit to do so, and they will often overrule precedent without offering any "special justification" beyond their belief that the earlier case was wrongly decided. *See, e.g.*, *Lawrence v. Texas*, 539 U.S. 558, 578 (2003); *Obergefell v. Hodges*, 135 S. Ct. 2584, 2605 (2015); *Smith v. Allwright*, 321 U.S. 649, 665–66 (1944) ("[W]hen convinced of former error, this Court has never felt constrained to follow precedent.").

the *Teague* exceptions entirely. A precedent of the Supreme Court will *never* "dictate" how a future Supreme Court will rule on the retroactivity of *Davis*.

The precedent of the Supreme Court can certainly "dictate" how a lower court should rule on a matter. *See, e.g.*, *Jackson Women's Health Org. v. Dobbs*, 945 F.3d 265, 277–78 (5th Cir. 2019) (Ho, J., concurring). But the text of section 2255(h) requires that the Supreme Court itself "make" *Davis* retroactive before Hall can obtain permission to launch another collateral proceeding. The decision belongs to the Supreme Court—and to no one else—and the Court's decision cannot be "dictated" by precedent that the justices have no obligation to follow.

The second problem is that the text of section 2255(h) requires Hall to show that *Davis* has been "*made* retroactive" to cases on collateral review "by the Supreme Court." The statute looks to the past, and it requires Hall to identify a *past* decision from the Supreme Court that "made" *Davis* retroactive. Hall cannot satisfy this statutory requirement by pointing to *Welch* and predicting that a future Supreme Court will follow the reasoning of that decision when ruling on the retroactivity of *Davis*. *Welch* did not "make" *Davis* retroactive, because *Davis* had not been decided at the time of *Welch*. And *Davis* did not "make" itself retroactive, because the majority opinion says nothing about retroactivity and did not purport to rule on the retroactivity question. *See Davis*, 139 S. Ct. at 2321–36. The Supreme Court will not "make" *Davis* retroactive until it issues a ruling that applies *Davis* apply retroactively to cases on collateral review. Any argument that this outcome is preordained by *Welch*

is looking toward a future action of the Supreme Court rather than a past decision.

The relevant passage from *Tyler v. Cain* must be construed in a manner consistent with the text of section 2255(h)(2). *Tyler* left open the possibility that "multiple cases can render a new rule retroactive," and it stated that this may happen "only if the holdings in those cases necessarily dictate retroactivity of the new rule." *Tyler*, 533 U.S. at 666. But *Tyler* was exceedingly careful with the example that it provided:

> Multiple cases can render a new rule retroactive only if the holdings in those cases necessarily dictate retroactivity of the new rule. The only holding in *Sullivan* is that a *Cage* error is structural error. There is no second case that held that all structural-error rules apply retroactively or that all structural-error rules fit within the second *Teague* exception.

*Tyler*, 533 U.S. at 666. *Tyler* is describing a scenario in which a new rule (*Cage*) is announced at time one (T1); then a subsequent decision issued at time two (T2) holds that this new rule implicates "structural error" (*Sullivan*); and then a third decision issued at time three (T3) holds that all "structural error" rules apply retroactively. The holding of this third case would "make" *Cage* retroactive, even if the opinion does not mention *Cage* by name, because *Cage* is logically subsumed within the universe of "structural error" rules that the Court had categorically "made" retroactive to cases on collateral review.

The same outcome would apply if the Court had announced at time two (T2) that all "structural error" rules apply retroactively, and then announced at time three (T3) that *Cage* implicates "structural error." In that scenario, the

third ruling would "make" *Cage* retroactive because the Supreme Court would have held that *Cage* falls within the category of "structural error" rules that the Court had previously "made retroactive" to cases on collateral review. In both of these hypothetical situations, a simple syllogism would be enough to demonstrate that the Supreme Court had "made" *Cage* retroactive to cases on collateral review:

**Major premise**: The Supreme Court has "made" all structural-error rules retroactive on collateral review.

**Minor premise**: The Supreme Court has held that *Cage* falls within the category of structural-error rules.

**Conclusion**: The Supreme Court has "made" *Cage* retroactive to cases on collateral review.

*That* is the scenario that *Tyler* describes, and it fits entirely with the text of section 2255(h)(2) because there will already have been: (1) A ruling from the Supreme Court that "made" all structural-error rules retroactive; and (2) A ruling from the Supreme Court that specifically holds that *Cage* falls within that category of structural-error rules. *Tyler* appropriately recognizes that this satisfies the requirements of 28 U.S.C. § 2255(h)(2) because the Supreme Court will have "made" *Cage* retroactive by explicitly placing it in a category of cases that the Supreme Court has already held to be retroactive. And this does not in any way depend on a predicted future action of the Supreme Court—it looks exclusively to what the Supreme Court has already done.

