No. 19-10345

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

*In Re*
ORLANDO CORDIA HALL,
Movant.

CAPITAL CASE

**BRIEF PURSUANT TO COURT'S ORDER OF MARCH 18, 2020**

Robert C. Owen
LAW OFFICE OF
ROBERT C. OWEN, LLC
53 W. Jackson Blvd., Ste. 1056
Chicago, IL 60604
Tel.: 512-577-8329
robowenlaw@gmail.com

Marcia A. Widder
Georgia Resource Center
104 Marietta Street NW
Suite 260
Atlanta, GA 30303
Tel.: 404-222-9202
marcy.widder@garesource.org

Robert N. Hochman
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel.: 312-853-7000
Fax: (312) 853-7036
rhochman@sidley.com

Benjamin Gillig
SIDLEY AUSTIN LLP
555 California Street, Ste. 2000
San Francisco, CA 94104
Tel.: 415-772-1200
Fax: 415-772-7400
bgillig@sidley.com

# CERTIFICATE OF INTERESTED PARTIES

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. <u>MOVANT</u>: Orlando Cordia Hall

2. <u>MOVANT'S ATTORNEYS</u>: Robert C. Owen, Law Office of Robert C. Owen, LLC, 53 W. Jackson Blvd., Ste. 1056, Chicago, Illinois; Marcia A. Widder, 104 Marietta Street NW, Atlanta, Georgia 30303

3. <u>MOVANT'S PRO BONO ATTORNEYS</u>: Robert N. Hochman, Sidley Austin LLP, One South Dearborn, Chicago, Illinois, 60603, and Benjamin Gillig, Sidley Austin LLP, 555 California Street, San Francisco, California, 94104

4. <u>RESPONDENT</u>: United States of America

5. <u>RESPONDENT'S ATTORNEYS</u>: Assistant United States Attorneys Jonathan Bradshaw and Leigha Simonton, U.S. Attorney for the Northern District of Texas, 1100 Commerce St., Third Floor, Dallas, Texas, 75242

6. <u>COURT-APPOINTED AMICUS CURIAE</u>: Jonathan F. Mitchell, Mitchell Law PLLC, 111 Congress Ave., Ste. 400, Austin, Texas 78701

*/s/ Robert N. Hochman*
Robert N. Hochman

*Counsel for Orlando Cordia Hall, Movant*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................ 1

BACKGROUND .......................................................................... 5

STANDARD OF REVIEW .......................................................... 8

ARGUMENT ............................................................................... 9

   I.  The Rule of Constitutional Law Announced in *Davis* is
Retroactively Applicable on Collateral Review. .......................... 9

      A. Mr. Hall need not "predict" that *Davis* might be
made retroactive in the future, because the Supreme
Court has already made it retroactive within the
meaning of 28 U.S.C. § 2255(h)(2). ................................ 9

      B. This Court has already rightly accepted that
Tyler dictates when a new Supreme Court decision
has been "made retroactive" by a combination of
holdings. .................................................................... 15

      C. The Amicus's Position has been Rejected by
Every Circuit, Including This One. ............................... 16

   II.  The Government's Arguments Concerning the Categorical
Approach Are Meritless, but Should Be Addressed to the
District Court in the First Instance. ............................................ 17

CONCLUSION ........................................................................... 22

CERTIFICATE OF SERVICE .................................................... 23

CERTIFICATE OF COMPLIANCE ........................................... 24

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alexander v. Express Energy Servs. Operating, L.P.*,
  784 F.3d 1032 (5th Cir. 2015) ...............................................15

*In re Bocanegra*,
  No. 20-10311 (5th Cir. June 2, 2020)..................................16

*Bousley v. United States*,
  523 U.S. 614 (1998)...............................................................11

*In re Diggs*,
  No. 19-11349 (5th Cir. Jan. 23, 2020)..................................17

*In re Franklin*,
  950 F.3d 909 (6th Cir. 2020) ................................................16

*In re Hall*,
  No. 16-10670 (5th Cir. June 20, 2016)....................................6

*In re Hall*,
  No. 19-10345 (5th Cir., March 18, 2019) ..............................1

