# 19-10345

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**IN RE ORLANDO CORDIA HALL,**
Movant

On Appeal from the United States District Court
For the Northern District of Texas
Fort Worth Division
District Court No. 4:94-CR-121-Y-2

**GOVERNMENT'S OPPOSITION TO
HALL'S MOTION TO STAY EXECUTION**

Erin Nealy Cox
United States Attorney

*s/ Leigha Simonton*
Leigha Simonton,
Chief, Appellate Division
Texas Bar No. 24033193

*s/ Jonathan Bradshaw*
Jonathan Bradshaw
Assistant United States Attorney
Colorado Bar No. 43838
U.S. Attorney's Office
Northern District of Texas
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
jonathan.bradshaw@usdoj.gov
Attorneys for Appellee

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................iv

INTRODUCTION ..........................................................................................1

BACKGROUND ...........................................................................................3

    1.    Hall commits a horrible crime, and a jury finds him guilty of kidnapping resulting in death, carrying a firearm during that crime of violence, and other unchallenged convictions. .........................3

    2.    This Court repeatedly rejects Hall's challenges to his convictions and sentences, leading to Hall's newest attack. ...........................4

    3.    The District of Columbia district court vacates its earlier preliminary injunction, which had barred Hall's execution, and Hall's execution date is set. .......................................................5

LEGAL FRAMEWORK FOR STAY MOTIONS ........................................6

DISCUSSION ...............................................................................................8

    1.    Hall's claim is meritless, and thus he cannot show a likelihood of success in avoiding his death sentence as required to obtain a stay of execution...................................................................................8

        A.    This Court should strictly limit any successive motion to challenge *only* the Section 924(c) conviction, Count Six—*not* the unrelated death sentence on Count One. ......................9

        B.    Even if this Court authorizes Hall's successive Section 2255 motion in full, his attack on the death sentence—which stems from a completely unrelated count—is meritless. .... 12

        C.    Hall is not entitled to a successive collateral attack on his Section 924(c) conviction because his predicate offense—

ii

capital death-results kidnapping—satisfies the elements clause. ...............................................................19

2.    The remaining stay factors weigh against granting a stay here. ....20

CONCLUSION.....................................................................................23

CERTIFICATE OF SERVICE ...............................................................24

CERTIFICATE OF COMPLIANCE .......................................................24

# TABLE OF AUTHORITIES

**Federal Cases**            **Page(s)**

*Adams v. Thaler*, 679 F.3d 312 (5th Cir. 2012) .................................................6

*Barefoot v. Estelle*, 463 U.S. 880 (1983)..........................................................7

*Barr v. Lee*, No. 20A8, 2020 WL 3964985 (U.S. Jul. 14, 2020) .................. 7, 21

*Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) ....................................................7

*Crutsinger v. Davis*, 930 F.3d 705 (5th Cir. 2019) .....................................7, 8, 10

*Gonzalez v. Thaler*, 565 U.S. 134 (2012) ....................................................... 12

*Greenlaw v. United States*, 554 U.S. 237 (2008) ............................................ 18

*United States v. Hall*, 455 F.3d 508 (5th Cir. 2006).........................................4

*Hill v. McDonough*, 547 U.S. 573 (2006) ........................................................7

*In re Fed. BOP Execution Protocol Cases*, No. 19-MC-145 (TSC),
    2020 WL 5604298 (D.D.C. Sept. 20, 2020) ............................................5

*In re Sparks*, 657 F.3d 258 (5th Cir. 2011).................................................... 12

*Johnson v. Mississippi*, 486 U.S. 578 (1988)................................................. 15

*Johnson v. United States*, 576 U.S. 591 (2015) ................................................4

*Jones v. Tex. Dep't of Criminal Justice*, 880 F.3d 756 (5th Cir. 2018) ...................6

*Lonchar v. Thomas*, 517 U.S. 314 (1996) ........................................................8

*Murphy v. Collier*, 942 F.3d 704 (5th Cir. 2019)......................................21, 22

*Sells v. Livingston*, 750 F.3d 478 (5th Cir. 2014)..............................................6

*Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) ....................................................5

*United States v. Benbrook*, 119 F.3d 338 (5th Cir. 1997) ....................... 15, 16, 17

