# 19-10345

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**IN RE ORLANDO CORDIA HALL,**
Movant

On Appeal from the United States District Court
For the Northern District of Texas
Fort Worth Division
District Court No. 4:94-CR-121-Y-2

**APPENDIX TO
GOVERNMENT'S OPPOSITION TO
HALL'S MOTION TO STAY EXECUTION**

Respectfully submitted,
ERIN NEALY COX
UNITED STATES ATTORNEY

Respectfully submitted,
*s/ Jonathan Bradshaw*
Jonathan Bradshaw
Assistant United States Attorney
Colorado Bar No. 43838
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
jonathan.bradshaw@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that this appendix was served on Hall's attorney, Robert N. Hochman, through the Court's ECF system on October 16, 2020, and that: (1) any required privacy redactions have been made; (2) the electronic submission is an exact copy of the paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Jonathan Bradshaw*
Jonathan Bradshaw

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

NOV 2 2

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | No. 4:94-CR-121-Y |
| | * | [Supersedes Indictment |
| BRUCE CARNEIL WEBSTER, | * | returned 11/4/94 as to |
| also known as B-Love (1) | * | MARVIN TERRANCE HOLLOWAY] |
| ORLANDO CORDIA HALL, | * | |
| also known as Lan (2) | * | |
| STEVEN CHRISTOPHER BECKLEY (3) | * | |
| DEMETRIUS KENYON HALL, | * | |
| also known as Jack Frost (4) | * | |
| MARVIN TERRANCE HOLLOWAY (5) | * | |

The Grand Jury charges:

## COUNT 1

On or about September 24, 1994, in the Fort Worth Division of the Northern District of

Texas and elsewhere, **BRUCE CARNEIL WEBSTER**, also known as B-Love, **ORLANDO**

**CORDIA HALL,** also known as Lan, **STEVEN CHRISTOPHER BECKLEY, DEMETRIUS**

**KENYON HALL,** also known as Jack Frost, and **MARVIN TERRANCE HOLLOWAY,**

defendants, aided and abetted by each other and others, did willfully and unlawfully seize,

confine, inveigle, kidnap, abduct, and carry away and hold for ransom, reward, and otherwise,

Lisa Rene, and did willfully transport said Lisa Rene in interstate commerce from the Northern

District of Texas to a location in or near Pine Bluff, Arkansas; and as a result the death of Lisa

Rene occurred.

In violation of Title 18, United States Code, Sections 1201(a)(1) and 2.

Webster v. Lockett 005193

## COUNT 2

From at least on or about September 21, 1994, and continuing thereafter through on or about October 6, 1994, in the Fort Worth Division of the Northern District of Texas and elsewhere, **BRUCE CARNEIL WEBSTER,** also known as B-Love, **ORLANDO CORDIA HALL,** also known as Lan; **STEVEN CHRISTOPHER BECKLEY, DEMETRIUS KENYON HALL,** also known as Jack Frost; and **MARVIN TERRANCE HOLLOWAY,** defendants, willfully and unlawfully did combine, conspire, confederate and agree together and with each other, and with other persons known and unknown to the Grand Jury, to commit the offense of kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1).

In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Northern District of Texas and elsewhere:

Indictment - Page 2

Webster v. Lockett 005194

<u>OVERT ACTS</u>

1.      On or about September 21, 1994, **ORLANDO CORDIA HALL** and **MARVIN TERRANCE HOLLOWAY**, defendants, had an interstate telephone conversation with each other regarding the loss of approximately $5,000.00 in cash which had been paid to obtain a quantity of marihuana.

2.      On or about September 23, 1994, **DEMETRIUS KENYON HALL,** defendant, went to the Polo Run Apartments, Arlington, Texas.

3.      On or about September 24, 1994, **MARVIN TERRANCE HOLLOWAY,** defendant transported **BRUCE CARNEIL WEBSTER,** defendant, to Little Rock Regional Airport and purchased an airline ticket in order for **WEBSTER** to travel to the Northern District of Texas.

4.      On or about September 24, 1994, **BRUCE CARNEIL WEBSTER,** defendant, traveled by airplane from Little Rock, Arkansas to the Northern District of Texas.

5.      On or about September 24, 1994, **STEPHEN CHRISTOPHER BECKLEY,** defendant, purchased duct tape and gloves from Payless Cashways, Irving, Texas.

6.      On or about September 24, 1994, **BRUCE CARNEIL WEBSTER, ORLANDO CORDIA HALL, STEVEN CHRISTOPHER BECKLEY,** and **DEMETRIUS KENYON HALL,** defendants, forcibly abducted Lisa Rene from apartment number 507, Polo Run Apartments, 1526 Chukka, Arlington, Texas, and transported her to Irving, Texas.

7.      On or about September 24, 1994,  **BRUCE CARNEIL WEBSTER, DEMETRIUS KENYON HALL,** and **STEVEN CHRISTOPHER BECKLEY,** defendants, transported Lisa Rene from Irving, Texas to a location in or near Pine Bluff, Arkansas.

Indictment - Page 3

Webster v. Lockett 005195

8. On or about September 25, 1994, **ORLANDO CORDIA HALL**, defendant, concealed himself in an attic located in the residence at 3129 Tudor Lane, Irving, Texas.

9. On or about September 25, 1994, **ORLANDO CORDIA HALL**, defendant, travelled by airplane from the Northern District of Texas to Little Rock, Arkansas.

10. On or about September 25, 1994, **BRUCE CARNEIL WEBSTER**, defendant, rented Room 513 at the Pine Bluff Motel, Pine Bluff, Arkansas, where Lisa Rene was held captive.

11. On or about September 26, 1994, **MARVIN TERRANCE HOLLOWAY**, defendant, allowed **ORLANDO CORDIA HALL**, defendant, to use **HOLLOWAY'S** red Nissan 240SX automobile.

12. On or about September 26, 1994, **STEPHEN CHRISTOPHER BECKLEY**, defendant, rented Room 136 at the Town House Inn, Pine Bluff, Arkansas, where Lisa Rene was held captive.

13. On or about September 26, 1994, **BRUCE CARNEIL WEBSTER, ORLANDO CORDIA HALL** and **STEVEN CHRISTOPHER BECKLEY**, transported Lisa Rene to Byrd Lake Park, Pine Bluff, Arkansas, where she was killed and buried.

14. On or about September 26, 1994, **DEMETRIUS KENYON HALL**, defendant, remained at Room 136 at the Town House Inn, Pine Bluff, Arkansas, to clean the room.

15. On or about September 26, 1994, **BRUCE CARNEIL WEBSTER**, defendant, took the clothing of Lisa Rene and burned it in a vacant field located in Pine Bluff, Arkansas.

In violation of Title 18, United States Code, Section 1201(c).

Indictment - Page 4

Webster v. Lockett 005196

<u>COUNT 3</u>

On or about September 21, 1994, in the Fort Worth Division of the Northern District of Texas and elsewhere, **ORLANDO CORDIA HALL**, also known as Lan, defendant, aided and abetted by **MARVIN TERRANCE HOLLOWAY**, defendant, did knowingly travel in interstate commerce from Pine Bluff, Arkansas, to the Northern District of Texas, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, carrying on of an unlawful activity, namely, a business enterprise involving the possession of marihuana, a Schedule I controlled substance, with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1), and thereafter, **ORLANDO CORDIA HALL** performed and attempted to perform an act in furtherance of this business enterprise, namely, on or about September 21, 1994, in the Northern District of Texas, **ORLANDO CORDIA HALL** met with Neil Rene and Stanfield Vitalis in an effort to purchase marihuana.

In violation of Title 18, United States Code, Sections 1952 and 2.

Indictment - Page 5

Webster v. Lockett 005197

## COUNT 4

On or about September 22, 1994, in the Fort Worth Division of the Northern District of Texas and elsewhere, **ORLANDO CORDIA HALL**, also known as Lan, and **MARVIN TERRANCE HOLLOWAY**, defendants, aided and abetted by each other, did knowingly use a facility in interstate commerce, namely a telephone, to engage in a long distance telephone conversation between **ORLANDO CORDIA HALL**, in the Northern District of Texas, and **MARVIN TERRANCE HOLLOWAY**, in Pine Bluff, Arkansas, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, namely, extortion, in violation of Title 18, United States Code, Section 1951, and thereafter **MARVIN TERRANCE HOLLOWAY**, performed and attempted to perform an act in furtherance of this business enterprise, namely, on or about September 23, 1994, in Pine Bluff, Arkansas, **MARVIN TERRANCE HOLLOWAY**, contacted **BRUCE CARNEIL WEBSTER**, defendant, in order to request that **WEBSTER** travel to Texas.

In violation of Title 18, United States Code, Sections 1952 and 2.

Indictment - Page 6

Page 6 of 103

Webster v. Lockett 005198

# COUNT 5

On or about September 24, 1994, in the Fort Worth Division of the Northern District of Texas and elsewhere, **BRUCE CARNEIL WEBSTER**, also known as B-Love, defendant, aided and abetted by **MARVIN TERRANCE HOLLOWAY**, defendant, did knowingly travel in interstate commerce from Pine Bluff, Arkansas, to the Northern District of Texas, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, namely, extortion, in violation of Title 18, United States Code, Section 1952, and thereafter **BRUCE CARNEIL WEBSTER**, defendant, performed and attempted to perform an act in furtherance of this business enterprise, namely, on or about September 24, 1994, in the Northern District of Texas, **WEBSTER** and others, forcibly abducted Lisa Rene.

In violation of Title 18, United States Code, Sections 1952 and 2.

Indictment - Page 7

Webster v. Lockett 005199

## COUNT 6

On or about September 24, 1994, in the Fort Worth Division of the Northern District of Texas and elsewhere, **BRUCE CARNEIL WEBSTER**, also known as B-Love, **ORLANDO CORDIA HALL**, also known as Lan, **STEVEN CHRISTOPHER BECKLEY**, and **DEMETRIUS KENYON HALL**, also known as Jack Frost, defendants, aided and abetted by each other, did knowingly use and carry, firearms, during and in relation to a crime of violence, namely, kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1) and conspiracy to commit kidnapping, in violation Title 18, United States Code, Section 1201(c), crimes for which the defendants may be prosecuted in a court of the United States.

In violation of Title 18, United States Code, Sections 924(c)(1) and 2.

A TRUE BILL.