That scenario bears no resemblance to the situation in this case. There is no holding from the Supreme Court that places *Davis* into the bucket of "substantive rules" that the Court has previously held to be retroactive. *See Montgomery v. Louisiana*, 136 S. Ct. 718, 728 (2016) ("[C]ourts must give retroactive effect to new substantive rules of constitutional law."). *Welch* put *Johnson* into that cubbyhole, and in doing so it "made" *Johnson* retroactive to cases on collateral review. *See Welch*, 136 S. Ct. at 1265 ("Under this framework, the rule announced in *Johnson* is substantive."). But there is no decision from the Supreme Court that holds that *Davis* is "substantive," or that *Davis* falls within any category of cases that the Supreme Court has previously recognized as applying retroactively. Hall must await a decision of that sort from the Supreme Court before he can seek authorization to file a second or successive petition. He cannot satisfy section 2255(h)(2) by predicting the Supreme Court's future disposition of these questions.

There remains the question of what to do about *In re Sparks*, 657 F.3d 258 (5th Cir. 2011), which allowed a prisoner to file a second or successive section 2255 motion after concluding that *Graham v. Florida*, 560 U.S. 48 (2010), had been "made retroactive to cases on collateral review by the Supreme Court." *Id.* at 260. *Sparks* did exactly what *Tyler v. Cain* said *not* to do: It "applied the principles outlined in *Teague*" to predict that the Supreme Court *would* make *Graham* retroactive if it were ever to rule on the question. *Compare Tyler*, 533 U.S. at 666 (rejecting movant's argument because "[t]he most he can claim is that, based on the principles outlined in *Teague,* this Court *should* make *Cage*

retroactive to cases on collateral review. What is clear, however, is that we have not 'made' *Cage* retroactive to cases on collateral review."), *with Sparks*, 657 F.3d at 262 ("By the combined effect of the holding of *Graham* itself and the first *Teague* exception, *Graham* was therefore made retroactive on collateral review by the Supreme Court as a matter of logical necessity"). The Supreme Court had not issued a ruling that "made" *Graham* retroactive to cases on collateral review at the time of *Sparks*. But rather than denying the prisoner's motion as required by 28 U.S.C. § 2255(h)(2), the *Sparks* panel conducted its own *Teague* analysis and concluded that *Graham* should fall within the first *Teague* exception. *See id.* at 262. In so holding, the *Sparks* panel usurped the role of the Supreme Court and disregarded the text of section 2255(h)(2).

The Fifth Circuit follows the rule of orderliness, which forbids a panel to overrule the holdings of a previous panel. *See Teague v. City of Flower Mound*, 179 F.3d 377, 383 (5th Cir. 1999) ("[T]he rule of orderliness forbids one of our panels from overruling a prior panel"). But this Court need not overrule *Sparks* to deny Hall's motion. *Sparks* should not have allowed the *Graham* claim to go forward until the Supreme Court itself had pronounced *Graham* retroactive, but this panel is not required to repeat the mistakes of *Sparks* even if it lacks the power to overrule it. Precedent in derogation of statutory text should be narrowly construed, and the Court can simply limit the holding of *Sparks* to the claim asserted that case. Prisoners with *Graham* claims received a windfall on account of *Sparks*, but going forward every prisoner seeking a second round of collateral proceedings must satisfy the actual language in 28

U.S.C. § 2255(h)(2) and 28 U.S.C. § 2244(b)(2). Hall is relying on a new of constitutional law, and he must show that new rule has been "*made retroactive to cases on collateral review by the Supreme Court.*" 28 U.S.C. § 2255(h)(2) (emphasis added). He cannot make this showing until the Supreme Court announces that *Davis* applies retroactively to cases on collateral view, or until the Supreme Court holds that *Davis* falls within a category of cases that the Court has already held to apply retroactively.

## Conclusion

The motion for authorization to file a second or successive section 2255 motion should be denied on the ground that the Supreme Court has not yet "made" *Davis* retroactive to cases on collateral review, as required by 28 U.S.C. § 2255(h)(2).

Respectfully submitted.

 /s/ Jonathan F. Mitchell 
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I certify that this document has been filed with the clerk of the court and served by ECF or e-mail on May 15, 2020, upon:

ROBERT N. HOCHMAN
BENJAMIN GILLIG
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000 (phone)
(312) 853-7036 (fax)
rhochman@sidley.com
bgillig@sidley.com

*Counsel for Movant*

Jonathan Bradshaw
Assistant United States Attorney
1100 Commerce Street, Third Floor
Dallas, Texas 75242
(214) 659-8600 (phone)
jonathan.bradshaw@usdoj.gov

*Counsel for the United States*

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Amicus Curiae*

## CERTIFICATE OF ELECTRONIC COMPLIANCE

Counsel also certifies that on May 15, 2020, this brief was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, via the court's CM/ECF document filing system, https://ecf.ca5.uscourts.gov/.

Counsel further certifies that: (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned with the most recent version of VirusTotal and is free of viruses.

 /s/ Jonathan F. Mitchell 
JONATHAN F. MITCHELL
*Counsel for Amicus Curiae*

# Certificate of Compliance

### With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[X]     this brief contains 3,815 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ]     this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

[X]     this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac, version 16.36 in Equity Text B 14-point type face, or

[ ]     this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

/s/ Jonathan F. Mitchell

Jonathan F. Mitchell

*Counsel for Amicus Curiae*

Dated: May 15, 2020