*In re Hammoud*,
  931 F.3d 1032 (11th Cir. 2019) ............................................16

*In re Hearn*,
  418 F.3d 444 (5th Cir. 2005) .................................................8

*Hutto v. Davis*,
  454 U.S. 370 (1982)................................................................3

*Johnson v. United States*,
  135 S. Ct. 2551 (2015).....................................................*passim*

*Leocal v. Ashcroft*,
  543 U.S. 1 (2004) .................................................................20

*Light-Age, Inc. v. Ashcroft-Smith*,
  922 F.3d 320 (5th Cir. 2019) ..........................................................17

*In re Matthews*,
  934 F.3d 296 (3d Cir. 2019) ...........................................................16

*Montgomery v. La.*,
  136 S. Ct. 718 (2016)....................................................................9, 10

*In re Mullins*,
  942 F.3d 975 (10th Cir. 2019) ........................................................16

*Reyes-Requena v. United States*,
  243 F.3d 893 (5th Cir. 2001) .............................................................8

*Sessions v. Dimaya*,
  138 S. Ct. 1204 (2018)....................................................................6, 7

*In re Sparks*,
  657 F.3d 258 (5th Cir. 2011) .....................................................*passim*

*State Oil Co. v. Khan*,
  522 U.S. 3 (1997) .............................................................................14

*Teague v. Lane*,
  489 U.S. 288 (2001).........................................................................13

*Tyler v. Cain*,
  533 U.S. 656 (2001)....................................................................*passim*

*United States v. Barraza*,
  576 F.3d 798 (8th Cir. 2009) ..........................................................21

*United States v. Davis*,
  139 S. Ct. 2319 (2019)................................................................*passim*

*United States v. Davis*,
  903 F.3d 483 (5th Cir. 2018) .............................................................7

*United States v. Dixon*,
  799 Fed. Appx. 308 (5th Cir. 2020)............................................16, 19

*United States v. Hall,*
152 F.3d 381 (5th Cir. 1998) ................................................................20

*United States v. Hayes,*
589 F.2d 811 (5th Cir. 1979) ................................................................20

*United States v. Reece,*
938 F.3d 630 (5th Cir. 2019) ................................................................16

*United States v. Schwanke,*
598 F.2d 575 (10th Cir. 1979) .............................................................20

*United States v. Short,*
181 F.3d 620 (5th Cir. 1999) ................................................................15

*United States v. Wiese,*
896 F.3d 720 (5th Cir. 2018) ................................................................17

*Welch v. United States,*
136 S. Ct. 1257 (2016).................................................................*passim*

**STATUTES & RULES**

18 U.S.C. § 16(b) ....................................................................................6

18 U.S.C. § 844(i) ..................................................................................20

18 U.S.C. § 924(c) ..........................................................................*passim*

18 U.S.C. § 924(c)(1) ..............................................................................5

18 U.S.C. § 924(c)(3) ......................................................................11, 18

18 U.S.C. § 924(c)(3)(A)....................................................................1, 17

18 U.S.C. § 924(c)(3)(B) ..................................................................5, 6, 7

18 U.S.C. § 924(e)(2)(B) .........................................................................5

18 U.S.C. § 1201(a)......................................................................*passim*

18 U.S.C. § 1201(a)(1) ..........................................................................18

28 U.S.C. § 2255 ................................................................*passim*

28 U.S.C. § 2255(h)(2) .......................................................*passim*

5th Cir. R. 47.5.4 ...................................................................17

**OTHER AUTHORITIES**

Decoy, *Black's Law Dictionary* (11th ed. 2019) ........................19

Inveigle, *Black's Law Dictionary* (11th ed. 2019) .....................19

**INTRODUCTION AND SUMMARY OF ARGUMENT**

This Court appointed an amicus curiae to argue "that [this Court] should deny the petition because the Supreme Court has not yet held that [*United States v. Davis*, 139 S. Ct. 2319 (2019),] applies retroactively" and invited the parties, who agree that *Davis* is retroactive (as required by 28 U.S.C. § 2255(h)(2)), to respond. Noting that the government has separately raised the issue whether "kidnapping resulting in death is categorically a crime of violence under 18 U.S.C. § 924(c)(3)(A)," the Court further directed the parties to brief that question, as well as "whether that is a merits issue that should be addressed by the district court in the first instance."[1] Mr. Hall respectfully submits this response.