*United States v. Clark*, 816 F.3d 350 (5th Cir. 2016) ...................................... 11

**Federal Cases, continued** **Page(s)**

*United States v. Davis*, 139 S. Ct. 2319 (2019) ............................................. 5, 17

*United States v. Hall*, 152 F.3d 381 (5th Cir. 1998)....................................1, 3, 4

*United States v. Key*, 205 F.3d 773 (5th Cir. 2000)......................................... 12

*United States v. Pratt*, 915 F.3d 266 (4th Cir. 2019) ....................................... 17

*United States v. Ross*, 969 F.3d 829 (8th Cir. 2020)........................................ 20

*United States v. Wiese*, 896 F.3d 720 (5th Cir. 2018)....................................... 11

*Warner v. Gross*, 135 S. Ct. 824 (2015)........................................................... 21

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)....................6, 10, 12

**INTRODUCTION**

More than 25 years ago, Orlando Hall kidnapped, raped, and buried alive a 16-year-old girl—a "heinous, cruel, and depraved" crime. *United States v. Hall*, 152 F.3d 381, 406 (5th Cir. 1998). A jury found him guilty of kidnapping resulting in death, in violation of 18 U.S.C. 1201(a), and recommended a death sentence for that offense, which the district court imposed. The jury also found him guilty of other offenses, and the court imposed other sentences for those offenses. Since then, Hall has attacked that judgment in a variety of ways—all of them unsuccessful. His most recent attack—the pending application for authorization to file a successive motion under 28 U.S.C. § 2255 challenging his conviction for using a firearm during a crime of violence (in violation of 18 U.S.C. § 924(c)), but *not* the kidnapping-resulting-in-death conviction that supports his capital sentence—has been litigated for more than a year and a half, against the backdrop that Hall could not be executed because of a longstanding preliminary injunction issued by the U.S. District Court for the District of Columbia in 2006.

Just over two weeks ago, however, that injunction was vacated, clearing the way for Hall's sentence to be carried out. As the Attorney General noted in announcing the scheduling of Hall's execution for November 19, Hall is the only child murderer on federal death row who is eligible for execution but not

1

subject to an injunction or stay, and his 25-year-old capital conviction is among the oldest of any federal death-row inmate. The United States has explained in multiple prior submissions (and reiterates below) why Hall is not entitled to authorization to file his proposed successive Section 2255 motion, and the government believes an expedited ruling on that motion would be appropriate given the scheduled execution.

Critically, however, a pending successive Section 2255 motion is not a legal impediment to an execution, which is why Hall has separately moved to stay his execution. Hall briefly suggests that he is entitled to a stay as of right, but neither this Court nor the Supreme Court has ever indicated that a stay should be granted as of right based on a successive motion for collateral relief. Rather, as Hall ultimately appears to recognize, a stay or injunction of his execution requires a showing of likelihood of success in challenging the legality of the execution, as well as a demonstration of other equitable factors.

As explained in detail below, Hall's stay motion fails because he cannot show a likelihood of successfully challenging his execution. Indeed, Hall's challenge fails for three separate reasons: (1) even if authorization to challenge the Section 924(c) conviction were granted, there is no basis for authorizing a separate challenge to the death sentence imposed for Hall's kidnapping-resulting-in-death conviction, which is the sentence the government plans to

implement on November 19; (2) even if Hall were authorized to challenge his death sentence, such a challenge has no meaningful prospect of success given that the jury clearly would have imposed the death sentence on the kidnapping count regardless of the validity of the separate Section 924(c) conviction; and (3) in any event, kidnapping resulting in death is a crime of violence, so Hall's request for authorization to challenge his Section 924(c) conviction should be denied. In addition to all of that, the equities do not support staying Hall's execution for a horrific crime committed more than a quarter-century ago. This Court should deny his motion for a stay so that his long-delayed capital sentence for the kidnapping and murder of Lisa Rene can be carried out on November 19.

## BACKGROUND

1. **Hall commits a horrible crime, and a jury finds him guilty of kidnapping resulting in death, carrying a firearm during that crime of violence, and other unchallenged convictions.**

In September 1994, Hall and his coconspirators, in retaliation for a drug debt, kidnapped, gang-raped, beat with a shovel, soaked in gasoline, and buried alive an innocent 16-year-old girl—the little sister of one of the men who owed him marijuana. *See Hall*, 152 F.3d at 389-90. A grand jury charged Hall with, among other things, interstate kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) (Count One), and using or carrying a

firearm during and in relation to a crime of violence under Section 924(c) (Count Six).  (Gov't Appendix 1, 8.)