_____
FOREMAN

PAUL E. COGGINS
UNITED STATES ATTORNEY

_____
RICHARD B. ROPER
ASSISTANT UNITED STATES ATTORNEY
State Bar of Texas Number 17233700
801 Cherry Street, Suite 1700
Fort Worth, TX 76102
Telephone Number: 817/334-3291

_____
PAUL D. MACALUSO
ASSISTANT UNITED STATES ATTORNEY
State Bar of Texas Number 12770000
801 Cherry Street, Suite 1700
Fort Worth, TX 76102
Telephone Number: 817/334-3291

_____
DELONIA A. WATSON
ASSISTANT UNITED STATES ATTORNEY
State Bar of Texas Number 20937500
801 Cherry Street, Suite 1700
Fort Worth, TX 76102
Telephone Number: 817/334-3291

Indictment - Page 8

Webster v. Lockett 005200

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | | * | |
| | | * | |
| v. | | * | No. 4:94-CR-121-Y |
| | | * | [Supersedes Indictment |
| BRUCE CARNEIL WEBSTER | | * | returned 11/4/94 as to |
| also known as B-Love | (1) | * | MARVIN TERRANCE HOLLOWAY] |
| ORLANDO CORDIA HALL, | | * | |
| also known as Lan | (2) | * | |
| STEVEN CHRISTOPHER BECKLEY | (3) | * | |
| DEMETRIUS KENYON HALL, | | * | |
| also known as Jack Frost | (4) | * | |
| MARVIN TERRANCE HOLLOWAY | (5) | * | |

I, the duly appointed foreman of the grand jury of this court, held at Fort Worth, Texas

on the 22nd day of November, 1994, do hereby file with the clerk of the court as required by

Rule 6(c), Federal Rules of Criminal Procedure, a record of the number of grand jurors

concurring in the finding of indictment in the above case, which record shall not be made public

except upon order of the court:

<u>COUNT 1</u>:

   _____ grand jurors concurring as to **BRUCE CARNEIL WEBSTER**
   _____ grand jurors concurring as to **ORLANDO CORDIA HALL**
   _____ grand jurors concurring as to **STEPHEN CHRISTOPHER BECKLEY**
   _____ grand jurors concurring as to **DEMETRIUS KENYON HALL**
   _____ grand jurors concurring as to **MARVIN TERRANCE HOLLOWAY**

<u>COUNT 2</u>:

   _____ grand jurors concurring as to **BRUCE CARNEIL WEBSTER**
   _____ grand jurors concurring as to **ORLANDO CORDIA HALL**
   _____ grand jurors concurring as to **STEPHEN CHRISTOPHER BECKLEY**
   _____ grand jurors concurring as to **DEMETRIUS KENYON HALL**
   _____ grand jurors concurring as to **MARVIN TERRANCE HOLLOWAY**

Webster v. Lockett 005235

## COUNT 3:

_____ grand jurors concurring as to **ORLANDO CORDIA HALL**
_____ grand jurors concurring as to **MARVIN TERRANCE HOLLOWAY**

## COUNT 4:

_____ grand jurors concurring as to **ORLANDO CORDIA HALL**
_____ grand jurors concurring as to **MARVIN TERRANCE HOLLOWAY**

## COUNT 5:

_____ grand jurors concurring as to **BRUCE CARNEIL WEBSTER**
_____ grand jurors concurring as to **MARVIN TERRANCE HOLLOWAY**

## COUNT 6:

_____ grand jurors concurring as to **BRUCE CARNEIL WEBSTER**
_____ grand jurors concurring as to **ORLANDO CORDIA HALL**
_____ grand jurors concurring as to **STEPHEN CHRISTOPHER BECKLEY**
_____ grand jurors concurring as to **DEMETRIUS KENYON HALL**


_____
FOREMAN

Webster v. Lockett 005236

No.    4:94-CR-..1-Y
[Superseding Indictment as to defendant MARVIN TERRANCE HOLLOWAY]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

THE UNITED STATES OF AMERICA

VS.

BRUCE CARNEIL WEBSTER, also known as B-Love (1)
ORLANDO CORDIA HALL, also known as Lan (2)
STEVEN CHRISTOPHER BECKLEY (3)
DEMETRIUS KENYON HALL, also known as Jack Frost (4)
MARVIN TERRANCE HOLLOWAY  (5)

INDICTMENT

18 U.S.C. §§ 1201(a)(1), 1201(c), 1952, 924(c), and 2

KIDNAPPING,
CONSPIRACY TO COMMIT KIDNAPPING,
INTERSTATE TRAVEL IN AID OF A RACKETEERING ENTERPRISE,
CARRYING A FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE,
AID AND ABET.

(6 COUNTS)

A True bill,

Fort Worth                                                                                      FOREMAN

Filed in open court this _____ day of _____, A.D. 19__

_____ CLERK _____
WARRANT TO ISSUE FOR EACH DEFENDANT

UNITED STATES DISTRICT JUDGE

Magistrate Complaint number 4-94-153-M as to Defendant HOLLOWAY
Magistrate Complaint number 4-94-165-M as to Defendants WEBSTER,
ORLANDO CORDIA HALL, BECKLEY, and DEMETRIUS KENYON HALL.

Webster v. Lockett 005237

COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| VS. | * | CRIMINAL NO. <u>4-94 CR-121-Y</u> |
| | * | |
| ORLANDO CORDIA HALL    (2) | * | |

## GOVERNMENT'S PROPOSED JURY INSTRUCTIONS AND VERDICT FORM FOR THE GUILT/INNOCENCE PHASE OF THE TRIAL

COMES NOW, the United States, by and through the United States Attorney for the Northern District of Texas, and files the following attached proposed jury instructions and verdict form relating to the trial of the Defendant in the guilt/innocence phase of the trial:

### I.

All of these requested instructions are taken from the <u>Pattern Jury Instructions, Criminal Cases, U.S. Fifth Circuit District Judges Association</u>, 1990 except as otherwise indicated in each request.   Each request contains the specific reference to these instructions unless other authorities are cited.  The government has placed sub-headings in several places in the proposed charge to comply with the Court's usual practice of including sub-headings.

Government's Proposed Instructions for the
Guilt/Innocence Phase of the Trial -

Page 1

Webster v. Lockett 016752

## II.

As the Court will note, the proposed instructions and accompanying verdict form do not include an instruction relative to Count Four of the Superseding Indictment. The government will not proceed to trial on that count and will dismiss that count.

Respectfully submitted,

PAUL E. COGGINS
UNITED STATES ATTORNEY

_____
RICHARD B. ROPER
Assistant United States Attorney
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
(817) 334-3291
State Bar No. 17233700

### CERTIFICATE OF SERVICE

I certify that on the 18th day of September, 1995, a true and correct copy of the above pleading was this day served upon the Defendant's counsel of record.

_____
RICHARD B. ROPER
Assistant United States Attorney

Government's Proposed Instructions for the
Guilt/Innocence Phase of the Trial -

Page 2

Webster v. Lockett 016753

UNITED STATES OF AMERICA     *

VS.     *     CRIMINAL NO. <u>4-94 CR-121-Y</u>

ORLANDO CORDIA HALL    (2)     *

## <u>CHARGE OF THE COURT</u>

### REQUEST 1 - 1.04

Members of the Jury:

In any jury trial there are, in effect, two judges. I am one of the judges; the other is the jury. It is my duty to preside over the trial and to decide what evidence is proper for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

First, I will give you some general instructions which apply in every case, for example, instructions about burden of proof and how to judge the believability of witnesses. Then I will give you some specific rules of law about this particular case, and finally I will explain to you the procedures you should follow in your deliberations.

Webster v. Lockett 016754

**REQUEST 2 - 1.05**

## Duty to Follow Instructions

You, as jurors, are the judges of the facts. But in determining what actually happened--that is, in reaching your decision as to the facts--it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences.

It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took before being accepted by the parties as jurors, and they have the right to expect nothing less.

**REQUEST 3 - 1.06**

## Instructions Regarding the Burden of Proof

The indictment or formal charge against a defendant is not evidence of guilt. Indeed, the defendant is presumed by the law to be innocent. The law does not require a defendant to prove his innocence or produce any evidence at all and no inference whatever may be drawn from the election of a defendant not to testify. The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must acquit the defendant.

Charge of the Court - Page 2

Webster v. Lockett 016755

While the government's burden of proof is a strict or heavy burden, it is not necessary that the defendant's guilt be proved beyond all possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning the defendant's guilt.

A "reasonable doubt" is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case. Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs. If you are convinced that the accused has been proved guilty beyond a reasonable doubt, say so. If you are not convinced, say so.

**REQUEST 4 - 1.07**

### Instructions Concerning Consideration of the Evidence

As I told you earlier, it is your duty to determine the facts. In doing so, you must consider only the evidence presented during the trial, including the sworn testimony of the witnesses and the exhibits. Remember that any statements, objections, or arguments made by the lawyers are not evidence. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing to call your attention to certain facts or inferences that might otherwise escape your notice. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in the case. What the lawyers say is not binding upon you.

Charge of the Court - Page 3

Webster v. Lockett 016756

Also, do not assume from anything I may have done or said during the trial that I have any opinion concerning any of the issues in this case. Except for the instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.

### REQUEST 5 - 1.08 (Alternative B)

While you should consider only the evidence, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the evidence.

You should not be concerned about whether the evidence is direct or circumstantial. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances indicating that the defendant is either guilty or not guilty. The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

Charge of the Court - Page 4

Page 17 of 103
Webster v. Lockett 016757

**REQUEST 6 - 1.09**

I remind you that it is your job to decide whether the government has proved the guilt of the defendant beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses including the defendant who testified in this case. You should decide whether you believe what each person had to say, and how important that testimony was. In making that decision I suggest that you ask yourself a few questions: Did the person impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness have any relationship with either the government or the defense? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? These are a few of the considerations that will help you determine the accuracy of what each witness said.

In making up your mind and reaching a verdict, do not make any decisions simply because there were more witnesses on one side than on the other. Do not reach a conclusion on a particular point just because there were more witnesses testifying for one

Charge of the Court - Page 5

Page 18 of 103

Webster v. Lockett 016758

side on that point. Your job is to think about the testimony of each witness you have heard and decide how much you believe of what each witness had to say.

## REQUEST 7 - 1.11

The testimony of a witness may be discredited by showing that the witness testified falsely concerning a material matter, or by evidence that at some other time the witness said or did something, or failed to say or do something, which is inconsistent with the testimony the witness gave at this trial.

Earlier statements of a witness were not admitted in evidence to prove that the contents of those statements are true. You may consider the earlier statements only to determine whether you think they are consistent or inconsistent with the trial testimony of the witness and therefore whether they affect the credibility of that witness. [Government Requests if the defendant testifies: I remind you that a defendant has the right not to testify. When the defendant does testify, however, his testimony should be weighed and his credibility evaluated in the same way as that of any other witness.]

If you believe that a witness has been discredited in this manner, it is your exclusive right to give the testimony of that witness whatever weight you think it deserves.

Charge of the Court - Page 6

Webster v. Lockett 016759

**REQUEST 8 - 1.16**

In this case the government called as several of its witnesses alleged accomplices, some named as a co-defendants in the indictment, with whom the government has entered into a plea agreement providing for the dismissal of some charges and a lesser sentence than the co-defendants would otherwise be exposed to for the offense to which co-defendants pleaded guilty. Such plea bargaining, as it is called, has been approved as lawful and proper, and is expressly provided for in the rules of this court.

An alleged accomplice, including one who has entered into a plea agreement with the government, is not prohibited from testifying. On the contrary, the testimony of such a witness may alone be of sufficient weight to sustain a verdict of guilty. You should keep in mind that such testimony is always to be received with caution and weighed with great care. You should never convict a defendant upon the unsupported testimony of an alleged accomplice unless you believe that testimony beyond a reasonable doubt. The fact that an accomplice has entered a plea of guilty to the offense charged is not evidence, in and of itself, of the guilt of any other person.

**REQUEST 9 - 1.12**

You have been told that certain witnesses have been convicted of felony offenses. A conviction is a factor you may consider in deciding whether to believe that witness, but it does not necessarily destroy the witness's credibility. It has been brought to your atten-

Charge of the Court - Page 7

Webster v. Lockett 016760

tion only because you may wish to consider it when you decide whether you believe the witness's testimony.

## REQUEST 10 - 1.13

[Government requests if defendant, ORLANDO CORDIA HALL testifies-You have also been told that the defendant, ORLANDO CORDIA HALL, has been previously convicted of felony offenses. This conviction has been brought to your attention only because you may wish to consider it when you decide, as with any witness, how much of the particular defendant's testimony you will believe in this trial. The fact that the particular defendant was previously found guilty of another crime does not mean that the defendant committed the crime for which the defendant is on trial, and you must not use this prior conviction as proof of the crime charged in this case.]

## REQUEST 11 - 1.26

In determining whether any statement, claimed to have been made by a defendant outside of court and after an alleged crime has been committed, was knowingly and voluntarily made, you should consider the evidence concerning such a statement with caution and great care, and should give such weight to the statement as you feel it deserves under all the circumstances.

You may consider in that regard such factors as the age, sex, training, education, occupation, and physical and mental condition of the defendant, his treatment while

Charge of the Court - Page 8

Webster v. Lockett 016761

under interrogation, and all the other circumstances in evidence surrounding the making of the statement.

**REQUEST 12 - 1.29**

In any criminal case the government must prove not only the essential elements of the offense or offenses charged, as hereafter defined, but must also prove, of course, the identity of the defendant as the perpetrator of the alleged offense or offenses.