The Court should grant Mr. Hall permission to file a second or successive § 2255 motion for the reasons set out in his motion for authorization and subsequent briefs. In short, Mr. Hall is entitled to file such a motion because he has made a prima facie showing that he

---

[1] Order, *In re Hall*, No. 19-10345 (5th Cir., March 18, 2019) (unpublished) at 1 (appointing attorney Jonathan F. Mitchell to argue that Mr. Hall's *Davis*-based 2255 motion should be barred "because the Supreme Court has not yet held that *Davis* applies retroactively, as AEDPA requires under 28 U.S.C. § 2255(h)(2)").

has a valid claim based on *Davis*, which announced "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). Under this Court's cases, Mr. Hall need show only that he "might be entitled to relief" under *Davis*. *In re Sparks*, 657 F.3d 258, 262 (5th Cir. 2011) (*per curiam*). Mr. Hall easily satisfies this standard: he was convicted of a firearms offense under 18 U.S.C. § 924(c) involving a "crime of violence," but the predicate offense at issue (kidnapping under 18 U.S.C. § 1201(a)) is not categorically a crime of violence and cannot be deemed one under § 924(c)'s residual clause because the Supreme Court has declared that provision unconstitutionally vague. *Davis*, 139 S. Ct. at 2336. Accordingly, Mr. Hall's § 924(c) conviction must fall.

Amicus argues that *Davis* is unavailable to Mr. Hall because neither *Davis* itself nor any decision announced by the Supreme Court since *Davis* has spoken to the retroactivity of *Davis*. *See* Brief of Court-Appointed Amicus Curiae ("ACB") at 4-5. According to amicus, Mr. Hall (and the government) only "predict that the Supreme Court will make *Davis* retroactive when it gets around to

deciding the question." *Id.* at 6.

Amicus mischaracterizes Mr. Hall's argument. Mr. Hall is not "predicting" what the Supreme Court might decide later about *Davis*'s retroactivity. Rather, the Supreme Court's retroactivity doctrine dictates that *Davis* is fully retroactive. In *Tyler v. Cain*, 533 U.S. 656, 666 (2001), the Supreme Court held that "the right combination of holdings" in multiple cases can "make" a rule retroactive for purposes of 28 U.S.C. § 2255(h)(2). As explained below, the holdings of *Welch v. United States*, 136 S. Ct. 1257 (2016), and *Davis* "necessarily dictate" that *Davis*'s substantive rule – that the residual clause of 18 U.S.C. § 924(c) is unconstitutionally vague—is retroactive. *Tyler*, 533 U.S. at 666.

Amicus suggests that this Court may disregard the method dictated by *Tyler* because the Supreme Court could always choose to overrule its existing retroactivity cases (*e.g.*, *Welch*). ACB at 7-9. The amicus's approach flouts the settled principle that lower courts are not free to disregard the Supreme Court's precedent. *See, e.g.*, *Hutto v. Davis*, 454 U.S. 370, 375 (1982) ("[U]nless we wish anarchy to prevail within the federal judicial system, a precedent of this Court

must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be."). Moreover, to accept amicus's view would require not only rejecting Supreme Court precedent, but also this Court's. Amicus concedes that this Court in *Sparks* applied *Tyler* in the same manner that Mr. Hall and the government, in concluding that the Supreme Court's decisions in *Welch* and *Davis* establish *Davis*'s retroactivity, have applied it here.[2] Amicus would have this Court disregard *Sparks* as well. ACB at 13-14 (citing *Sparks*, 657 F.3d at 262). That is an invitation the Court cannot accept.

As to the Court's remaining two questions, there is no merit to the government's view that kidnapping under 18 U.S.C. § 1201(a) is necessarily a crime of violence if it results in death. In any event, that argument should be addressed in the first instance to the district court.

---

[2] That *Sparks*'s reading of *Tyler* makes the retroactivity of *Davis* evident likely explains why several panels of the Court have recently authorized prisoners to file second or successive § 2255 motions raising *Davis* claims. *See* Part I.C *infra*.