Before trial, the government submitted proposed jury instructions that, for Count One, modified the pattern kidnapping instruction because Hall was charged with Interstate Kidnapping Resulting in Death.  (Gov't Appendix 26.) Consistent with that proposed charge, the court instructed the jury that Count One had as an element "[t]hat the death of Lisa Rene resulted."  (Gov't Appendix 58-59.)

The jury found Hall guilty on all counts, and—following a separate penalty phase—recommended that Hall be sentenced to death on Count One. *See Hall*, 152 F.3d at 390.  The district court imposed the jury's recommended sentence of death on Count One, as required under 18 U.S.C. § 3594, and imposed a consecutive 60-month term on Count Six.  *Id.*

**2.     This Court repeatedly rejects Hall's challenges to his convictions and sentences, leading to Hall's newest attack.**

This Court affirmed Hall's judgment in 1998, *see id.* at 389, and the denial of Section 2255 relief in 2006, *see United States v. Hall*, 455 F.3d 508, 510 (5th Cir. 2006).  This Court also denied Hall's request to file a successive Section 2255 motion in 2016, which involved a collateral attack on his Section 924(c) conviction based on *Johnson v. United States*, 576 U.S. 591 (2015).  *See In re Hall*, No. 16-10670 (5th Cir. June 20, 2016).

In 2018, the Supreme Court held in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), that 18 U.S.C. § 16(b)'s residual clause was unconstitutionally vague in defining the phrase "crime of violence." *Id.* at 1213. Then, in March 2019, Hall filed his Proposed Section 2255 Motion in the district court and his request for successive authorization in this Court. *See Hall v. United States*, No. 4:19-CV-258-Y, Dkt. No. 1 (Proposed Section 2255 Motion). Thereafter, the Supreme Court decided *United States v. Davis*, 139 S. Ct. 2319 (2019), which invalidated Section 924(c)(3)(B)'s residual clause as unconstitutionally vague.

The parties have fully briefed the issues related to Hall's application for authorization, and this Court heard argument on July 21, 2020.

**3.    The District of Columbia district court vacates its earlier preliminary injunction, which had barred Hall's execution, and Hall's execution date is set.**

While Hall was appealing and collaterally attacking his sentence in this Court, he joined litigation in the U.S. District Court for the District of Columbia challenging the then-existing federal lethal-injection protocol. In 2006, that court entered a preliminary injunction barring Hall's execution (and others). That preliminary injunction remained in place for the next 14 years but was vacated on September 20, 2020. *In re Fed. BOP Execution Protocol Cases*, No. 19-MC-145 (TSC), 2020 WL 5604298, at *4 (D.D.C. Sept. 20, 2020). Thus, Hall became eligible to be scheduled for execution.

Because of these developments, the United States moved to expedite resolution of Hall's instant application on September 28, 2020. The government respectfully requested expedition of this Court's decision, but it also explained why Hall's pending application would not serve as a basis to delay his execution, which likely would be scheduled imminently given the vacated injunction. A few days later, on September 30, 2020, the Attorney General announced that the Bureau of Prisons had scheduled Hall's execution to take place on November 19, 2020. Based on his noticed execution, Hall responded to the motion to expedite and has now sought a stay in this Court.

## LEGAL FRAMEWORK FOR STAY MOTIONS

Injunctive relief is "an extraordinary remedy." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). In order to qualify for a preliminary injunction, a party must establish "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Jones v. Tex. Dep't of Criminal Justice*, 880 F.3d 756, 759 (5th Cir. 2018); *see, e.g.*, *Sells v. Livingston*, 750 F.3d 478, 480 (5th Cir. 2014) (per curiam) (same for motion to enjoin execution); *Adams v. Thaler*, 679 F.3d 312, 318 (5th Cir. 2012) (same for motion to stay

execution).  A defendant's inability to demonstrate a strong likelihood of success on the merits "is, effectively, dispositive" of a request to stay or enjoin an execution.  *Crutsinger v. Davis*, 930 F.3d 705, 707 (5th Cir. 2019); *see, e.g.*, *Barr v. Lee*, No. 20A8, 2020 WL 3964985, at *1 (U.S. Jul. 14, 2020) (per curiam) (vacating district-court order enjoining scheduled executions where prisoners failed to "establish[] that they are likely to succeed on the merits" of their claims).