In evaluating the identification testimony of a witness you should consider all of the factors already mentioned concerning your assessment of the credibility of any witness in general, and should also consider, in particular, whether the witness had an adequate opportunity to observe the person in question at the time or times about which the witness testified. You may consider, in that regard, such matters as the length of time the witness had to observe the person in question, the prevailing conditions at that time in terms of visibility or distance and the like, and whether the witness had known or observed the person at earlier times.

You may also consider the circumstances surrounding the identification itself including, for example, the manner in which the defendant was presented to the witness for identification, and the length of time that elapsed between the incident in question and the next opportunity the witness had to observe the defendant.

If, after examining all of the testimony and evidence in the case, you have a reasonable doubt as to the identity of the defendant as the perpetrator of the offense charged, you must find the defendant not guilty.

Charge of the Court - Page 9

Webster v. Lockett 016762

**REQUEST 13 - 1.18**

During the trial you heard the testimony of witnesses who were described to us as experts.

If scientific, technical, or other specialized knowledge might assist the jury in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify and state an opinion concerning such matters.

Merely because an expert witness has expressed an opinion does not mean, however, that you must accept this opinion. The same as with any other witness, it is up to you to decide whether you believe this testimony and choose to rely upon it. Part of that decision will depend on your judgment about whether the witness's background or training and experience is sufficient for the witness to give the expert opinion that you heard. You must also decide whether the witness's opinions were based on sound reasons, judgment, and information.

**REQUEST 14 -** 1 E. Devitt et al., <u>Federal Jury Practice and Instructions</u>, § 14.02 (1992), modified as per, <u>United States v. Winn</u>, 948 F.2d 145, 158-60 (5th Cir. 1991), <u>cert. denied</u>, 112 S.Ct. 1599 (1992). <u>See also</u> 1 L. Sand et al., <u>Modern Federal Jury Instructions</u>, ¶ 5.05 (1995).

The charts or summaries prepared by witnesses, and admitted in evidence, are received for the purpose of explaining facts disclosed by records, and other documents which are in evidence in the case. Such charts or summaries are not in and of themselves proof of any facts. If such charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, the jury should disregard them.

Charge of the Court - Page 10

Webster v. Lockett 016763

In other words, such charts or summaries are used only as a matter of convenience; so if, and to the extent that, you find they are not in truth summaries of facts or figures shown by the evidence in the case you are to disregard them entirely.

## REQUEST 15 - 1.40

Government's Exhibit 1B has been identified as typewritten transcripts of the oral conversations which can be heard on the tape recordings received in evidence. The transcript also purports to identify the speakers engaged in such conversation.

I have admitted the transcript for the limited and secondary purpose of aiding you in following the content of the conversation as you listen to the tape recording, and also to aid you in identifying the speakers.

However, you are specifically instructed that whether the transcript correctly or incorrectly reflects the content of the conversation or the identity of the speakers is entirely for you to determine based upon your own evaluation of the testimony you have heard concerning the preparation of the transcript, and from your own examination of the transcript in relation to your hearing of the tape recording itself as the primary evidence of its own contents; and, if you should determine that the transcript is in any respect incorrect or unreliable, you should disregard it to that extent.

Charge of the Court - Page 11

Webster v. Lockett 016764

**REQUEST 16 - 1.30**

During this trial, you have heard evidence of acts of the defendant which may be similar to those charged in the indictment, but which were committed on other occasions. You must not consider any of this evidence in deciding if the defendant committed the acts charged in the indictment. However, you may consider this evidence for other, very limited, purposes.

If you find beyond a reasonable doubt from other evidence in this case that the defendant did commit the acts charged in the indictment, then you may consider evidence of the similar acts allegedly committed on other occasions to determine:

(a) whether the defendant had the state of mind or intent necessary to commit the crime charged in the indictment;

(b) whether the defendant had a motive or the opportunity to commit the acts charged in the indictment; or

(c) whether the defendant acted according to a plan or in preparation for commission of a crime.

These are the limited purposes for which any evidence of other similar acts may be considered.

Charge of the Court - Page 12

Webster v. Lockett 016765

**REQUEST 17 - 2.53 (Modified for Kidnapping "Resulting in Death" Charge)**

**Count One- Interstate Kidnapping Resulting in Death Charge**

Count One of the Indictment charges the defendant, ORLANDO CORDIA HALL and others, with violating 18 U.S.C. § 1201(a), which is kidnapping resulting in death.

Title 18, United States Code, Section 1201(a)(1), makes it a felony crime for anyone to kidnap another person and then transport that person in interstate commerce and the death of any person results from that kidnapping.

For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: That the defendant, knowingly acting contrary to law, kidnapped seized, confined, or inveigled the person described in the indictment, Lisa Rene, as charged;

Second: That the defendant held such person for ransom, reward, or some benefit that the defendant intended to derive from the kidnapping;

Third: That the defendant intentionally transported such person in interstate commerce while so kidnapped, confined, or inveigled; and

Fourth: That the death of Lisa Rene resulted.

To "kidnap" a person means to forcibly and unlawfully hold, keep, detain, and confine the person against that person's will. Involuntariness or coercion in connection with the victim's detention is an essential part of the offense.

To "inveigle" a person means to lure, or entice, or lead the person astray by false representations or promises, or other deceitful means.

Charge of the Court - Page 13

Webster v. Lockett 016766

The term "ransom, reward, or some benefit" includes motives of personal monetary gain as well as motives which do not involve financial gain, since a benefit is any legal or illegal object of the kidnapping which a perpetrator might consider of sufficient motive to induce him to undertake it. The government has the burden of proving whatever benefit alleged by proof beyond a reasonable doubt.

The government need not prove, however, that a kidnapper knows he is crossing state lines. So long as the kidnapper crosses state lines while intentionally transporting the victim, the kidnapper has traveled in interstate commerce.

## REQUEST 18 - 1.37

The term "interstate commerce" means commerce or travel between one state, territory or possession of the United States and another state, territory or possession of the United States, including the District of Columbia.

## REQUEST 19 - 1.39

"Commerce" includes travel, trade, transportation and communication.

Charge of the Court - Page 14

Webster v. Lockett 016767

**REQUEST 20 - 2.21**

### Count 2- The Conspiracy Charge

Count Two of the Indictment alleges that the defendant, **ORLANDO CORDIA HALL**, and others, engaged in a conspiracy to commit the offense of kidnapping, in violation of Title 18, United States Code, Section 1201(c).

Title 18, United States Code, Section 1201(c), makes it a crime for anyone to conspire to commit the offense of kidnapping in violation Title 18, United States Code, Section 1201(a).

A "conspiracy" is an agreement between two or more persons to join together to accomplish some unlawful purpose. It is a kind of "partnership in crime" in which each member becomes the agent of every other member.

For you to find a defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: That two or more persons made an agreement to commit at least one of the crimes as charged in the indictment;

Second: That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

Third: That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all the other alleged conspirators. If a defendant

Charge of the Court - Page 15

Page 28 of 103
Webster v. Lockett 016768

understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict him for conspiracy even though the defendant had not participated before and even though the defendant played only a minor part.

The government need not prove that the alleged conspirators entered into any formal agreement, nor that they directly stated between themselves all the details of the scheme. Similarly, the government need not prove that all of the details of the scheme alleged in the indictment were actually agreed upon or carried out. Nor must it prove that all of the persons alleged to have been members of the conspiracy were such, or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.

Mere presence at the scene of an event, even with knowledge that a crime is being committed, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of a conspiracy, does not thereby become a conspirator.

Charge of the Court - Page 16

Webster v. Lockett 016769

**REQUEST 21 - 1.31, 2.70, 2.81, and 18 U.S.C. § 1951.**

## Count Three - Interstate Travel
## in Aid of a Racketeering Charge

Count Three of the Indictment charges the defendant, **ORLANDO CORDIA HALL**, with travelling in interstate commerce with intent to carry on an unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3).

Title 18, United States Code, Section 1952(a)(3), makes it a crime for anyone to travel between states for the purpose of carrying on certain unlawful activities.

For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: That the defendant traveled in interstate commerce on or about the time, and between the places, charged in the indictment;

Second: That the defendant engaged in such travel with the intent to promote, manage, establish, or carry on an "unlawful activity," as hereafter defined and for each count under consideration; and

Third: That the defendant thereafter knowingly committed an act to promote, manage, establish, or carry on such "unlawful activity."

While the government must prove that the defendant traveled in interstate commerce with the specific intent to promote, manage, establish or carry on an "unlawful activity," it need not prove that such purpose was the only reason or motive prompting the travel.

The term "unlawful activity" includes a business enterprise involving the violations of the federal drug trafficking laws, namely, possession of a controlled substance with

Charge of the Court - Page 17

Page 30 of 103
Webster v. Lockett 016770

intent to distribute. You are instructed that there are three elements to the offense of possession of a controlled substance with intent to distribute:

First: That the person knowingly possesses a controlled substance;

Second: That the substance was, in fact, the controlled substance as alleged; and

Third: That the person who possessed the substance did so with the intent to distribute it.

To "possess with intent to distribute" simply means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

A Schedule I Controlled Substance is defined to include the substance Marihuana.

It is an element to the offense of possession of a controlled substance with intent to distribute that the defendant knew he was possessing a controlled substance, but need not prove that the defendant knew which particular controlled substance was involved.

"Possession" as that term is used in this case, may be of two kinds: actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.

A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

Possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

Charge of the Court - Page 18

Page 31 of 103

Webster v. Lockett 016771

You are instructed that the element of possession, as that term is used in these instructions, is present if the person had actual or constructive possession, either alone or jointly with others.

To constitute a "business enterprise" it is not necessary that the alleged illegal activity be engaged in for any particular length of time, nor must it be proved that such activity constituted the primary pursuit or occupation of the accused or that it actually returned a profit. What must be proved beyond a reasonable doubt is that the defendant engaged in a continuous course of conduct or series of transactions for profit rather than casual, sporadic or isolated activity.

The indictment charges that the defendant traveled in interstate commerce with the intent to promote, manage, establish and carry on an unlawful activity. If you find beyond a reasonable doubt that any one method or mode of violating the law occurred, that is sufficient so long as you agree unanimously upon the particular mode or method involved.

Charge of the Court - Page 19

Webster v. Lockett 016772

**REQUEST 22 - 2.45 and 18 U.S.C. § 924(c)(3).**

### <u>Count Six-Using or Carrying a Firearm During and in Relation to a Crime of Violence Charge</u>

Count Six of the Indictment charges the defendant, **ORLANDO CORDIA HALL** and others, with violating 18 U.S.C. § 924(c)(1).

Title 18, United States Code, Section 924(c)(1) makes it a crime for anyone to use or carry a firearm during and in relation to the commission of a crime of violence.

For you to find the defendant guilty of Title 18, United States Code, Section 924(c)(1), you must be convinced that the government has proved each of the following beyond a reasonable doubt:

<u>First:</u>    That the defendant committed the crime of interstate kidnapping as alleged in Count One of the Indictment; and

<u>Second:</u>    That the defendant knowingly used or carried a firearm during and in relation to the defendant's commission of the crime of interstate kidnapping.

The government is not required to prove that the defendant actually fired the weapon or brandished it at someone in order to prove "use," as that term is used in this instruction. However, you must be convinced beyond a reasonable doubt that the firearm played a role in or facilitated the commission of a crime of violence. In other words, you must find that the firearm was an integral part of the crime of violence offense charged.

The term "firearm" means any weapon which will or is designed to or may readily be converted to expel a projectile by the action of an explosive. The term "firearm" also

Charge of the Court - Page 20

Webster v. Lockett 016773

includes the frame or receiver of any such weapon, or any firearm muffler or firearm silencer, or destructive device.

The term "crime of violence" means an offense that is a felony and - (A) has as an element the use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

## REQUEST 23 - 1.35

The word "knowingly," as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally, not because of mistake or accident.

## REQUEST 24 - 1.19

You will note that the indictment charges that the offense was committed on or about a specified date. The government does not have to prove that the crime was committed on that exact date, so long as the government proves beyond a reasonable doubt that the defendant committed the crime on a date reasonably near the dates as stated in the indictment.