4

## BACKGROUND

In 1995, Mr. Hall was convicted of kidnapping under 18 U.S.C. § 1201(a) (Count 1):

> (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when—
>
> > (1) the person is willfully transported in interstate or foreign commerce . . .
>
> shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

*Id.* Mr. Hall was also convicted (Count 6) of "us[ing] or carr[ying] a firearm" "during and in relation to [a] crime of violence." 18 U.S.C. § 924(c)(1) (1994). Mr. Hall's Count 1 kidnapping conviction served as the predicate for the firearms charge in Count 6 under § 924(c)(3)(B)'s residual clause. Mr. Hall was thereafter sentenced to death on Count 1 and to varying terms of years on the remaining counts, including Count 6. The judgment was affirmed on appeal, and Mr. Hall's initial motion to vacate under 28 U.S.C. § 2255 was denied in 2006.

In 2015, the Supreme Court declared the residual clause in 18

U.S.C. § 924(e)(2)(B), the Armed Career Criminal Act, to be unconstitutionally vague. *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015). A year later, it determined that its ruling in *Johnson* had announced a new substantive rule that applied retroactively on collateral review because it "alter[ed] 'the range of conduct or the class of persons that the [Armed Career Criminal Act] punishes.'" *Welch*, 136 S. Ct. at 1265 (citation omitted).[3]

In 2018, the Supreme Court invalidated as unconstitutionally vague the residual clause of 18 U.S.C. § 16(b), which defined a crime of violence as one involving, *inter alia*, "a substantial risk that physical force [might be used] against the person or property of another." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1211-16 (2018). On a GVR from the Supreme Court in light of *Dimaya*, this Court concluded that because the relevant language in the residual clause of § 16(b) was identical to that in the corresponding clause of § 924(c)(3)(B), the latter provision was likewise unconstitutionally

---

[3] Mr. Hall timely moved for authorization to file a successive § 2255 motion challenging his § 924(c) conviction based on *Johnson* and *Welch*. This Court denied leave, reasoning that *Johnson* did not apply beyond the Armed Career Criminal Act. *In re Hall*, No. 16-10670 (5th Cir. June 20, 2016) (unpublished).

vague. *United States v. Davis*, 903 F.3d 483, 485-86 (5th Cir. 2018).

The government sought review in the Supreme Court but abandoned the argument that § 924(c)(3)(B)'s language provided adequate notice of its reach to satisfy constitutional concerns. Instead, the government asked the Supreme Court to jettison the "categorical analysis" altogether as a matter of statutory interpretation in favor of a new interpretation based on actual conduct.

The Supreme Court rejected the government's effort to save the statute, affirming this Court's view that § 924(c)(3)(B) was unconstitutionally vague: "What do *Johnson* and *Dimaya* have to say about the statute before us? Those decisions teach that the imposition of criminal punishment can't be made to depend on a judge's estimation of the degree of risk posed by a crime's imagined 'ordinary case.'" *Davis*, 139 S. Ct. at 2326.

While *Davis* was pending in the Supreme Court, Mr. Hall again moved for authorization to file a successive § 2255 petition challenging his 924(c) conviction. Following the Supreme Court's decision, this Court directed supplemental briefing on *Davis*. Though

disputing its impact on Mr. Hall's conviction, both parties agreed that *Davis* should apply retroactively to his case.

## STANDARD OF REVIEW

To obtain authorization from this Court, Mr. Hall must make a prima facie showing that he satisfies 28 U.S.C. § 2255(h)(2).  *Reyes-Requena v. United States*, 243 F.3d 893, 899 (5th Cir. 2001).  He must show it is "reasonably likely" that his application relies on "a new rule of constitutional law, made retroactive on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h)(2); *see also Requena* 243 F.3d at 899.  This amounts to a showing that Mr. Hall "*might* be entitled to relief under" his chosen "new rule."  *Sparks*, 657 F.3d at 262 (emphasis added); *see also*, *e.g.*, *In re Hearn*, 418 F.3d 444, 447-48 (5th Cir. 2005) (in the successive-petition context, a prima facie showing means the movant must demonstrate that there is "sufficient, albeit slight, merit" to his proposed claim).