Turning to the remaining factors, in assessing the public interest and the potential harms of enjoining an execution, the Supreme Court has made clear that a stay of execution "is not available as a matter of right," and that "[b]oth the [government] and the victims of crime have an important interest in the timely enforcement of a sentence."  *Hill v. McDonough*, 547 U.S. 573, 584 (2006).  While federal courts should give "non-frivolous claims of constitutional error the careful attention that they deserve," "the administration of justice ought not to be interfered with on mere pretexts," *Barefoot v. Estelle*, 463 U.S. 880, 888 (1983), or attempts "to use [further] challenges as tools to interpose unjustified delay," *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133-34 (2019).

Moreover, Hall cannot rely on the lower standard for stays announced in *Barefoot*.  The Supreme Court has emphasized that *Barefoot* occurred in the

context of a first federal habeas petition and recognized that "successive federal habeas corpus petitions present a different issue." *Lonchar v. Thomas*, 517 U.S. 314, 321 (1996). This Court has noted that *Barefoot* "stand[s] for the unremarkable proposition that a petitioner may not be executed before a court has reviewed the merits of his [first] habeas petition." *Crustinger*, 936 F.3d at 272. This Court finished fully adjudicating Hall's first motion more than a decade ago.

## **DISCUSSION**

1. **Hall's claim is meritless, and thus he cannot show a likelihood of success in avoiding his death sentence as required to obtain a stay of execution.**

Hall's attempt to attack his death sentence fails for at least three reasons. First, there is no jurisdiction over his claim that his challenge to Count Six reaches his conviction or sentence imposed on Count One. Second, there is no merit to the argument that the jury's finding on Count Six, at the guilt phase, somehow lingered in the atmosphere during their deliberations at the penalty phase. And third, capital death-results kidnapping satisfies the elements clause, meaning his *Davis* claim is meritless too. For any or all of those independent reasons, Hall cannot show a likelihood of success in challenging his death sentence and therefore is not entitled to a stay of execution.

**A.   This Court should strictly limit any successive motion to challenge *only* the Section 924(c) conviction, Count Six—*not* the unrelated death sentence on Count One.**

Hall contends that the Court should stay the scheduled execution because, if he can successfully litigate against his Section 924(c) conviction— which he should not be able to do for reasons explained in the government's prior submissions and summarized below in Section 1C—he would be entitled to resentencing on all counts of conviction.  That is incorrect.

Even if the Court were to grant Hall authorization to file a successive Section 2255 motion challenging his Section 924(c) conviction, his current claims do not raise any jurisdictionally proper challenge to his death sentence. Hall portrays his claim as indirectly challenging his death sentence, but he has not actually raised any challenge to his death sentence on his Count One conviction for interstate kidnapping resulting in death that he could properly pursue in his proposed Section 2255 action.

In an effort to translate his current successive collateral attack into a challenge of his death sentence, Hall has essentially moved this Court to certify two claims under 28 U.S.C. § 2255(h)(2): (1) an attack on his Section 924(c) conviction under *Davis*, and (2) a claim that, if he is correct, he must be resentenced on all of his other convictions, including Count One, on which he was sentenced to death.  *See* Proposed Section 2255 Motion.  Hall's effort to sneak in a second claim under the guise of *Davis* becomes obvious when his

Proposed Motion is read alongside that of his coconspirator Webster. Webster has also filed an application for successive authorization to level a *Davis* claim against his Section 924(c) conviction. *In re Webster*, No. 20-10530 (5th Cir. June 2, 2020). But unlike Hall, Webster attacks only his Section 924(c) conviction and mandatory 60-month sentence, making no real effort to undermine his sentence on the substantive kidnapping count. *Id.*[1]