Charge of the Court - Page 21

Page 34 of 103

Webster v. Lockett 016774

**REQUEST 25 - 2.06**

### Guilt as an Aider or Abettor

The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through direction of another person as his or her agent, or by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.

So, if another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.

Notice, however, that before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.

Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

Charge of the Court - Page 22

Webster v. Lockett 016775

**REQUEST 26 - 2.23**

## Guilt as a Co-Conspirator

A conspirator is responsible for offenses committed by another conspirator if the conspirator was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of, or as a foreseeable consequence of, the conspiracy.

Therefore, if you have first found a defendant guilty of the conspiracy charged in Count Two of the Indictment and if you find beyond a reasonable doubt that during the time that defendant was a member of that conspiracy, another conspirator committed the offenses in Counts 1, 3, 4, and 6 in furtherance of or as a foreseeable consequence of that conspiracy, then you may find the defendant guilty of Counts 1, 3, 4, and 6, even though the defendant may not have participated in any of the acts which constitute the offense described in Counts 1, 3, 4, and 6.

**REQUEST 27 - 1.20**

## Instructions Regarding Deliberations

You are here to decide whether the government has proved beyond a reasonable doubt that the defendant is guilty of the crime charged. The defendant is not on trial for any act, conduct, or offense not alleged in the indictment. Neither are you concerned with the guilt of any other person or persons not on trial as a defendant in this case.

Charge of the Court - Page 23

Page 36 of 103
Webster v. Lockett 016776

## REQUEST 28 - 1.22

A separate crime is charged in each count of the indictment. Each count and the evidence pertaining to it should be considered separately. The fact that you may find the defendant guilty or not guilty as to one of the crimes charged should not control your verdict as to any other.

## REQUEST 29 - 1.21 - (Modified for a Capital Case Where the Jury will Assess the Punishment)

You should not be concerned with punishment in any way. It should not enter your consideration or discussion.

## REQUEST 30 - 1.25

To reach a verdict, all of you must agree. Your verdict must be unanimous on each count of the indictment. Your deliberations will be secret. You will never have to explain your verdict to anyone.

It is your duty to consult with one another and to deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong. But do not give up your honest beliefs as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Charge of the Court - Page 24

Webster v. Lockett 016777

Remember at all times, you are judges--judges of the facts. Your sole interest is to seek the truth from the evidence in the case, to decide whether the government has proved the defendant guilty beyond a reasonable doubt.

When you go to the jury room, the first thing that you should do is select one of your number as your foreperson, who will help to guide your deliberations and will speak for you here in the courtroom.

A form of verdict has been prepared for your convenience.

The foreperson will write the unanimous answer of the jury in the space provided for in each count of the indictment, either guilty or not guilty. At the conclusion of your deliberations, the foreperson should date and sign the verdict.

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the marshal. I will either reply in writing or bring you back into the court to answer your message.

Bear in mind that you are never to reveal to any person, not even to the court, how the jury stands, numerically or otherwise, on any count of the indictment, until after you have reached a unanimous verdict.

SIGNED: _____

TERRY R. MEANS  
UNITED STATES DISTRICT JUDGE

Charge of the Court - Page 25

Webster v. Lockett 016778

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| vs. | * | NO. 4:94-CR-121-Y |
| | * | |
| ORLANDO CORDIA HALL (2) | * | |

## VERDICT OF THE JURY

### COUNT ONE

We, the jury, find the defendant ORLANDO CORDIA HALL _____ as to Count one of the Indictment.

### COUNT TWO

We, the jury, find the defendant ORLANDO CORDIA HALL _____ as to Count two of the Indictment.

### COUNT THREE

We, the jury, find the defendant ORLANDO CORDIA HALL _____ as to Count three of the Indictment.

Page 39 of 103
Webster v. Lockett 016779

## COUNT SIX

We, the jury, find the defendant ORLANDO CORDIA HALL _____ as to Count

six of the Indictment.

## SIGNATURES OF JURORS

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

FOREPERSON

Date: _____

Page 40 of 103
Webster v. Lockett 016780

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | . | Criminal No. |
| | . | 4:94-121-Y |
| vs. | . | |
| | . | Fort Worth, Texas |
| ORLANDO CORDIA HALL | . | October 31, 1995 |
| | . | 8:30 a.m. |

. . . . . . . . . . . . . . . . .

VOLUME 17
TRANSCRIPT OF TRIAL
(Charge Conference, Jury Charge, Closing Argument
and Guilt or Innocence Phase Verdict)
BEFORE THE HONORABLE TERRY R. MEANS,
UNITED STATES DISTRICT JUDGE,
and a Jury

APPEARANCES:

For the Government:          Mr. Richard Roper,
                            Mr. Paul Macaluso,
                            Ms. Delonia Watson and
                            Mr. Christopher Curtis
                            Assistant United States Attorneys
                            1700 Burnett Plaza
                            801 Cherry Street
                            Fort Worth, Texas   76102
                            (817) 334-3291

For the Defendant:          Mr. Michael Logan Ware
                            Attorney at Law
                            Law Offices of Michael Logan Ware
                            The Bryce Building
                            909 Throckmorton St
                            Fort Worth, Texas   76102
                            (817) 338-4100

                            Mr. Jeff Kearney
                            Attorney at Law
                            Jeff Kearney & Associates
                            Sundance Square
                            120 W. Third Street, Suite 300
                            Fort Worth, Texas   76102
                            (817) 336-5600

U.S. District Court

Webster v. Lockett 022299

Vol. 17 - 2

Official Court Reporter:        Deborah M. Roberts, CSR
                                523 United States Courthouse
                                501 West 10th Street
                                Fort Worth, Texas  76102-3637
                                (817) 239-2037


Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

U.S. District Court

Page 42 of 103
Webster v. Lockett 022300

INDEX

Charge Conference . . . . . . . . . . .   4

The Court's Charge   . . . . . . . . . .   8

Closing argument by Mr. Curtis . . . .  31

Verdict of the Jury  . . . . . . . . .  49

U.S. District Court

Tuesday, October 31, 1995 - 8:30 a.m.

PROCEEDINGS

THE COURT: Mr. Ware, you may proceed.

MR. WARE: Thank you, Your Honor.

We've received the Court's proposed charge to the jury this morning, and of course we had the charge conference yesterday afternoon, and it's my understanding at this time the agreed and contested proposed jury instructions and verdict form in the guilt or innocence phase of the trial have not been filed and made a part of the clerk's record in this case, with the boldfaced instructions being instructions that I had requested and the government disagreed with or contested, and that the underlined instructions being instructions that the government had requested and that I had objected to.

To add to that -- and, of course, we would reurge everything that is -- that is not in the Court's charge that we requested by way of boldfaced type in the proposed or the agreed contested proposed jury instructions. We would object to those instructions not being in what appears to be the final version of the jury charge.

THE COURT: That objection is overruled.

MR. WARE: And the underlined instructions that have not appeared in the Court's proposed final version --

THE COURT: I think you mean --

U.S. District Court

Webster v. Lockett 022302

MR. WARE: That do appear in the Court's final version we likewise object to, with -- there's, I think, one mixup. There was a -- an underlined jury instruction on page 11 of the agreed and contested proposed jury instructions that was a limiting 404(b) instruction on extraneous matters. We're requesting -- even though that's underlined, which would indicate it's a government's proposed instruction, we're requesting that that instruction be included in the Court's final charge. And yesterday at the charge conference I think the Court had indicated it was going to deny that proposed limiting instruction.

THE COURT: That should have been bolded and it was instead underlined; is that correct?

MR. WARE: Yes, sir.

THE COURT: Right. And I overrule that objection, as well. That language, 404(b) language was deleted from the final charge.

MR. WARE: In addition, the government submitted at the charge conference a -- an additional proposed charge that the Court granted. And I'm not sure what page it's on in the Court's final proposed charge, but it's the instruction that's based on United States versus Jackson. It says, "Moreover, a kidnapper need not personally transport a victim in interstate commerce to be guilty of the offense of kidnapping as long as the defendant kidnapped, seized, confined or inveigled the

Page 45 of 103
Webster v. Lockett 022303

person described in the indictment prior to the willful transport of the person in interstate commerce."

And we would object to the inclusion of that language in the Court's charge to the jury.

THE COURT: Overruled.

MR. WARE: Finally, we would object to the Court not including with regard to Count 1 of the indictment the instructions -- not including a requirement that the jury find not only that death resulted from the kidnapping, but not requiring that the jury find the specific manner and means of death as reflected in the government's notice of intent to seek the death penalty which is on file in the clerk's file. The government alleged a number of manner and means that the death was caused, and we would object to the jury not being required to find those particular -- some, one or all of those particular manners and means, but instead just being required to find that death resulted from the kidnapping.

And in addition along those same lines, we object to the jury not being required to find that there was any intent involved as specified in the government's notice of intent to seek the death penalty, that the death was intentionally caused or actions were intentionally engaged in that resulted in the death. Likewise, that the charge does not reflect the language of the government's notice of intent to seek the death penalty.

THE COURT: Overruled.

MR. WARE: I can -- for the record, I can enumerate the differences between the agreed contested proposed jury instructions and what the Court has finally given to the -- proposes to give to the jury. In light of the fact that the agreed and contested proposed jury instructions and verdict form have been filed and made part of the record, it would seem to me that that's not necessary, that all my objections and requests have been adequately brought to the attention of the Court.

THE COURT: It would seem to me that with the procedure that you followed with the government setting out the sections that you wanted that the government disagreed to and vice versa, and the conference that we had yesterday, I think the Court's been made fully aware of your objections. I think that the record will reflect those, because it will reflect the bolded language is language that you wanted that the government disagreed with you on, and the underlined language reflects language that the government wanted that you disagreed, and that I made my decisions from those. And it will be clear in the final Charge of the Court what was placed in there, added to your oral objections this morning, would mean the record is complete.

MR. WARE: Yes, sir.

THE COURT: We are a little early. If the jurors

U.S. District Court

arrive early, we'll bring them on down. Is there any other matter we need to take up before I charge the jury?

I remind you both sides have been granted 30 minutes for argument. If I give you back time, so much the better.

MR. ROPER: I think we're about to finish this as soon as the defense has a chance to look at it.

THE COURT: All right.

(Brief pause in proceedings.)

THE COURT: Mr. Roper, how do you show 16-A, -B and -C?

MR. ROPER: Admitted. Oh, that was what I was going to bring up, I'm sorry. I was thinking -- I don't know for the record that you -- you had qualified the admittance of those two exhibits, and I know you did on the glasses and I thought you did on the others, but now that I think of it --

THE COURT: We need to do that.

(Discussion at counsel table.)

THE COURT: Let the record reflect that Exhibits 16-A, -B and -C are now admitted for all purposes.

(Jury seated at 8:50 a.m.)

THE COURT: Ladies and gentlemen of the jury, a copy of the Charge of the Court has been provided to you. Once again, as I read it, you don't have to follow along, but it's there for you if you would like to do that. If you understand and comprehend better by just listening, of course you may do

that.

Members of the Jury:

In any jury trial there are, in effect, two judges. I am one of the judges; the other is the jury. It is my duty to preside over the trial and to decide what evidence is proper for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

First, I will give you some general instructions which apply in every case, for example, instructions about burden of proof and how to judge the believability of witnesses. Then I will give you some specific rules of law about this particular case, and finally I will explain to you the procedures you should follow in your deliberations.

You, as jurors, are the judges of the facts. But in determining what actually happened -- that is, in reaching your decision as to the facts -- it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to request -- or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences.

It is also your duty to base your verdict solely upon the

Webster v. Lockett 022307

evidence, without prejudice or sympathy.  That was the promise you made and the oath you took before being accepted by the parties as jurors, and they have the right to expect nothing less.

Would you see that there are no more entries?