## ARGUMENT

**I.    The Rule of Constitutional Law Announced in *Davis* is Retroactively Applicable on Collateral Review.**

**A.    Mr. Hall need not "predict" that *Davis* might be made retroactive in the future, because the Supreme Court has already made it retroactive within the meaning of 28 U.S.C. § 2255(h)(2).**

Amicus begins by asserting that Mr. Hall is not entitled to authorization because the Supreme Court has not yet written the words "*Davis* is retroactive." ACB at 4-5.  Accordingly, amicus insists, Mr. Hall's arguments (and the government's) reduce to "predicting" that *Davis* may become retroactive at some point in the future, if and when the Supreme Court so pronounces.  *See* ACB at 9-11.

But amicus is mistaken.  Mr. Hall has argued that the Supreme Court *has* decided that *Davis* is retroactive, even though it has not written "*Davis* is retroactive" in any opinion.  The Supreme Court has already said that no such statement is necessary to satisfy the statutory phrase "made retroactive to cases on collateral review by the Supreme Court." *See Tyler*, 533 U.S. at 666-68.

The Supreme Court has made clear that "new substantive rules" are retroactive.  *Montgomery v. La.*, 136 S. Ct. 718, 730 (2016)

(citing *Teague v. Lane*, 489 U.S. 288 (2001)).  "Substantive rules," such as the one announced in *Davis*, "set forth categorical constitutional guarantees that place certain criminal law and punishments altogether beyond the State's power to impose" and, consequently, "when [the government] enforces a proscription or penalty barred by the Constitution, the resulting conviction or sentence is, by definition, unlawful." *Id.* at 729-30.  In *Welch*, the Supreme Court held that *Johnson* was "a substantive decision" that applies retroactively. *Welch*, 136 S. Ct. at 1265.  It reached that conclusion because its holding in *Johnson*, that the residual clause of the Armed Career Criminal Act was void for vagueness, had changed the statute's "substantive reach" by "altering 'the range of conduct or the class of persons that [it] punishes.'"  *Id.* (citation omitted).

Thus, the Supreme Court recognized in *Welch* that the type of rule announced in *Johnson* is substantive and so applies retroactively. Under *Tyler*, that conclusion renders *Davis* retroactive as well.  In *Tyler*, the Supreme Court explained that "[m]ultiple cases can render a new rule retroactive … if the holdings in those cases necessarily dictate retroactivity of the new rule."  533 U.S. at 666; *see also id.* at 668

(retroactivity can be established "through multiple holdings that logically dictate the retroactivity of the new rule") (O'Connor, J., concurring).

*Tyler* compels the conclusion that *Davis* has been made retroactive. *Welch* holds that a decision that limits the reach of a statute by declaring it void for vagueness constitutes a "substantive" rule—one that alters the range of conduct or class of persons punishable under the law—and accordingly is retroactive. *See Welch*, 136 S. Ct. at 1265; *see also Bousley v. United States*, 523 U.S. 614, 620-21 (1998) (when, in light of a new ruling, "a defendant stands convicted of an act that the law does not make criminal," then the rule applies retroactively on collateral review) (citation and internal quotation marks omitted). *Davis* alters the range of conduct punishable under § 924(c)(3) in precisely the same manner that *Johnson* altered the range of conduct punishable under the Armed Career Criminal Act. After *Davis*, Mr. Hall stands convicted under a statute that is "a nullity" because of unconstitutional vagueness. *Davis*, 139 S. Ct. at 2323. *Welch* makes plain that *Davis* is a substantive rule that applies retroactively. *See Welch*, 136 S. Ct. at 1265. The Supreme Court has

thus "made" *Davis* retroactive "through multiple holdings that logically dictate the retroactivity of the new rule," *Tyler*, 533 U.S. at 668 (O'Connor, J., concurring).