The Court should not authorize Hall to use *Davis* to attack his death sentence, which is moored to a different count against which he has no challenge, let alone one that would satisfy 28 U.S.C. § 2255(h)(2). Hall's attack on his death sentence does not rely on the rule of *Davis*. *Davis* held that one provision of Section 924(c) was unconstitutionally vague, but that holding has nothing to do with the validity of Hall's conviction under the federal kidnapping statute, nor does Hall contend otherwise. *See* Proposed Section 2255 Motion at 16 (conceding that "[*Davis*][2] does not affect Mr. Hall's conviction on Count 1"). Rather, Hall argues that because his Section 924(c) conviction is infirm, he is entitled to an entirely new sentencing proceeding on a different count because his death sentence "is sufficiently tainted." *Id.* at 19.

---

[1] In his prayer for relief, Webster asks—without further elaboration—for a "resentencing hearing."

[2] Hall's motion actually cites *Johnson*, but Hall now seeks to invoke the rule of *Davis*.

But that argument does not satisfy the requirements of Section 2255(h)(2), so Hall cannot invoke this Court's jurisdiction under that section to challenge his death sentence.  It is not enough for Hall to claim that *Davis* is a piece of his argument for setting aside his death sentence—Hall must make at least a prima facie showing that his claim relies on the rule of *Davis*. *United States v. Wiese*, 896 F.3d 720, 723 (5th Cir. 2018).  For Hall's argument about his death sentence, he cannot do so.  His claims about the "sentencing package doctrine" and about a "sufficiently tainted" sentence do not rely on *Davis* to invoke jurisdiction under Section 2255(h)(2) and this Court's caselaw. *See id.* Indeed, the mandatory consecutive five-year sentence the district court imposed on Count Six as a matter of statutory obligation was certainly not part of a "sentencing package" that was bundled with the death sentence on Count One, which the jury recommended in its discretion and the district court was then  required to impose under Section 3594. *See United States v. Clark*, 816 F.3d 350, 360 (5th Cir. 2016) (holding that vacatur of a Section 924(c) conviction did not unbundle a sentencing package or require resentencing on other counts).

Hall's argument for plenary resentencing seeks to treat any *Davis* error as an infirmity in the sentencing *procedure*. *See* Proposed Section 2255 Motion at 18 ("Without resentencing, there would be an unacceptable risk that the jury's

consideration of Count 6 affected the sentence it imposed for Count 1."). But, after explicitly disclaiming any argument that the rule of *Davis*—a substantive rule—in any way substantively undermines his kidnapping conviction for which he was sentenced to death, *id.* at 16, Hall cannot use the rule of *Davis* to attack the jury's penalty-phase deliberations on an unrelated count. Certainly, the Supreme Court has not suggested that *Davis* works in that way, so Hall cannot rely on *Davis* to so satisfy Section 2255(h)(2). *In re Sparks*, 657 F.3d 258, 260 (5th Cir. 2011).

Hall argues that the government's jurisdictional argument to his death-sentence challenge is "inapposite, improper, and out of time." (Motion at 11.) But Section 2255(h)'s strict limitations are jurisdictional, *United States v. Key*, 205 F.3d 773, 774 (5th Cir. 2000), so the government cannot waive or forfeit its challenges to Hall's misguided attempts to manufacture jurisdiction. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Because any authorization should be limited to Hall's attack on his Section 924(c) conviction and resulting 60-month sentence—not his unaffected death sentence—a grant of authorization would provide no basis for staying Hall's execution.

**B.** **Even if this Court authorizes Hall's successive Section 2255 motion in full, his attack on the death sentence—which stems from a completely unrelated count—is meritless.**

In any event, even if Hall were authorized to challenge his death sentence in the district court, he cannot show any likelihood that his challenge would succeed. Put simply, Hall's death-penalty eligibility (and the jury's death-penalty recommendation) did not depend in any way on his Section 924(c) conviction, so invalidating his Section 924(c) conviction would not affect the validity of his capital sentence for kidnapping resulting in death.