The indictment or formal charge against the defendant is not evidence of guilt.  Indeed, the defendant is presumed by the law to be innocent.  The law does not require a defendant to prove his innocence or produce any evidence at all, and no inference whatever may be drawn from the election of a defendant not to testify.  The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must acquit the defendant.

While the government's burden of proof is a strict or heavy burden, it is not necessary that the defendant's guilt be proven beyond all possible doubt.  It is only required that the government's proof exclude any "reasonable doubt" concerning the defendant's guilt.

A "reasonable doubt" is a doubt based upon reason and commence sense after careful and impartial consideration of all the evidence in the case.  Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.  If you are convinced that the accused has been proven guilty beyond a

U.S. District Court

Webster v. Lockett 022308

reasonable doubt, say so. If you are not convinced, say so.

As I told you earlier, it is your duty to determine the facts. In doing so, you must consider only the evidence presented during the trial, including the sworn testimony of the witnesses and the exhibits. Remember that any statements, objections or arguments made by the lawyers are not evidence. The function of the lawyers is to point out those things that are most significant or most helpful to their respective sides of the case, and in so doing to call your attention to certain facts or inferences that might otherwise escape your notice. In the final analysis, however, it is your own recollection and interpretation of the evidence that control in the case. What the lawyers say is not binding upon you.

Also, do not assume from anything I may have done or said during the trial that I have any opinion concerning any of the issues in this case. Except for the instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.

While you should consider only the evidence, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of commence experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the evidence.

U.S. District Court

You should not be concerned about whether the evidence is direct or circumstantial. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eyewitness. "Circumstantial evidence" is proof of a chain of facts and circumstances indicating that something is or is not a fact. The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

I remind you that it is your job to decide whether the government has proven the guilt of the defendant beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given the witness' testimony. An important part of your job will be making judgments about the testimony of the witnesses. You should decide whether you believe what each person had to say, and how important that testimony was. In making that decision I suggest that you ask yourself a few questions: Did the person impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness have any relationship with either the government or the defense? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to understand the

U.S. District Court

Webster v. Lockett 022310

questions clearly and answer them directly?  Did the witness' testimony differ from the testimony of other witnesses?  These are a few of the considerations that will help you determine the accuracy of what each witness said.

In making up your mind and reaching a verdict, do not make any decisions simply because there were more witnesses on one side than on the other.  Do not reach a conclusion on a particular point just because there were more witnesses testifying for one side on that point.  Your job is to think about the testimony of each witness you have heard and decide how much you believe of what each witness had to say.

The testimony of a witness may be discredited by showing that the witness testified falsely concerning a material matter, or by evidence that at some other time the witness said or did something, or failed to say or do something, which is inconsistent with the testimony the witness gave at this trial.

Earlier statements of a witness were not admitted in evidence to prove that the contents of those statements are true.  You may consider the earlier statements only to determine whether you think they are consistent or inconsistent with the trial testimony of the witness and therefore whether they affect the credibility of that witness.

If you believe that a witness has been discredited in this manner, it is your exclusive right to give the testimony

U.S. District Court

of that witness whatever weight you think it deserves.

The testimony of someone who is shown to have used addictive drugs during the period of time about which the witness testified must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses. You should never convict any defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt.

You have been told that certain witnesses have been convicted of felony offenses or crimes involving dishonesty or false statements. Such convictions are a factor you may consider in deciding whether to believe that witness, but it does not necessarily destroy the witness' credibility. It has been brought to your attention only because you may wish to consider it when you decide whether you believe the witness' testimony.

In this case the government called as several of its witnesses alleged accomplices, some named as codefendants in the indictment, with whom the government has entered into a plea agreement providing for immunity, the dismissal of some charges and/or a lesser sentence than the codefendants would otherwise be exposed to for the offense to which the codefendants pleaded guilty. Such plea bargaining, as it is called, has been approved as lawful and proper, and is expressly provided for in the rules of this Court.

U.S. District Court

Webster v. Lockett 022312

An alleged accomplice, including one who has entered into a plea agreement with the government, is not prohibited from testifying. On the contrary, the testimony of such a witness may alone be of sufficient weight to sustain a verdict of guilty. You should keep in mind that such testimony is always to be received with caution and weighed with great care. You should never convict a defendant upon the unsupported testimony of an alleged accomplice unless you believe that testimony beyond a reasonable doubt. The fact that an accomplice has entered a plea of guilty to the offense charged is not evidence, in and of itself, of the guilt of any other person.

In determining whether any statement, claimed to have been made by a defendant outside of court and after an alleged crime has been committed, was knowingly and voluntarily made, you should consider the evidence concerning such a statement with caution and great care, and should give such weight to the statement as you feel it deserves under all the circumstances.

You may consider in that regard such factors as the age, sex, training, education, occupation and physical and mental condition of the defendant, his treatment while under interrogation, and all the other circumstances in evidence surrounding the making of the statement.

In any criminal case the government must prove not only

U.S. District Court

the essential elements of the offense or offenses charged, as hereafter defined, but must also prove, of course, the identity of the defendant as the perpetrator of the alleged offense or offenses.

In evaluating the identification testimony of a witness, you should consider all of the factors already mentioned concerning your assessment of the credibility of any witness in general, and should also consider, in particular, whether the witness had an adequate opportunity to observe the person in question at the time or times about which the witness testified. You may consider, in that regard, such matters as the length of time the witness had to observe the person in question, the prevailing conditions at that time in terms of visibility or distance and the like, and whether the witness had known or observed the person at earlier times.

You may also consider the circumstances surrounding the identification itself, including, for example, the manner in which the defendant was presented to the witness for identification, and the length of time that elapsed between the incident in question and the next opportunity the witness had to observe the defendant.

If, after examining all of the testimony and evidence in the case, you have a reasonable doubt as to the identity of the defendant as the perpetrator of the offense charged, you must find the defendant not guilty.

During the trial you heard the testimony of witnesses who were described to us as experts.

If scientific, technical, or other specialized knowledge might assist the jury in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify and state an opinion concerning such matters.

Merely because an expert witness has expressed an opinion does not mean, however, that you must accept this opinion. The same as with any other witness, it is up to you to decide whether you believe this testimony and choose to rely upon it. Part of that decision will depend on your judgment about whether the witness' background or training and experience is sufficient for the witness to give the expert opinion that you heard. You must also decide whether the witness' opinions were based on sound reasons, judgment and information.

Government's Exhibit 1-B has been identified as a typewritten transcript of the oral conversations which can be heard on the tape recording received in evidence as Government's Exhibit 1-A. The transcript also purports to identify the speakers engaged in such conversation.

I have admitted the transcript for the limited and secondary purpose of aiding you in following the content of the conversation as you listen to the tape recording, and also to aid you in identifying the speakers.

U.S. District Court

Webster v. Lockett 022315

However, you are specifically instructed that whether the transcript correctly or incorrectly reflects the content of the conversation or the identity of the speakers is entirely for you to determine based upon your own evaluation of the testimony you may have heard concerning the preparation of the transcript, and from your own examination of the transcript in relation to your hearing of the tape recording itself as the primary evidence of its own contents; and, if you should determine that the transcript is in any respect incorrect or unreliable, you should disregard it to that extent.

Count 1 of the indictment charges the defendant, Orlando Cordia Hall, and others, with violating 18, United States Code, Section 1201(a), which makes unlawful a kidnapping resulting in death.

Title 18, United States Code, Section 1201(a)(1), makes it a felony crime for anyone to kidnap another person and then transport that person in interstate commerce and the death of any person results from that kidnapping.

For you to find the defendant guilty of this crime, you must be convinced that the government has proven each of the following beyond a reasonable doubt:

First: That the defendant knowingly acting contrary to law, kidnapped, seized, confined or inveigled the person described in the indictment, Lisa Rene, as charged;

Second: That the defendant held such person for ransom,

U.S. District Court

reward, or some other benefit that the defendant intended to derive from the kidnapping;

Third: That the defendant intentionally transported such person in interstate commerce while so kidnapped, confined or inveigled; and

Fourth: That the death of Lisa Rene resulted.

To "kidnap" a person means to forcibly and unlawfully hold, keep, detain and confine the person against that person's will. Involuntariness or coercion in connection with the victim's detention is an essential part of the offense.

To "inveigle" a person means to lure or entice or lead the person astray by false representations or promises or other deceit means.

The term "ransom, reward or some other benefit" includes motives of personal monetary gain as well as motives which do not involve financial gain, since a benefit is any legal or illegal object of the kidnapping which a perpetrator might consider of sufficient motive to induce him to undertake the kidnapping. The government has the burden of proving whatever benefit alleged -- pardon me. The government has the burden of proving whatever benefit alleged by proof beyond a reasonable doubt.

The term "interstate commerce" means commerce or travel between one state, territory or possession of the United States and another state, territory or possession of the

United States, including the District of Columbia. "Commerce" includes travel, trade, transportation and communication.

The government need not prove, however, that a kidnapper knows he is crossing state lines. So long as the kidnapper crosses state lines while intentionally transporting the victim, the kidnapper has traveled in interstate commerce. Moreover, a kidnapper need not personally transport a victim in interstate commerce to be guilty of the offense of kidnapping as long as the defendant kidnapped, seized, confined or inveigled the person described in the indictment prior to the willful transport of the person in interstate commerce.

Count 2 of the indictment alleges that the defendant, Orlando Cordia Hall, and others, engaged in a conspiracy to commit the offense of kidnapping, in violation of Title 18, United States Code, Section 1201(c).

Title 18, United States Code, Section 1201(c), makes it a crime for anyone to conspire to commit the offense of kidnapping in violation of Title 18, United States Code, Section 1201(a).

A "conspiracy" is an agreement between two or more persons to join together to accomplish some unlawful purpose. It is a kind of partnership in crime in which each member becomes the agent of every other member.

For you to -- for you to find a defendant guilty of this

Page 60 of 103
Webster v. Lockett 022318

crime, you must be convinced that the government has proven each of the following beyond a reasonable doubt:

First: That two or more persons made an agreement to commit at least one of the crimes as charged in the indictment;

Second: That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

Third: That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all the alleged -- all the other alleged conspirators. If a defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict him for conspiracy even though the defendant had not participated before and even though the defendant played only a minor part.

The government need not prove that the alleged conspirators entered into any formal agreement, nor that they directly stated between themselves all the details of the scheme. Similarly, the government need not prove that all of the details of the scheme alleged in the indictment were

Webster v. Lockett 022319

actually agreed upon or carried out. Nor must it prove that all of the persons alleged to have been members of the conspiracy were such, or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.

Mere presence at the scene of an event, even with knowledge that a crime is being committed, or the mere fact that certain persons may have associated with each other and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy but who happens to act in a way which advances some purpose of a conspiracy, does not thereby become a conspirator.

Count 3 of the indictment charges the defendant, Orlando Cordia Hall, with traveling in interstate commerce with intent to carry on an unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3).

Title 18, United States Code, Section 1952(a)(3), makes it a crime for anyone to travel between states for the purpose of carrying on certain unlawful activities.

For you to find the defendant guilty of this crime, you must be convinced that the government has proven each of the following beyond a reasonable doubt:

First:  That the defendant traveled in interstate commerce on or about the time, and between the places, charged

U.S. District Court

Webster v. Lockett 022320

in the indictment;

Second:  That the defendant engaged in such travel with the intent to promote, manage, establish or carry on an "unlawful activity" as hereafter defined; and

Third:  That the defendant thereafter knowingly committed an act to promote, manage, establish or carry on such "unlawful activity."

While the government must prove that the defendant traveled in interstate commerce with the specific intent to promote, manage, establish or carry on an "unlawful activity," it need not prove that such purpose was the only reason or motive prompting the travel.

The term "unlawful activity" includes a business enterprise involving the violations of the federal drug trafficking laws, namely, possession of a controlled substance with intent to distribute.  You are instructed that there are three elements to the offense of possession of a controlled substance with intent to distribute:

First:  That the person knowingly possesses a controlled substance;

Second:  That the substance was, in fact, a controlled substance as alleged; and

Third:  That the person who possessed the substance did so with the intent to distribute it.