Amicus insists that this straightforward reasoning fails because § 2255(h)(2) "looks to the past" ("*made* retroactive"), and thus *Welch* cannot have "made" *Davis* retroactive "because *Davis* had not been decided at the time of *Welch*." ACB at 9. But that amounts to the view that the Supreme Court has not made a new rule retroactive until it has uttered the words "this new rule is retroactive." That is precisely the approach that *Tyler* rejected. 533 U.S. at 666. In the end, even amicus concedes that when multiple Supreme Court decisions logically compel, in syllogistic form, that a new rule is retroactive, then lower courts must recognize it as having been "made" so. ACB at 11.

*Davis* has been made retroactive according to just such syllogistic reasoning:

**Major premise**: The Supreme Court announced in *Welch* that a decision such as *Johnson*, striking down a criminal statute as void for vagueness, constitutes a "substantive rule" that alters the range of conduct or

> class of persons punishable under the law and, accordingly, under *Teague* and its progeny, is fully retroactive.

**Minor premise**:  *Davis* struck down a criminal statute as void for vagueness.

**Conclusion**:  *Davis* is retroactive.

Amicus goes further than denying that this syllogism controls. Amicus asserts that *Davis* is not *necessarily* retroactive because the Supreme Court "has no obligation to follow its retroactivity precedents" and thus this Court should not feel bound by them – although amicus fails to suggest any rationale on which the Supreme Court might base such a decision.  ACB at 7-9; *see also id*. at 8-9 ("The Supreme Court could decide to overrule *Welch* before it rules on the retroactivity of *Davis*, or it could decide to overrule the *Teague* exceptions entirely.  A precedent of the Supreme Court will *never* 'dictate' how a future Supreme Court will rule on the retroactivity of *Davis*").  To accept this argument would contradict the mandate of § 2255.  This argument amounts to tacitly admitting that the Supreme Court *has* "made" *Davis* retroactive, but speculating that the Court may change its mind at some unspecified future date.

But § 2255 does not ask this Court to predict what the Supreme Court may do. *Tyler*, 533 U.S. at 666. It asks what the Supreme Court has done. Where the holdings of multiple cases "necessarily dictate retroactivity of the new rule," that new rule is, by definition, retroactive. *Id.*

Likewise, in suggesting that the Supreme Court might find a way to disregard the logic of its prior decisions, ACB at 8, amicus asks this Court to go beyond what § 2255 requires, which is to focus on what the Supreme Court has held and not what it theoretically could later disavow.

Amicus's suggestions would undermine the orderly administration of a hierarchical judicial process on which the rule of law is predicated. This Court should reject amicus's invitation to rule as if binding Supreme Court authority merely presents lower courts with an opportunity to speculate about which cases or rules the Supreme Court will later abandon. *Only* the Supreme Court may overrule its prior decisions, and, until it does so, lower courts are bound to apply them. *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is this Court's prerogative alone to overrule one of its precedents.").

14

**B.** **This Court has already rightly accepted that *Tyler* dictates when a new Supreme Court decision has been "made retroactive" by a combination of holdings.**

This Court, as it must, follows the established Supreme Court precedent of *Tyler* in assessing the retroactivity of new rules. *See Sparks*, 657 F.3d at 260. Amicus attacks *Sparks* as "d[oing] exactly what *Tyler v. Cain* said *not* to do" and, while recognizing that *Sparks* is binding precedent, urges this panel not to follow it. ACB at 12 (emphasis in original). Both those contentions are meritless. In *Sparks*, this Court undertook a careful analysis of *Tyler* and reached its retroactivity determination by applying the reasoning of that case. *Id.* at 260-62. This Court is not free to disregard the binding effect of either Supreme Court precedent or this Court's longstanding rule that its panels are bound by the decisions of previous panels absent an intervening Supreme Court or *en banc* opinion. *See Alexander v. Express Energy Servs. Operating, L.P.*, 784 F.3d 1032, 1037 (5th Cir. 2015); *United States v. Short*, 181 F.3d 620, 624 (5th Cir. 1999).

Instead of respecting the settled rule requiring panels of this Court to respect published decisions of earlier panels, amicus declares that "the *Sparks* panel usurped the role of the Supreme Court

15

and disregarded the text of section 2255(h)(2)."  ACB at 13.  That is wrong for all the reasons explained above and, in any event, is not for this panel to conclude. *Sparks* remains controlling authority of this Court and only this Court sitting *en banc* or the Supreme Court itself may revisit the issue.