The jury made its death-penalty recommendation after Hall's guilt-phase proceedings were completed. During the penalty phase, the jury was free to consider Hall's use or carrying of a firearm during the brutal kidnapping and murder of Lisa Rene because it had already found that those *facts* were proven beyond a reasonable doubt. While Hall's *conduct* during the brutal kidnapping was highly relevant in the penalty phase, the fact that Hall had a separate *conviction* under Section 924(c) was not. The sole issue confronting the jury during the penalty phase was whether to recommend the death penalty for kidnapping resulting in death, considering Hall's conduct and relevant aggravating and mitigating circumstances. In deciding that issue, the jury knew that Hall's conduct in kidnapping and murdering Lisa Rene was violent, regardless of whether he was charged and convicted under Section 924(c).

This Court should therefore reject Hall's attempt to stay his execution for kidnapping and murdering Lisa Rene based on the potential legal (as opposed to factual) invalidity of his separate Section 924(c) count. In his Proposed Section 2255 Motion, Hall claims that, "[w]ithout resentencing, there would be an unacceptable risk that the jury's consideration of Count 6 affected the sentence it imposed for Count 1." Proposed Section 2255 Motion at 18. But Hall does not dispute the *facts* underlying his Section 924(c) conviction, nor does he argue that the evidence about his use of a gun would have been inadmissible at trial but for the existence of the Section 924(c) count. There is no reason—either in logic or in the record—to speculate that the jury's death-penalty recommendation had anything to do with the mere existence of a separate Section 924(c) count based on those undisputed, and undisputedly relevant, facts. And nothing in *Davis* or the Supreme Court's vagueness jurisprudence undermines those factual findings or supports Hall's novel argument that the mere existence of a Section 924(c) count might somehow have aggravated his sentence on a separate capital count. Because Hall's Section 2255 motion does not challenge—and cannot undo—the jury's finding that he used/carried a gun during the brutal kidnapping and murder of Lisa Rene, invalidating Hall's Section 924(c) conviction on vagueness grounds would have no effect on his death sentence.

14

The cases on which Hall relies, *Johnson v. Mississippi*, 486 U.S. 578 (1988),[3] and *United States v. Benbrook*, 119 F.3d 338 (5th Cir. 1997), actually confirm the flaw in his convoluted attack on his death sentence.  (Motion at 18-19.)  In *Johnson v. Mississippi*, the jury found Johnson guilty of murder and recommended the death penalty after it "found three aggravating circumstances, any one of which, as a matter of Mississippi law, would have been sufficient to support a capital sentence."  486 U.S. at 580-81.  One of the qualifying aggravators for the death sentence was the fact of a previous conviction in New York for felony assault.  *Id.*  Johnson later succeeded in having the New York Court of Appeals reverse the assault conviction, and the Supreme Court—citing the possibility that the invalid conviction played a decisive role as one of the requisite aggravating factors under Mississippi law— remanded the case for further proceedings.  *Id.* at 586, 589.  The Supreme Court explained that the existence of Johnson's prior conviction was an important part of the prosecution's case for the death penalty, and that "the error here extended beyond the mere invalidation of an aggravating circumstance supported by evidence that was otherwise admissible" because

---

[3] *Johnson v. Mississippi* is listed in the Table of Authorities in Hall's Motion to Stay, but it is not actually cited.  (Motion at iii.)  It is cited repeatedly in Hall's Proposed Section 2255 motion.  *See* Proposed Section 2255 Motion at 2, 11, 12.

"the jury was allowed to consider evidence that has been revealed to be materially inaccurate."  *Id.* at 590 & n.8.

The logic of *Johnson* thus undermines, rather than supports, Hall's efforts to invalidate his death sentence.  Unlike *Johnson*, Hall's Section 924(c) conviction was not an aggravating factor in the jury's consideration of the death penalty, and the evidence supporting that conviction was both accurate and admissible regardless of the legal validity of the charge.  Instead, Hall's qualifying statutory aggravators included findings that Hall (1) caused Lisa Rene's death during the kidnapping, and (2) committed the crime in an especially heinous, cruel, or depraved manner in that it involved Lisa Rene's torture or serious physical abuse—aggravators that are independent of Hall's challenge to his Section 924(c) conviction.  (Gov't Appendix 93.)  And Hall cannot point to any portion of the record where the government argued— vigorously or otherwise—for the death penalty because of the existence of a separate Section 924(c) conviction.