To "possess with intent to distribute" simply means to

U.S. District Court

Webster v. Lockett 022321

possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

A Schedule I controlled substance is defined to include the substance marijuana.

The government need not prove that the defendant actually possessed marijuana, but only that he traveled in interstate commerce with the specific intent to promote, manage, establish or carry on a business enterprise involving violation of the -- violations of the federal drug trafficking laws, namely, possession of marijuana with intent to distribute it.

To constitute a "business enterprise," it is not necessary that the alleged illegal activity be engaged in for any particular length of time, nor must it be proven that such activity constituted the primary pursuit or occupation of the accused, or that it actually returned a profit. What must be proven beyond a reasonable doubt is that the defendant engaged in a continuous course of conduct or series of transactions for profit rather than casual, sporadic or isolated activity.

The indictment charges that the defendant traveled in interstate commerce with the intent to promote, manage, establish and carry on an unlawful activity. If you find beyond a reasonable doubt that any one method or mode of violating the law occurred, that is sufficient so long as you

agree unanimously upon the particular mode or method involved.

Count 6 of the indictment charges the defendant, Orlando Cordia Hall, and others, with violating 18, United States Code, Section 924(c)(1). Title 18, United States Code, Section 924(c)(1), makes it a crime for anyone to use or carry a firearm during and in relation to the commission of a crime of violence.

For you to find the defendant guilty of Title 18, United States Code, Section 924(c)(1), you must be convinced that the government has proven each of the following beyond a reasonable doubt:

First: That the defendant committed the crime of interstate kidnapping as alleged in Count 1 of the indictment; and

Second: That the defendant knowingly used or carried a firearm during and in relation to the defendant's commission of the crime of interstate kidnapping.

The government is not required to prove that the defendant actually fired the weapon or brandished it at someone in order to prove "use," as that term is used in this instruction. However, you must be convinced beyond a reasonable doubt that the firearm played a role in or facilitated the commission of a crime of violence. In other words, you must find that the firearm was an integral part of the crime of violence charged.

U.S. District Court

The term "firearm" means any weapon which will or is designed to or may readily be converted to expel a projectile by the action of an explosive. The term "firearm" also includes the frame or receiver of any such weapon, or any firearm muffler or firearm silencer or destructive device.

The term "crime of violence" means an offense that is a felony and - (A) has as an element the use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through direction of another person as his or her agent, or by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.

So, if another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.

U.S. District Court

Notice, however, that before any defendant may be held criminally responsible for the acts of others, it is necessary that the accused deliberately associate himself in some way with the crime and participated -- participate in it with the intent to bring about the crime.

Of course, mere presence at the scheme of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

A conspirator is responsible for offenses committed by another conspirator if the conspirator was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of or as a foreseeable consequence of the conspiracy.

Therefore, if you have first found a defendant guilty of the conspiracy charged in Count 2 of the indictment and if you find beyond a reasonable doubt that during the time that -- that during the time that defendant was a member of that conspiracy another conspirator committed the offenses in Counts 1, 3, 4 and 6 in furtherance of or as a foreseeable consequence of that conspiracy, then you may find the defendant guilty of Counts 1, 3, 4 and 6, even though the defendant may not have participated in any of the acts which

constitute the offense described in Counts 1, 3, 4 and 6.

You are here to decide whether the government has proven beyond a reasonable doubt that the defendant is guilty of the crime charged. That should be crimes charged. The defendant is not on trial for any act, conduct or offense not alleged in the indictment.

A separate crime is charged in each count of the indictment. Each count and the evidence pertaining to it should be considered separately. The fact that you may find the defendant guilty or not guilty as to one of the crimes charged should not control your verdict as to any other.

You should not be concerned with punishment in any way. It should not enter into your consideration or discussion.

The word "knowingly, as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident.

You will note that the indictment charges that the offense was committed on or about a specified date. The government does not have to prove that the crime was committed on that exact date, so long as the government proves beyond a reasonable doubt that the defendant committed the crime on a date reasonably near the dates as stated in the indictment.

To reach a verdict, all of you must agree. Your verdict must be unanimous on each count of the indictment. Your

U.S. District Court

Webster v. Lockett 022326

deliberations will be kept secret.  You will never have to explain your verdict to anyone.

It is your duty to consult with one another and to deliberate in an effort to reach agreement if you can do so. You must individually decide the case for yourselves, but only after an impartial consideration of the evidence with your fellow jurors.

During your deliberations do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong.  But do not give up your honest beliefs as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are judges -- judges of the facts.  Your sole interest is to seek the truth from the evidence in the case, to decide whether the government has proven the defendant guilty beyond a reasonable doubt.

When you go to the jury room, the first thing that you should do is select one of your number as your presiding juror, who will help to guide your deliberations and will speak for you here in the courtroom.

A form of verdict has been prepared for your convenience.

The presiding juror will write the unanimous answer of the jury in the space provided for in each count of the indictment, either guilty or not guilty.  At the conclusion of

your deliberations, the presiding juror should date -- state -- date and sign the verdict.

If you need to communicate with me during your deliberations, the presiding juror should write the message on the forms provided in the jury room, sign and date the form, and give it back to the marshal. I will either reply in writing or bring you back into the court to answer your message.

Bear in mind that you are never to reveal to any person, not even to the Court, how the jury stands numerically or otherwise in any count of the indictment until after you have reached a unanimous verdict.

Signed October 31st, 1995, Terry R. Means, United States District Judge.

MR. KEARNEY: May we approach, Your Honor?

(Off-the-record bench conference.)

THE COURT: Mr. Harris, I'll allow others to come in at this time.

Ladies and gentlemen, I want you to help me correct something on the charge. Look at page 18, please. The government has not sought conviction on Count 4, so towards the bottom of that page you'll see three places in the counts listed, 1, 3, 4 and 6, please delete 4. The government is not seeking conviction on Count 4.

Mr. Curtis, you may proceed.

U.S. District Court

Webster v. Lockett 022328

MR. CURTIS: Thank you, Your Honor. May I have a warning at 10 minutes and 15 minutes?

THE COURT: Yes, sir.

MR. CURTIS: Thank you.

May it please the Court.

Ladies and gentlemen, I'm going to try to keep my remarks brief at this point, because I submit to you at this point in this trial there should be no doubt the defendant, Orlando Cordia Hall, is guilty of all the counts charged in the indictment in this case that are included in the charge that you'll be taking back.

Ladies and gentlemen, Count 1 charges the defendant, Orlando Cordia Hall, aided and abetted by the other codefendants named in the indictment, with kidnapping Lisa Rene and transporting her in interstate commerce, and as a result of that kidnapping, that her death occurred. I'll talk briefly in a few minutes about the other counts, the other three counts in the indictment. I'll talk very briefly about those counts. Count 1 is what this case really is all about, whether Orlando Hall kidnapped Lisa Rene, transported her to Arkansas, and whether her death resulted from that kidnapping.

Now, ladies and gentlemen, you heard the Court read the charge a few minutes ago and the four elements in regard to Count 1. You don't have to memorize them at this point, obviously. You have the charge, each of you has a copy of the

Webster v. Lockett 022329

charge to take back with you in the jury room. But the four elements of kidnapping are: Number one, that the defendant knowingly, acting contrary to law, kidnapped, seized and confined Lisa Rene. Number two, that the defendant held Lisa Rene for ransom, reward or any other benefit that the defendant intended to derive from the kidnapping. Number three, that the defendant intentionally transported Lisa Rene in interstate commerce. And number four, that the death of Lisa Rene resulted from the kidnapping.

I'd like to speak for just a couple of minutes about what the government does not have to prove. The government does not have to prove that the victim, Lisa Rene, was taken for ransom in the traditional sense of how we think of the word "ransom." In fact, we don't have to show that Lisa Rene was taken for any monetary purpose whatsoever. We simply have to show that she was kidnapped, and that this kidnapping was done for some benefit for the perpetrators of the kidnapping.

Retribution, revenge, sexual gratification, any of those motives are sufficient to satisfy that second element of kidnapping. And I submit to you, ladies and gentlemen, in this case you have at least four or five motives for this kidnapping. The most obviously one, retribution, revenge.

Thinking back to the testimony in this case, ladies and gentlemen, Orlando Hall kidnapped Lisa Rene, had her transported to Arkansas for the purpose of getting back at

U.S. District Court

Webster v. Lockett 022330

Lisa Rene's brothers because he was cheated in a dope deal. That's why she was abducted from her apartment. That's why she was transported to Arkansas. She was also kidnapped for the purpose of ransom or reward in the sense that she was taken to try to force her brothers to give the money back or the marijuana back that Orlando Hall was cheated out of. Also taken for reward in the sense that she might know where that money was, she might have known where that marijuana was. You heard the testimony that they asked her where's the money, where's the dope, where were her brothers. She was taken for that purpose.

Also, ladies and gentlemen, I submit to you that once she was taken, she was continuously held by the defendants in this case, and that is a kidnapping. Not just the abduction, but the holding of Lisa Rene. And they held her for a number of reasons. They held her for their own sexual gratification, their own sick sexual gratification.

We also know why she died, ladies and gentlemen. She died because they did too much to her, and that was the reason why she was held.

Ladies and gentlemen, also the government does not have to prove that Hall himself transported Lisa Rene in interstate commerce. You heard that, you read along with the judge -- some of you read along with the judge. We don't have to prove that. We don't even have to prove that Orlando Hall knew that

U.S. District Court

she was transported. But you know from the evidence that he knew she was transported. He instructed the other defendants, the other three defendants, to take her to Pine Bluff, Arkansas. In fact, ladies and gentlemen, the law also holds the defendant response as an aider and abettor for the conduct of the codefendants acting under his direction or in concert with him. And that's exactly what happened in this case. The three defendants who took Lisa Rene to Pine Bluff, Arkansas were acting under his instruction and in concert with Orlando Hall.

I ask you to look back on the testimony that the government brought you in this case, ladies and gentlemen. The government has laid all the cards on the table, literally. It's all over the courtroom. First of all, we brought you the testimony from the codefendants, Steven Beckley, Demetrius Hall, Marvin Holloway. You've heard the testimony from Lisa Rene's brother, Stanfield Vitalis. You've also heard Orlando's own -- Orlando Hall's own statement in which he -- he tries to sugarcoat it, but he admits to you, he tells you that he's guilty of this kidnapping. He's guilty of the murder of Lisa Rene.

And from this evidence, from the evidence of Beckley, Demetrius Hall, Marvin Holloway, Orlando Hall's own statements, you know that on September 21st Orlando Hall came to Fort Worth, Texas, he traveled from Arkansas to Fort Worth

Webster v. Lockett 022332

in interstate -- in interstate travel for the purpose of participating in a dope deal where he was going to buy $5,000 worth of marijuana from Lisa Rene's brothers, Neil Rene and Stanfield Vitalis. You also know that on September 21st he met with the brothers to buy the marijuana. Gave them the $5,000, he was cheated out of the $5,000.

You know on September 22nd Orlando Hall used the phone number for the Rene brothers -- or Lisa Rene's brothers to find an address, the address of 1527 -- 1526 Chukka, Polo Run Apartments. You also know on September 22nd Orlando Hall asked Steven Beckley to find some guns. Orlando Hall called Marvin Holloway and asked Holloway to send Bruce Webster, B. Love, to Texas.

You know on Friday, September 23rd, Beckley found some handguns at Orlando Hall's instructions. Beckley and Demetrius Hall purchased some cammos, some masks and gloves from Payless Cashways. Beckley and Demetrius Hall bought some ammo from K-Mart and Oshman's. And you know that Orlando Hall, Beckley and Demetrius Hall, all three went to the Polo Run Apartments to locate the apartment where Lisa Rene's brothers lived.