## C.    The Amicus's Position has been Rejected by Every Circuit, Including This One.

Every circuit to decide the question has concluded that the Supreme Court made *Davis* retroactive through a combination of holdings, using the analysis established by the Supreme Court in *Tyler*.  *See In re Matthews*, 934 F.3d 296, 301 (3d Cir. 2019) (prima facie case for authorization); *In re Franklin*, 950 F.3d 909, 910–11 (6th Cir. 2020); *In re Mullins*, 942 F.3d 975, 977–79 (10th Cir. 2019); *In re Hammoud*, 931 F.3d 1032, 1039 (11th Cir. 2019); *see also United States v. Reece*, 938 F.3d 630, 635 (5th Cir. 2019), as revised (Sept. 30, 2019).

Moreover, numerous panels of this Court have granted authorization for prisoners to file second or successive § 2255 motions raising claims under *Davis*.  *See, e.g.*, *In re Bocanegra*, No. 20-10311 (5th Cir. June 2, 2020); *United States v. Dixon*, 799 Fed. Appx.

16

308 (5th Cir. 2020); *In re Diggs*, No. 19-11349 (5th Cir. Jan. 23, 2020).

Although these unpublished decisions are not binding on this panel,

the Court "may consider [them] as persuasive authority" for

permitting Mr. Hall to file a second or successive petition. *Light-Age,*

*Inc. v. Ashcroft-Smith*, 922 F.3d 320, 322 n.1 (5th Cir. 2019); *see also* 5th

Cir. R. 47.5.4.

## II. The Government's Arguments Concerning the Categorical Approach Are Meritless, but Should Be Addressed to the District Court in the First Instance.

The government, which agrees with Mr. Hall that *Davis* is

retroactive, has nonetheless urged this Court to deny Mr. Hall's

motion for authorization on the basis that 18 U.S.C. § 1201(a) sets out

a crime of violence under the elements clause of 18 U.S.C.

§ 924(c)(3)(A) because it includes the requirement that the

kidnapping resulted in death.  This is a merits-phase argument best

addressed to the district court in the first instance.  To obtain

authorization, Mr. Hall need only show that § 1201(a) *might* not set

out a crime of violence.  *Sparks*, 657 F.3d at 262.[4]  Mr. Hall has

---

[4] *See also United States v. Wiese*, 896 F.3d 720, 723-24 (5th Cir. 2018) (reserving to the district court the question of whether movant had established that his sentence rested on the residual clause).

satisfied that modest burden.

And the government's contentions are meritless in any event. To determine whether a predicate crime under 18 U.S.C. § 924(c)(3) is a crime of violence, the court has to employ a categorical analysis; in other words, the court must look only to the elements of the predicate offense, not the defendant's actual conduct. *Davis*, 139 S. Ct. at 2327-33; *see also Johnson*, 135 S. Ct. at 2557 (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)) (the categorical approach prohibits considering the facts of a particular case, because it "assesses whether a crime qualifies as a violent felony, in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion") (internal quotation marks omitted).

Section 1201(a) is violated when a defendant "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person . . . " and proceeds to travel across state lines. 18 U.S.C. § 1201(a)(1). Thus, no proof is required that the defendant accomplished the kidnapping through use (or threat) of violent force capable of causing physical

18

pain or injury. A defendant can be convicted for kidnapping the victim through inveigling (luring or enticing "through deceit or insincerity") or decoying ("entic[ing] . . . without force"). Inveigle, *Black's Law Dictionary* (11th ed. 2019); Decoy, *Black's Law Dictionary* (11th ed. 2019). Neither inveigling nor decoying require the use or threat of physical force. As a result, construed under the categorical approach, § 1201(a) is not a crime of violence. As a panel of this Court has observed, numerous courts have so concluded. *See Dixon*, 799 Fed. Appx. at 309 (noting, in the course of authorizing a second or successive § 2255 motion challenging a conviction under § 924(c) predicated on a kidnapping conviction under § 1201(a), that, although this Court "ha[s] not addressed whether kidnapping qualifies as a crime of violence post-*Davis*, [that] position is supported by our sister circuits that have")(citing *United States v. Walker*, 934 F.3d 375, 378–79 (4th Cir. 2019); *Knight v. United States*, 936 F.3d 495, 497 (6th Cir. 2019); *United States v. Brazier*, 933 F.3d 796, 800–01 (7th Cir. 2019); *United States v. Hopper*, 723 F. App'x 645, 646 (10th Cir. 2018); and *United States v. Gillis*, 938 F.3d 1181, 1204-05 (11th Cir. 2019)) .