*Benbrook* also undermines, rather than supports, Hall's claim.  *Benbrook* involved a claim by the defendant that, after he successfully challenged his Section 924(c) conviction, the district court violated his double-jeopardy rights at resentencing by assigning him a higher offense level and guideline range than before.  119 F.3d at 340.  In rejecting the defendant's argument, this

Court noted that the two sentences were "interdependent" because "the now vacated § 924(c) conviction . . . freed the district court's hands, where they were tied before, to increase the offense level of Benbrook's drug conviction for the firearm offense pursuant to [USSG] § 2D1.1(b)(1)." *Id.* As is obvious from this description, unlike in *Benbrook*, Hall's Section 924(c) conviction was not "interdependent" with his kidnapping-resulting-in-death conviction because, for example, it did not affect his guideline range on that count, nor was it an aggravator for imposition of the death penalty, such that it affected the jury's death-penalty recommendation.

Hall's citation to the "sentencing package doctrine" fares no better. *See* Proposed Section 2255 Motion at 12-14. Contrary to Hall's suggestion, that doctrine does not require an appellate court to vacate every aspect of a sentence simply because one conviction is invalidated. *See, e.g.*, *United States v. Pratt*, 915 F.3d 266, 275 (4th Cir. 2019). Instead, plenary resentencing may be appropriate—and agreed to by the government, *see Davis*, 139 S. Ct. at 2336—when the vacatur of a Section 924(c) count has the effect of reducing a defendant's overall sentence, as *Benbrook* itself reflects. In those circumstances, the vacatur of the mandatory Section 924(c) sentence has altered the overall "sentencing package," which takes into account "a breadth of information" to ensure that the "punishment will suit not merely the offense but the individual

defendant," and the district court may therefore wish to adjust the defendant's remaining sentences to ensure the overall sentence remains sufficient. *Greenlaw v. United States*, 554 U.S. 237, 253-54 (2008); *see also id.* (explaining that, in a "sentencing package" case, "the defendant ultimately may gain nothing from his limited success on appeal, but he will also lose nothing, as he will serve no more time than the trial court originally ordered" after plenary resentencing). In this case, consideration of the "sentencing package doctrine" only reflects the quixotic nature of Hall's argument: Hall asks this Court to surmise that if his Section 924(c) sentence is vacated, then his remaining sentence—including the death penalty—should be further reduced to reflect his overall culpability. The logic of the "sentencing-package doctrine" supports the opposite conclusion.

In sum, Hall's Section 924(c) *conviction* and its "crime of violence" definition played no role in his separate death-penalty proceeding. The sole issue confronting the penalty-phase jury was whether to recommend the death penalty based on Hall's conduct and relevant aggravating and mitigating circumstances. The jury listened to the evidence at trial and sentencing, and it had already found beyond a reasonable doubt that Hall fully participated in the kidnapping and murder of Lisa Rene. Put simply, the jury was painfully aware that Hall's brutal conduct was violent and involved a firearm regardless

whether he had been charged and convicted under Section 924(c). Accordingly, even if his Section 924(c) conviction is held to be invalid in light of *Davis*, that holding in no way calls into question his death sentence, and thus this proceeding should not be used to stay his execution resulting from the jury's valid death-penalty recommendation.

**C.** **Hall is not entitled to a successive collateral attack on his Section 924(c) conviction because his predicate offense—capital death-results kidnapping—satisfies the elements clause.**

Hall's application is premised on the possibility that his Section 924(c) conviction depends upon the statutory provision that *Davis* invalidated. Because that is untrue, Hall is not entitled to a successive motion to collaterally attack that conviction, and, *a fortiori*, he fails to show a likelihood of success on the challenge to his death sentence that underlies his motion for a stay of execution.

The government's prior briefing has explained in full that Hall's Section 924(c) conviction remains valid, notwithstanding *Davis*, because capital death-results kidnapping satisfies Section 924(c)'s elements clause. (Supp. Ltr. Brief at 4-8.) In short, Section 1201(a) is divisible, and death-results is an element of the aggravated crime, for which the government is required to prove a causal link between the kidnapping and the death. *Capital* kidnapping resulting in death, moreover, categorically has as an element—imported from 18 U.S.C. § 3591(a)(2)—the use, attempted use, or threatened use of physical force

19

against the person or property of another because no defendant can be found guilty of that offense without a finding that he used force capable of causing physical pain or injury against another person.