On September 24th Bruce Webster, B. Love, flew down to Texas to help take care of business, and on the 24th the four of these men, Orlando Hall, Steven Beckley, Demetrius Hall and B. Love, went to the Polo Run Apartments dressed in

U.S. District Court

Webster v. Lockett 022333

camouflage, and went by the Texaco station to try to buy some beer before they went there. They watched the apartment until dark. They went up to the apartment, tried to kick in the front door, went around back to the sliding glass door, and Demetrius Hall used that bat that was put into evidence, smashed in the glass, the sliding glass door.

Webster drug the victim, Lisa Rene, out of the apartment by her hair, and took Lisa Rene into the El Dorado Cadillac and drove to the residence at Tudor Lane in Irving. At Tudor Lane, Orlando Hall dropped off Demetrius Hall. He instructed Beckley to put Lisa Rene in Beckley's Ford Escort. They then traveled to the Wilson World Hotel where Beckley had rented a room earlier.

At the Wilson World Hotel, Orlando Hall forced Lisa Rene to perform oral sex on him. After they left the Wilson World Hotel, Orlando Hall instructed Webster, Beckley and Demetrius Hall to take Lisa Rene back to Pine Bluff, Arkansas. On the trip to Pine Bluff, you know from the testimony that she was tortured. She was repeatedly sexually assaulted by Demetrius Hall and Bruce Webster.

On September 25th Webster, Beckley and Hall checked into the Pine Bluff Hotel. In the meantime Orlando Hall is hiding in an attic on Tudor Lane in Irving while police officers are searching that residence trying to find where Lisa Rene is, any clues to try to find her.

U.S. District Court

After the police leave, Orlando Hall flies back to Arkansas. He's picked up at the airport by the Holloways, and on the trip back from the airport you know that it was Orlando Hall who made the decision that Lisa Rene was going to die.

That evening, ladies and gentlemen, on the 25th, Orlando Hall and Bruce Webster went to Byrd Lake Park. They dug the grave. That evening Orlando Hall and Bruce Webster, with Steven Beckley, tried to take Lisa Rene to Byrd Lake Park to kill her then, but they couldn't find the grave they had already dug.

The morning of September 26th, Webster, Orlando Hall and Steven Beckley took Lisa Rene back to Byrd Lake Park. At that time Orlando Hall, Webster and Beckley repeatedly hit her in the head with a shovel, tried to kill her that way. When she fell to the ground, they took her clothes off. They stripped her of her clothes. They stripped her of her dignity.

THE COURT: You've consumed ten minutes.

MR. CURTIS: Thank you, Your Honor.

Orlando Hall, Webster and Beckley threw her in the grave. When they heard a gasp, Webster tied a gag around her mouth, they poured gasoline on her and buried her alive.

The government's brought you the testimony of Beckley, Demetrius Hall and Marvin Holloway, and you've got the written statement of Orlando Hall. But that's not all the government has brought you. They've brought you a plane ticket, cash

Webster v. Lockett 022335

receipts from K-Mart, Oshman's, Payless and those stores corroborating what those witnesses have told you. We've brought you the Texaco videotape where two of the defendants can be seen in the camera trying to buy the beer. And we brought you the testimony of various FBI experts from the FBI lab. Remember the glass testimony, testimony about the glass. The glass embedded in that bat is the same sort of glass like at the Polo Run Apartments, apartment 507. The fiber testimony. The black wig-like synthetic fibers found in the hair of Lisa Rene is the same fiber that was found in the back seat of Beckley car and in the Pine Bluff Hotel. Lisa Rene's fingerprints were found in the bathroom of the Pine Bluff Motel. Why did we bring you that evidence? Because it corroborates what these other people say.

The defense may argue to you, ladies and gentlemen, that these witnesses or codefendants, they've got something to gain by their testimony. The defense may argue to you, ladies and gentlemen, that you need to blame somebody else for this horrible crime. You need to blame somebody other than Orlando Hall. Ladies and gentlemen, out of all the sorry and despicable people that could have saved this girl's life, out of all the sorry and despicable people who helped kill her, there's one person who got the wheel rolling. There's one person who set this thing is motion. There's one person who said, "I ain't leaving Texas until I get my money, my dope or

my blood." There he is. That is the reason why we're here. That's the reason why Lisa Rene is not here. He killed her, and he buried her alive.

Finally, ladies and gentlemen, I submit to you that there's no doubt that he's -- that Orlando Hall is guilty of the remaining three counts of the indictment. There's no question on September 21st Orlando Hall traveled in interstate commercial in furtherance of his drug enterprise, his marijuana enterprise, Count 3 of the indictment. There's no question, as alleged in Count 6, that on September 24th he used and carried a weapon when he abducted Lisa Rene. There's no question, as alleged in Count 2, that Orlando Hall, Beckley, Webster, Demetrius Hall met in the Wilson World Hotel, they planned and conspired and agreed to commit the offense of kidnapping, and that's what they did. It doesn't matter who they planned to kidnap. At that time they planned to kidnap and tie up the brothers, pour gasoline on them and threaten to light them on fire unless they told them where the money was. That is a conspiracy to commit a kidnapping. It doesn't matter when they got there the only person they could find was Lisa Rene, a person who was completely innocent, had nothing to do with this dope deal, but who they took anyway, who they killed anyway.

Ladies and gentlemen, I submit to you the evidence is overwhelming this man is guilty of every count charged in the

Webster v. Lockett 022337

indictment.  It was this man who decided that Lisa Rene would die.  Thank you.

THE COURT:  The government has 15 remaining.  Mr. Kearney?

MR. KEARNEY:  We don't have anything to present at this time.

THE COURT:  The government may finish its argument.

MR. KEARNEY:  May we approach?

THE COURT:  You're right.  I haven't had that happen.

(Off-the-record bench conference.)

THE COURT:  That concludes the argument in this case.  The case is now yours.

I have a verdict form here that Mr. Bowen will hand to you, and it will be in the custody of your presiding juror once he or she is elected.

Obviously you may take whatever time you need to reach your verdict.  We will attend to your needs, and we will stand by.  You may take your breaks, including lunch and other meals, as you need to.  Just let us know so that we can do likewise.

You are excused to begin your deliberations at this time.

Oh, the alternates -- excuse me.  The three alternates, if you'll remind behind.  We have some special instructions for you.

U.S. District Court

Webster v. Lockett 022338

(Jury excused at 9:45 a.m.)

THE COURT:  To the alternates, if you'll step over here, I have some special instructions for you.

(The following discussion occurred at the bench:)

THE COURT:  I'm sorry.  Step on up here, please.

What we'll do now is we will let you go.  Please remember not to see anything, listen to anything, read anything about the case, because it is possible that if a juror were excused during deliberations, that we would have to bring you back in at a later time.  So we will have to let you know whether you're finally released or not.  If the 12 jurors reach a verdict, then we'll know and we'll let you know.  But don't call anybody, don't talk to anyone about the case, and don't review any publicity about the case until we call you one way or another.

Do you have any questions?

You have one of the hardest jobs because you have to hear everything, listen to everything as though you were a juror, and then you don't get to go through the part of deliberating and getting to speak your mind.  So you have my special thanks for the time that you've given.  It's just as important time and commitment as the other jurors who are going to get to deliberate.  In some ways it's more important.  So we appreciate the effort that you've given.

Please give your -- where you can be reached by phone day

U.S. District Court

Webster v. Lockett 022339

and night to -- Cheryl, you want to take it?

MS. RAPER: Yes.

MR. JOHNSON: Can we stay in the gallery?

THE COURT: You may stay if you want to, but the problem is there's going to be a temptation to talk to someone. So if you stay, I suggest you isolate yourself and not talk to anyone and sit where you won't hear anyone else talking. So in some respects I'd rather you go on, but if you want to stay, you may.

(Jurors excused from bench conference.)

MR. KEARNEY: Your Honor, is there a possibility that they would be needed to listen to the punishment phase of the trial?

THE COURT: (Nods head.)

MR. KEARNEY: I mean, should they be here for the punishment phase of the trial?

MR. ROPER: I'm afraid if we don't keep them here after they reach a verdict, then at that point if we ever had to bring them back in, it could real screw things up. I'm thinking -- I know you thought about it, but maybe it would be appropriate to have them stay around here and then go on and sit back on the jury as alternates, and at least we'll have them there. Otherwise they could read the paper or not hear the evidence, and then we'd have to bring them back in in the middle of the deal and it will be all screwed up.

U.S. District Court

Webster v. Lockett 022340

THE COURT: Excuse me just a moment. Wait just a minute. There may be another thought on it. Hold on just a second.

(Sotto voce between Court and law clerk.)

MR. KEARNEY: Your Honor, one more thing for the record. I posed that question, but I don't know the answer about whether or not they could actually sit again after -- if they didn't participate in these deliberations.

THE COURT: My bench book suggests that they can. The rule says they're supposed to be dismissed.

MR. KEARNEY: Mr. Ware -- I maybe spoke to soon, because Mr. Ware believes they have to be dismissed and they can't stay around.

THE COURT: My bench book says that this statute was written before the death penalty and that they can be brought back. They would have to be dismissed after the penalty -- if they heard the penalty evidence and the -- no juror fell out, then they would have to be dismissed at that point, I think, pursuant to the spirit of the statute. The point in the bench book is that this was written before that and should not apply to this situation where their services could be needed in the penalty phase.

MR. ROPER: And I think that if we --

THE COURT: What is that rule? Help me, Mike.

MR. ROPER: If we don't keep them around, we'll just

Webster v. Lockett 022341

automatically, I think, foreclose our options.

THE COURT: Well, I'm going to keep them around. I've made up my mind about that. And what I did was I jumped the gun. I was thinking we had decided to let them go, but I think it would be better to keep them here and then have them here for the penalty phase, and if there are no jurors that -- that are sick or unable to proceed at the conclusion of the penalty phase, I think we have to let them go, dismiss them under the rule.

MR. WARE: Your Honor, we understand the Court's ruling. For purposes of the record, we object. We believe that the only thing that the Court can do at this point is excuse them, and we would object to the Court's ruling at this point and specifically request that they be excused.

THE COURT: Thank you. Overruled at this point.

All right. Anything else?

MR. ROPER: Where are they going to be kept?

THE COURT: They'll be kept in the grand jury room separate from these. There will be no contact between them for the rest of the way.

MR. ROPER: Okay. Thanks, Judge.

(End of bench conference.)

(Brief pause in proceedings.)

THE COURT: We're in recess until further call.

(Recess from 10:00 a.m. to 10:45 a.m.)

U.S. District Court

Webster v. Lockett 022342

(Proceedings conducted in chambers.)

(Off-the-record discussion.)

(Government's Exhibit Number 36 played for defense counsel.

THE COURT: What are the objections?

MR. WARE: Well, I think we're going to have to object, first of all, to the last part there, the grave excavation site that shows -- for what seems like forever shows the deceased in the grave excavation site for the reason that it's, number one, cumulative of some of the photographs that are already in evidence; number two, that it doesn't go to prove any disputed issue that is in evidence or any disputed issue in this case, and is therefore irrelevant and immaterial; and number three, that, of course, any probative value that it might have that is not cumulative or that is cumulative is heavily outweighed by the prejudicial effect that that would have on the jury.

With regard to, I guess, the first part of the tape, the walk through Byrd Lake Park to the grave site, we would object in that --

THE COURT: Hold on.

(Brief pause in proceedings.)

THE COURT: The jury is on a 15-minute break. Go ahead.

MR. WARE: We would object in that it obviously

Webster v. Lockett 022343

purports to be a reenactment of the crime, of the offense, a reenactment of the walk that the victim was forced to take through the woods to the grave site, and as such, number one, it is obviously based on hearsay based on the out-of-court statements made by those other than the defendant. Number two, as a reenactment, a purported reenactment, it is unduly prejudicial in and of itself, in that it attempts to put the jury in the shoes of the victim in this case. That it has no probative value. To the extent that it has any probative value, that it's outweighed by the prejudicial effect that it would have on the jury.