The same logic holds true for kidnapping "resulting in death." Like kidnapping *simpliciter*, "kidnapping resulting in death" does not require—*i.e.*, have "as an element"—the intentional or even reckless use, attempted use, or threatened use of physical force.

The "if death of any person results" portion of § 1201(a) contains no *mens rea* requirement and permits conviction if the death is the result of negligent behavior or even pure accident. "The key phrase" in both 18 U.S.C. § 16(b) and § 924(c)—"the 'use . . . of physical force against the person or property of another'—most naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Leocal v. Ashcroft*, 543 U.S. 1, 9-10 (2004). In fact, as long as *any* death results, a defendant is strictly liable for a kidnapping "resulting in death." *See, e.g.*, *United States v. Hall*, 152 F.3d 381, 416-17 (5th Cir. 1998) (agreeing that Mr. Hall could be convicted under § 1201(a) "regardless of [his] mental state . . . with respect to the death").[5]

---

[5] A long line of cases interpreting the phrase "if death results" makes clear that it imposes strict liability on defendants. *See, e.g.*, *United States v. Hayes*, 589 F.2d 811, 821 (5th Cir. 1979) ("No matter how you slice it, 'if death results' does not mean 'if death was intended.'"); *United States v. Schwanke*, 598 F.2d 575, 579 (10th Cir. 1979) (analogizing "if death results" under 18 U.S.C. Section 844(i) to felony

Realistic scenarios exist in which a defendant could be convicted of kidnapping resulting in a negligent or accidental death without having used, attempted to use, or threatened to use force. For example, assume a man who, without using violence, lures a child victim into his car in a Texas park and then drives her to a remote location in a federal forest in Louisiana, and stays with her there for several days before she suddenly dies of an undiagnosed medical condition. That man could be convicted of kidnapping resulting in death, even though he did not intentionally (or even recklessly) use, attempt to use, or threaten to use force.

This plausible scenario demonstrates that, under the requisite categorical approach, "kidnapping resulting in death" does not qualify as a crime of violence. Here, the law "defines" the crime of kidnapping resulting in death through elements that do not require proof of anything beyond the bare occurrence of "any death." Because kidnapping resulting in death does not have as an element

---

murder); *see also United States v. Barraza*, 576 F.3d 798, 807 (8th Cir. 2009) ("The statute does not require that deaths result from voluntary and intentional conduct, only that 'the death of any person results' in the course of the kidnapping.") (quoting 18 U.S.C. § 1201(a)).

21

the use, attempted use or threatened use of force, it does not qualify as a crime of violence that can support Mr. Hall's conviction for violating § 924(c).

## CONCLUSION

Mr. Hall's motion for authorization and supplemental briefing satisfies the relatively low burden imposed by 28 U.S.C. § 2255(h)(2). Accordingly, Mr. Hall respectfully requests that this Court authorize him to file a second or successive motion under 28 U.S.C. § 2255 to raise his constitutional claim under *Davis*.

Respectfully submitted,

*/s/ Robert N. Hochman*
Robert N. Hochman

*Counsel for Orlando Cordia Hall, Movant*

# CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of June, 2020, an electronic copy of the foregoing brief was filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. I further certify that on the same date, the foregoing brief was served on the following by electronic mail:

Jonathan Bradshaw
Assistant United States Attorney
jonathan.bradshaw@usdoj.gov

Jonathan Mitchell
Mitchell Law PLLC
jonathan@mitchell.law

June 15, 2020                    */s/ Robert N. Hochman*
                                 Robert N. Hochman

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because it contains 4,277 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fifth Circuit Rule 32.2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Book Antiqua font.

June 15, 2020                    */s/ Robert N. Hochman*
                                 Robert N. Hochman