The Eighth Circuit recently vindicated the government's position in *United States v. Ross*, 969 F.3d 829 (8th Cir. 2020). Like Hall, the defendants stood convicted of death-results kidnapping, which the Eighth Circuit termed "the more serious offense of kidnapping." *Id.* at 837-38. Setting aside whether kidnapping requires force, the Eighth Circuit concluded that kidnapping resulting in death does. *Id.* at 838. It also rejected the suggestion, which Hall advances, that a "coincidental" death during the kidnapping might satisfy the statute. *Id.* Instead, the court observed, the kidnapping must be "the but-for cause of the death." *Id.*

This Court should follow *Ross* to the conclusion compelled by Supreme Court and Circuit precedent. Because Hall's Section 924(c) conviction is predicated on a crime of violence that involves the use of physical force in satisfaction of the elements clause, *Davis* cannot help him.

**2.     The remaining stay factors weigh against granting a stay here.**

Although Hall's failure to show likelihood of success on the merits of a challenge to his death sentence is enough to deny his motion for a stay of execution, the equities also support denial of that motion. While there is no

dispute that Hall faces irreparable harm, that factor alone cannot justify a stay here. If it could, every stay-of-execution motion would be granted, and no death sentences would ever be enforced. Hall's kidnapping-resulting-in-death conviction is 25 years old, and all of his challenges to that conviction and his death sentence have failed. His current challenge—even if successful—cannot undermine his death sentence, (*see supra* Part I.B.), and thus this proceeding cannot prevent his execution, especially now that the injunction that previously barred it has been vacated.

Moreover, the fact that a defendant has litigation pending near the time of his execution is hardly dispositive. This July, for example, executions were scheduled for three federal inmates who had challenged the federal lethal-injection protocol on multiple grounds. The Supreme Court vacated an injunction of the executions and directed that they could "proceed as planned," even though all three inmates had numerous pending claims. *Lee*, 2020 WL 3964985, at *2; *see, e.g.*, *Warner v. Gross*, 135 S. Ct. 824 (2015) (denying application for a stay of execution even though the applicant had a pending claim on which the Supreme Court ultimately granted certiorari in a different case). While Hall filed his application in 2019, his claims in this application have no bearing on his death sentence for reasons already stated. That is why Hall's citation to *Murphy v. Collier*, 942 F.3d 704 (5th Cir. 2019), is

not persuasive.  In *Murphy*, unlike here, the defendant "ha[d] a strong likelihood of success on the merits of his claim," which presented a "significant inquiry."  *Id.* at 709.  Here, Hall should not succeed on his claim and—even if he did—his success in this proceeding would not undermine the conviction that was the basis for his death sentence.  (*See supra* Part 1.)

Finally, there is no dispute that the public interest favors finality in judgments and the government being able to carry them out.  Hall's claim that those interests are "superseded" here is entirely based on the faulty premise that his claim would have bearing on his "conviction and sentence."  (Motion at 22.)  Hall's intentionally vague argument attempts to elide the key issue here.  While Hall's claim could undo his Section 924(c) conviction, that outcome would not undermine his death sentence, which was based on a separate conviction.  Thus, the public interest in the finality of judgments and having them enforced is not "superseded" here.

# CONCLUSION

For these reasons, regardless of whether this Court expedites its decision, it should deny Hall's motion for a stay of execution.

Respectfully submitted,

Erin Nealy Cox
United States Attorney

*s/ Leigha Simonton*
Leigha Simonton,
Chief, Appellate Division
Texas Bar No. 24033193

*s/ Jonathan Bradshaw*
Jonathan Bradshaw
Assistant United States Attorney
Colorado Bar No. 43838

U.S. Attorney's Office
Northern District of Texas
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
jonathan.bradshaw@usdoj.gov

Attorneys for Appellee

## CERTIFICATE OF SERVICE

I certify that this response was served on Hall's attorney, Robert N. Hochman, through the Court's ECF system on October 16, 2020, and that: (1) any required privacy redactions have been made; (2) the electronic submission is an exact copy of the paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Jonathan Bradshaw*
Jonathan Bradshaw

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5050 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Calisto MT font.

*/s/ Jonathan Bradshaw*
Jonathan Bradshaw
Assistant United State Attorney
Date:  October 16, 2020