And in addition there are some -- there's some statements made by I guess it's Officer Stephenson in the videotape that -- that are hearsay or based on hearsay, and we would have the same objection if he were to testify to the same information live. I'm not particularly talking about his reading of the signs that are obvious from the face of the video or to his objective recounting of what he's doing at a particular point in time or what he sees at a particular point in time, but in particular his -- his comments such as at this point the -- they turned left and went into the woods, or they got -- they deviated from the trail at this point and walked up this hill, I remember specifically at the time 7:39 he made a comment such as that. And, of course, that just adds to the fact that this is a purported reenactment of the offense.

U.S. District Court

Webster v. Lockett 022344

I think that the walk through the woods at Byrd Lake Park is particularly chilling and particularly horrifying, and I understand that that's the effect it's supposed to have on the jury, but we would object to it for all those reasons.

THE COURT: Response?

MR. ROPER: The -- I don't think -- I don't think there's testimony that's purported to be a reenactment. The only way you can get in that park is to go in the way they did. He did make the statement showing the deviations. I think that's admissible in this kind of proceeding. He went on around the other path, and that's on the diagram, and then he cut back over to find the grave site. So I don't think it's a reenactment in the sense like you have one of these automobile reenactments where you have a videotape. I don't think it's that at all. But it does have -- the probative value lies in the effect of the offense on the victim, which is an aggravating factor we've got to prove, and I think that shows it more than anything else.

The other thing, going to the grave site scene, although we've introduced the pictures, I don't think until you've seen that videotape, you don't see how close it is around there and see -- you can see something from the pictures, but you just don't see how small an area it is. And I think that's probative to our case about how Beckley and them said the offense happened and she tried to escape, and I think that

Page 87 of 103
Webster v. Lockett 022345

shows the impact of the offense on the victim. It never does -- when you see a videotape, it brings all those pictures together at once. That's why you do the videotape. I think that's shows that -- obviously, I think if we would have gone and kept on the body and shown the body pulling out, I could understand Mike's objection at that point, but it still shows the body partially covered up, and I don't think it's as graphic as it could have been if we had tried to introduce the body when it was pulled out.

THE COURT: I overrule the objection, but I understand that this is being presented and will be offered as an exhibit but will not be played for the jury. I will hold you to that, because I think to play it for the jury would be a waste of -- sufficient waste of time for actual trial time, but sufficiently probative that I won't say it's a waste of time for them to look at it if they want to.

Okay. Thank you.

(Recess from 11:30 a.m. to 1:40 p.m.)

(Proceedings conducted in chambers.)

THE COURT: The Court is reconvened to hear a motion by the defendant.

MR. WARE: Your Honor, now comes the defendant, Orlando Hall, by and through his court-appointed attorneys, and after all the evidence has been in and prior to the time that the jury has reached a verdict, at this time we would

U.S. District Court

Webster v. Lockett 022346

like to renew our Rule 29 motion for all the reasons we previously articulated at the end of the government's case.

THE COURT:  Motion is overruled.

MR. WARE:  Thank you recess.

(Recess from 1:40 p.m. to 2:00 p.m.)

THE COURT:  It's been reported to me that the jury has reached a verdict.

Ladies and gentlemen, have you reached a verdict?

MS. HOLMES:  Yes, we have, Your Honor.

THE COURT:  Who is the presiding juror?

MS. HOLMES:  I am.

THE COURT:  All right, Ms. Holmes, if you'll hand the verdict form to Mr. Bowen.

The verdict of the jury is as follows:

United States of America versus Orlando Cordia Hall, cause number 4:94-CR-121-Y.

Count 1, guilty; Count 2, guilty; Count 3, guilty; Count 6, guilty.  Signed by the foreman of the -- presiding juror of the jury, and it is appropriately dated today.

You have completed the first phase of your duties here. We will ask you to come back tomorrow in the morning to start testimony in the second phase of this trial at 9:00 a.m.  So if you can arrange to be here by 8:45, then we should be able to get started timely.  Do any of you have any questions?

All right.  Anything further from the parties?

U.S. District Court

Webster v. Lockett 022347

MR. ROPER:  Nothing from the government, Your Honor.

MR. KEARNEY:  No, Your Honor.

THE COURT:  You are excused at this time.  Please remember all of your instructions.  It's very important -- it always has been, but I suppose doubly important today.  I'm sure there will be coverage of the verdict.  Please avoid all coverage of this case and avoid discussing it at home until we're through with the case.  You're excused at this time.

Alternates also return tomorrow.

(Proceedings concluded at 2:05 p.m.)

-oOo-

CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.  I further certify that the transcript fees format comply with those prescribed by the Court and the Judicial Conference of the United States.

U.S. District Court

Webster v. Lockett 022348

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV – 6 1995

NANCY DOHERTY, CLERK

By _____
Deputy

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA §
§
VS. §        CAUSE NO. 4:94-CR-121-Y
§
ORLANDO CORDIA HALL (2) §

### SPECIAL FINDINGS FORM

**I. PART ONE – THE ELEMENT OF INTENT**

**Instructions:** For each of the following, answer "YES" if you, the jury, unanimously find that the government has established the existence of the listed element of intent in the death of Lisa Rene beyond a reasonable doubt; answer "NO" if you do not so find:

I(A).  The defendant Orlando Cordia Hall intentionally killed Lisa Rene.

Unanimously    YES  _____

NO  _____X_____

I(B).   The defendant Orlando Cordia Hall intentionally inflicted serious bodily injury which resulted in the death of Lisa Rene.

Unanimously    YES  _____

NO  _____X_____

*H66*

Webster v. Lockett 012458

I(C). The defendant Orlando Cordia Hall intentionally engaged in conduct intending that Lisa Rene would be killed or that lethal force be employed against Lisa Rene, and the death of Lisa Rene resulted.

Unanimously    YES _____X_____

NO _____

I(D). The defendant Orlando Cordia Hall intentionally engaged in conduct which he knew would create a grave risk of death to Lisa Rene, and such conduct resulted in the death of Lisa Rene.

Unanimously    YES _____X_____

NO _____

**Instructions**: If you answered "NO" with respect to all of the elements of intent listed in Part One, above, then stop your deliberations, fill out Decision Form A, and advise the Court that you have reached a decision.

If you answered "YES" with respect to one or more of the elements of intent listed in Part One, above, then continue your deliberations in accordance with the Court's instructions and proceed to Part Two.

Webster v. Lockett 012459

## II. PART TWO - STATUTORY AGGRAVATING FACTORS

**Instructions**: For each of the following, answer "YES" if you, the jury, unanimously find that the government has established the existence of that statutory aggravating factor beyond a reasonable doubt; answer "NO" if you do not so find:

II(A). The defendant Orlando Cordia Hall caused the death of Lisa Rene, or injury resulting in death of Lisa Rene, which occurred during the commission of the offense of kidnapping.

Unanimously    YES \_\_\_\_\_ X \_\_\_\_\_

NO _____

II(B). The defendant Orlando Cordia Hall committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to Lisa Rene.

Unanimously    YES \_\_\_\_\_ X \_\_\_\_\_

NO _____

II(C). The defendant Orlando Cordia Hall committed the killing of Lisa Rene after substantial planning and premeditation to cause the death of Lisa Rene.

Unanimously    YES _____

NO \_\_\_\_\_ X \_\_\_\_\_

Webster v. Lockett 012460

II(D). The victim, Lisa Rene, was particularly vulnerable due to her age.

$$\text{Unanimously} \quad \begin{array}{ll} \text{YES} & \underline{\phantom{XXXXXX}} \\ \text{NO} & \underline{\phantom{XXX}X\phantom{XXX}} \end{array}$$

**Instructions**: If you answered "NO" with respect to all of the statutory aggravating factors in Part Two, above, then stop your deliberations, fill out Decision Form B, and advise the Court that you have reached a decision.

If you answered "YES" with respect to at least one of the statutory aggravating factors in Part Two, above, then continue your deliberations in accordance with the Court's instructions and proceed to Part Three.

Webster v. Lockett 012461

## III. PART THREE - NON-STATUTORY AGGRAVATING FACTORS

**Instructions**: For each of the following, answer "YES" if you, the jury, unanimously find that the government has established the existence of that non-statutory aggravating factor beyond a reasonable doubt; answer "NO" if you do not so find:

III(A). The defendant Orlando Cordia Hall constitutes a future danger to the lives and safety of other persons.

Unanimously    YES      X

NO      _____

III(B). The effect of the instant offense on Lisa Rene's family.

Unanimously    YES      X

NO      _____

**Instructions**: Regardless of whether you answered "YES" or "NO" with respect to the Non-Statutory Aggravating Factors in Part Three, above, continue your deliberations in accordance with the Court's instructions and proceed to Part Four.

Webster v. Lockett 012462

## IV.  PART FOUR - MITIGATING FACTORS

**Instructions**:  For each of the following mitigating factors, indicate the number of jurors who find the existence of each particular mitigating factor by a preponderance of the evidence; if none of the jurors find by a preponderance of the evidence that a particular mitigating factor exists, write the number "0" in the blank provided:

IV(A).    Another defendant or defendants, equally culpable in the crime, will not be punished by death.

Number of jurors who so find, if any    _____9_____

IV(B).    The age of the defendant at the time of the offense.

Number of jurors who so find, if any    _____1_____

IV(C).    The circumstances surrounding the defendant's upbringing.

Number of jurors who so find, if any    _____1_____

IV(D).    The defendant's acceptance of responsibility for his role in the offense.

Number of jurors who so find, if any    _____∅_____

IV(E).    The defendant's remorse.

Number of jurors who so find, if any    _____∅_____

Webster v. Lockett 012463

IV(F).    Any other aspect of the defendant's character or background which calls for a sentence less than death.

Number of jurors who so find, if any _____1_____

**Instructions:** Continue your deliberations in accordance with the Court's instructions ~~by completing~~ *and then complete* either Decision Form C recommending a sentence of death, Decision Form D recommending a sentence of life imprisonment without the possibility of release, or Decision Form E recommending a sentence of life imprisonment without parole.  Additionally, complete the certificate attached at the end of the decision forms and advise the Court that you have reached a decision.

Webster v. Lockett 012464

## DECISION FORM A

We the jury have determined that a sentence of death should not be imposed because the government has failed to prove beyond a reasonable doubt the existence of one of the elements of intent.

_____
PRESIDING JUROR


Date: _____, 1995

Webster v. Lockett 012465

**DECISION FORM B**

We the jury have determined that a sentence of death should not be imposed because the government has failed to prove beyond a reasonable doubt the existence of any of the statutory aggravating factors.

_____
PRESIDING JUROR


Date: _____, 1995

Webster v. Lockett 012466

## DECISION FORM C

Based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of any mitigating factors, whether the aggravating factor or factors are themselves sufficient to justify a sentence of death, we recommend, by unanimous vote, that a sentence of death be imposed.

_____
PRESIDING JUROR


Date: _____ 11 - 06 _____, 1995

Webster v. Lockett 012467

**<u>DECISION FORM D</u>**

We the jury recommend, by unanimous verdict, a sentence of life imprisonment without the possibility of release.

———————————————————
PRESIDING JUROR

Date: ——————————————, 1995

Webster v. Lockett 012468

## <u>DECISION FORM E</u>

We the jury recommend a sentence of life imprisonment without parole.

_____
PRESIDING JUROR


Date: _____, 1995

Webster v. Lockett 012469

# <u>CERTIFICATION</u>

~~By signing below,~~ each ~~juror certifies that, in considering~~ whether a sentence of death is justified, consideration of the race, color, religious beliefs, national origin, or sex of the defendant or the victim was not involved in reaching his or her individual decisions, and that the individual juror would have made the same recommendation regarding a sentence for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant, or the victim.

**SIGNATURES OF ALL JURORS:**

Mary Ann Herring

Gary Clarence Killian

Patsy Ann Brandon

Timothy R Nesbit

Benjamin T. McGowen.

Jacqulyn K. Holmes

Linda Harrell

Donald R. McCormick

Stacey Donaldson

Marcia Roberts Graves

Cindy N Baldwin

Billy Dorn

**PRESIDING JUROR**

Date: _11/6_ , 1995

Webster v. Lockett 012470