# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
October 30, 2020
Lyle W. Cayce
Clerk

No. 19-10345

In re: Orlando Cordia Hall,

*Movant.*

---

Motion for an order authorizing
the United States District Court for the
Northern District of Texas to consider
a successive 28 U.S.C. § 2255 application

---

Before Dennis, Ho, and Oldham, *Circuit Judges*.

James C. Ho, *Circuit Judge*:

Over two decades ago, Orlando Cordia Hall and his conspirators kidnapped and then repeatedly raped a 16-year-old high school student. They then took turns beating her with a shovel, before covering her with gasoline and burying her alive. A jury convicted Hall of four federal crimes and sentenced him to death. His convictions have been repeatedly and unanimously upheld on appeal, both on direct review and in two federal habeas petitions. He now seeks authorization to file a third federal habeas petition.

Among his four convictions, Hall was sentenced to death for the crime of kidnapping resulting in death. He does not challenge that conviction here, however. Instead, he challenges his conviction under 18 U.S.C. § 924(c) for carrying a firearm during a crime of violence. He argues, counterintuitively,

that kidnapping resulting in death is somehow not a proper predicate "crime of violence" to support a § 924(c) conviction. We disagree.

There are two ways for the Government to establish a "crime of violence" under 18 U.S.C. § 924(c)(3). A "crime of violence" includes any felony that either (A) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (commonly known as the "elements" clause), or (B) "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (commonly known as the "residual" clause).

The Supreme Court recently held the residual clause to be unconstitutionally vague in *Davis v. United States*, 139 S. Ct. 2319 (2019). So Hall hopes to challenge his § 924(c)(3) conviction by asking this court to apply *Davis* retroactively to his case. Because this is a successive federal habeas petition, however, he must show (among other things) that *Davis* has been "*made retroactive* to cases on collateral review *by the Supreme Court*." 28 U.S.C. § 2255(h)(2) (emphasis added).

There is no need to reach the residual clause issue, because as we shall explain, kidnapping resulting in death plainly satisfies the elements clause of § 924(c)(3). In doing so, however, we observe that he may not be entitled to relief under the residual clause either. We acknowledge that, according to five of our sister circuits, *Davis* was "made retroactive . . . by the Supreme Court" through its previous ruling in *Welch v. United States*, 136 S. Ct. 1257 (2016). But we are not so sure. The Government did not contest the issue

in any of those circuits, thus depriving those circuits of adversarial process.[1] Moreover, at least seven members of the federal judiciary—three of our colleagues and four Justices of the Supreme Court—have made clear that rulings such as *Davis* are not automatically retroactive, and thus must be made retroactive by the Supreme Court in a future case to comply with provisions such as 28 U.S.C. § 2255(h)(2).

We do not ultimately reach the residual clause issue, however, because we conclude that kidnapping resulting in death satisfies the elements clause of § 924(c)(3). Accordingly, we deny Hall authorization to proceed on this successive habeas petition.

## I.

Hall's conspirators violently kidnapped a 16-year-old high school student, Lisa Rene, inside her apartment. *United States v. Hall*, 152 F.3d 381, 389 (5th Cir. 1998). They tackled and dragged Rene to a car, where Hall was waiting and where he raped her. Hall and his conspirators then took Rene from Arlington, Texas to Pine Bluff, Arkansas. *Id.*

The next day, Hall and his conspirators rented a motel room, where they tied their victim to a chair and raped her repeatedly. *Id.* Hall and at least one conspirator were armed with handguns. *Id.* One of the conspirators decided that Rene "kn[e]w too much," and so they went to Byrd Lake Park to dig a grave. *Id.* One day later, Hall and his conspirators blindfolded Rene and took her to the grave site. *Id.* at 390. There, they beat her over the head

---

[1] Nor did the Government contest the issue before our court. So we appointed *amicus curiae* here to present the opposing view—just as the Supreme Court did in *Welch*. Notably, the Government made clear during oral argument that it had no institutional objection to the contention by *amicus* that *Davis* is not retroactive for purposes of 28 U.S.C. § 2255(h)(2).

We thank *amicus curiae* for his excellent brief and oral argument.

with a shovel. *Id.* She screamed and tried to escape, but they caught her and took turns beating her with a shovel. *Id.* One of the conspirators covered Rene in gasoline and they then buried her alive. *Id.*

Within a week, Hall and his conspirators were arrested and charged with Lisa Rene's kidnapping resulting in death. *Id.* Hall was convicted of four crimes: kidnapping resulting in death (death sentence), conspiracy to commit kidnapping (life imprisonment), traveling interstate to distribute drugs (sixty months served concurrently with the life sentence), and carrying a firearm during a crime of violence (sixty months to be served consecutively to the other sentences). *Id.*

Hall's trial and convictions occurred in 1995, and he brought his first § 2255 motion in 2002. *Hall v. United States*, 2004 WL 1908242, at *1 (N.D. Tex. Aug. 24, 2004). The district court denied Hall's motion, and our court denied his request for a certificate of appealability. *United States v. Hall*, 455 F.3d 508 (5th Cir. 2006). We also denied Hall's 2016 motion to file a second habeas petition. *In re Hall*, No. 16-10670, slip op. at *3 (5th Cir. June 20, 2016).

Hall now seeks authorization to file a third habeas petition under 28 U.S.C. § 2255 to challenge his yet-unserved sixty-month sentence for carrying and using a firearm during a crime of violence. He argues that *Davis v. United States*, 139 S. Ct. 2319 (2019), which set aside the residual clause of § 924(c)(3), requires that his conviction for carrying a firearm during a crime of violence also be set aside—and that vacatur of his § 924(c) conviction would somehow require vacatur of his death sentence as well. As we shall demonstrate, however, *Davis* left intact the elements clause of § 924(c), and the crime of kidnapping resulting in death falls within the elements clause.

## II.

To satisfy the elements clause, a crime of violence must have as a required element "the use . . . of physical force." 18 U.S.C. § 924(c)(3)(A). The Supreme Court has defined "physical force" in this context to mean "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). And "force" includes "direct" and "indirect force," as well as "knowing or reckless conduct." *United States v. Reyes-Contreras*, 910 F.3d 169, 182–83 (5th Cir. 2018) (en banc).

Courts use the categorical approach to determine whether an offense fits within § 924's elements clause. *See*, *e.g.*, *id.* at 174. That "requires us first to identify the crime of conviction." *Id.* Courts must "'look only to the statutory definitions'—*i.e.*, the elements—of [an offense], and not 'to the particular facts underlying those convictions.'" *Descamps v. United States*, 570 U.S. 254, 261 (2013) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). Elements are the parts of a crime that the "prosecution must prove to sustain a conviction." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (quoting BLACK'S LAW DICTIONARY 634 (10th ed. 2014)).

When a statute lists multiple elements of conviction in the alternative, it is "divisible" into different offenses. *Id.* at 2249. To determine which offense formed the basis for the conviction, courts look to the trial record, "including *charging documents*, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and *jury instructions and verdict forms*"—a process known as the "modified categorical approach." *Johnson*, 559 U.S. at 144 (emphases added). *See also Shepard v. United States*, 544 U.S. 13 (2005).

The federal kidnapping resulting in death provision involves different elements of conviction from the general federal crime of kidnapping—

namely, the additional requirement that "the death of [a] person results"—and triggers an enhanced penalty. 18 U.S.C. § 1201(a). Accordingly, we conclude that kidnapping resulting in death is a different offense than generic kidnapping. *See*, *e.g.*, *Burrage v. United States*, 571 U.S. 204, 210 (2014) ("Because the 'death results' enhancement increased the minimum and maximum sentences to which Burrage was exposed, it is an element."); *United States v. Ruiz-Hernandez*, 890 F.3d 202, 210 (5th Cir. 2018) (similar).

Kidnapping resulting in death has as an element "the use . . . of physical force" as required under 18 U.S.C. § 924(c)(3)(A). We note that the Eighth Circuit recently reached the same conclusion. *See United States v. Ross*, 969 F.3d 829, 839 (8th Cir. 2020) ("Because the offense of kidnapping resulting in death has as an element the use of force, it is a crime of violence under § 924(c)."). And for good reason.

The "use of force" is not limited to the intentional or knowing use of force—it also includes conduct that recklessly disregards the risk of injury to another person. *See, e.g.*, *Voisine v. United States*, 136 S. Ct. 2272, 2279 (2016) ("[T]he word 'use' does not demand that the person applying force have the purpose or practical certainty that it will cause harm, as compared with the understanding that it is substantially likely to do so. . . . [T]hat word is indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct."); *Reyes-Contreras*, 910 F.3d at 183 ("[T]he 'use of force' does not require intent because it can include knowing or reckless conduct.").

This principle should decide this case, for it seems obvious that the act of kidnapping, and especially kidnapping *resulting in death*, necessarily contemplates the reckless disregard of the risk of serious injury to the victim. Judge Colloton put the point well, when he stated: "Reckless disregard for

human life is *inherent* in the commission of felonies such as robbery and kidnapping that carry a grave risk of death." *Ross*, 969 F.3d at 839 (emphasis added). After all, "intentional kidnapping necessarily involves 'a deliberate decision to endanger another' that amounts to recklessness." *Id.* (quoting *Voisine*, 136 S. Ct. at 2279)). So "[w]here a perpetrator intentionally kidnaps a victim, and the kidnapping results in the victim's death, the perpetrator's mental state is sufficient to show that he necessarily 'used' force against the victim." *Id.*

We acknowledge that the Eighth Circuit decision was not unanimous. As the dissent there acknowledged, "[s]hooting someone multiple times in the course of a kidnapping sure sounds like a 'crime of violence.'" *Id.* at 845 (Stras, J., dissenting). But "[s]uppose that an individual gets in a car with a person impersonating an Uber driver and dies, either in a tragic car accident caused by the driver's recklessness or by jumping out after discovering the driver's true identity. Both scenarios qualify as kidnapping by 'inveigle[ment]' or 'decoy[ ],' and each 'results' in death. And critically, neither involves the use of force." *Id.* (citations omitted).

But we disagree that these hypothetical scenarios do not involve the use of force. We agree instead with Judge Colloton, who responds: "If a kidnapper inveigles a victim into his car and then causes her death by recklessly crashing the vehicle or prompting the victim to flee from the speeding car, the kidnapper's offense involves the use of force against the victim." *Id.* at 839. As he puts it, "[f]orce is necessary to kill the victim when she slams into the windshield or the pavement." *Id.* And "[t]he application of force is not an accident: when the perpetrator intentionally deceives and kidnaps the victim, he makes a deliberate decision to endanger her and acts with reckless disregard for her safety." *Id.* Put simply, the defendant uses force in keeping the victim against her will—and that act undoubtedly creates a serious risk that she will die trying to break free.

So we have no difficulty concluding that kidnapping resulting in death entails the kind of reckless conduct contemplated by the "use of force" required under 18 U.S.C. § 924(c)(3)(A). Nor do we see any real risk that the federal kidnapping statute could be read to cover conduct short of recklessness. Indeed, every case within our circuit involving the crime of kidnapping resulting in death has involved at least reckless conduct. *See, e.g.*, *United States v. Webster*, 162 F.3d 308, 322 (5th Cir. 1998); *United States v. Whitmore*, 386 F. App'x 464, 467–68 (5th Cir. 2010). So even if there were such a thing as "negligent" kidnapping—even if there were "a theoretical possibility" that a defendant could commit the crime of kidnapping resulting in death without knowingly, intentionally, or even recklessly employing physical force—there is no "realistic probability . . . that the [Government] would apply [the] statute to [such] conduct." *United States v. Castillo-Rivera*, 853 F.3d 218, 222 (5th Cir. 2017) (en banc) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

This conclusion is further reinforced by the fact that Hall was charged with *the capital crime* of kidnapping resulting in death. As in any federal capital case, Hall's charging documents expressly incorporated the federal capital statute. *See* 18 U.S.C. § 3591(a)(2); *see also Hall*, 152 F.3d at 419 (noting that a "superseding indictment containing capital charges was returned on November 22, 1994"). So did the jury instructions. The trial judge instructed jurors that they "must as a preliminary matter unanimously agree that the government has proven beyond a reasonable doubt that the defendant, Orlando Cordia Hall . . . intentionally killed the victim" under 18 U.S.C. § 3591(a)(2). *United States v. Hall*, 4:94-CR-121-Y-2, Dkt. 458 at 4–5 (N.D. Tex., Nov. 3, 1995).

Any offense that incorporates the elements of 18 U.S.C. § 3591(a)(2) is a crime of violence. After all, that statute makes clear that no federal capital sentence shall be issued unless it is "determined beyond a reasonable doubt"

that the defendant "(A) intentionally killed the victim; (B) intentionally inflicted serious bodily injury that resulted in the death of the victim; (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act." 18 U.S.C. § 3591(a)(2). Any one of these provisions satisfies the elements clause of 18 U.S.C. § 924(c).

In sum, all federal capital charges must incorporate the required elements of § 3591(a)(2), and therefore necessarily satisfy the elements clause of § 924(c). So we have no difficulty concluding that capital kidnapping resulting in death is a crime of violence under the elements clause.

Hall's challenge to his § 924(c) conviction therefore fails. *Davis* set aside § 924(c)(3)'s residual clause as unconstitutionally vague. *Davis*, 139 S. Ct. at 2324. But it had no effect on convictions under the elements clause.

## III.

We uphold Hall's § 924(c) conviction under the elements clause. Moreover, it is far from clear that Hall would be entitled to relief under the residual clause in any event.

We acknowledge that five of our sister circuits have held *Davis* retroactively applicable to successive habeas petitions, notwithstanding the express statutory requirement that the new rule of constitutional law has been "*made retroactive* to cases on collateral review *by the Supreme Court*." 28 U.S.C. § 2255(h)(2) (emphasis added). *See King v. United States*, 965 F.3d

60, 64 (1st Cir. 2020); *In re Mullins*, 942 F.3d 975, 979 (10th Cir. 2019); *In re Matthews*, 934 F.3d 296, 301 (3rd Cir. 2019); *In re Hammoud*, 931 F.3d 1032, 1039 (11th Cir. 2019); *see also In re Franklin*, 950 F.3d 909, 910 (6th Cir. 2020) ("*Lower courts* may determine *on their own* the retroactivity of new rules when '[m]ultiple cases . . . necessarily dictate the retroactivity of the new rule.'") (emphasis added) (quoting *Tyler v. Cain*, 533 U.S. 656, 664 (2001)).

But none of those courts received adversarial briefing on the issue. *Cf. Lankford v. Ohio*, 500 U.S. 110, 127 (1991) (recognizing "the critical role that the adversary process plays in our system of justice"). What's more, in *In re Hammoud*, 931 F.3d at 1039, the first case to assume *Davis*'s retroactivity, the Government never even mentioned *Davis*. And in subsequent cases, the Government has simply followed *Hammoud*.

Adversarial briefing might very well have altered the outcome in those other circuits. In fact, at least seven respected jurists have concluded that decisions like *Davis* are *not* automatically retroactive—and thus must be made retroactive by the Supreme Court in a future case to satisfy provisions such as 28 U.S.C. § 2255(h)(2). In *Pisciotta v. Harmon*, 748 F. App'x 634 (5th Cir. 2019) (per curiam), three of our colleagues rejected the argument that *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), is by itself retroactively available on collateral review. *See Pisciotta*, 748 F. App'x at 635 ("*Dimaya* did not address whether its holding might apply retroactively on collateral review"). There is no principled distinction between *Dimaya* and *Davis*, and Hall does not claim otherwise. Similarly, four Justices indicated (and none of their colleagues disagreed) that it would take a future ruling to determine whether *Davis* is retroactive, stating: "[W]ho knows whether the ruling [in

*Davis*] will be retroactive?" *Davis*, 139 S. Ct. at 2354 (Kavanaugh, J., dissenting).[2]

If these seven jurists are right, then their conclusion presents yet another fatal flaw to Hall's successive petition. After all, his successive petition cannot proceed unless *Davis* has been "made retroactive . . . by the Supreme Court." 28 U.S.C. § 2255(h)(2). To be sure, the Supreme Court has made clear in dicta that the "right combination of holdings" can make a holding retroactive. *Tyler*, 533 U.S. at 666. But those prior holdings must "necessarily dictate" retroactivity of the new rule. *Id.*

A reasonable jurist could easily read *Welch* and conclude that *Davis*'s retroactivity *logically follows*. But that is different from saying that *Welch* *necessarily dictates* that outcome. A reasonable jurist might well predict that the Supreme Court would make *Davis* retroactive if asked. But a successive habeas petition may proceed only if *Davis* has been "made retroactive . . . by the Supreme Court," 28 U.S.C. § 2255(h)(2)—not if everyone merely agrees the Supreme Court *will* make it retroactive. If it takes further legal analysis to decide the retroactivity question—as at least seven respected members of the federal judiciary have concluded—then the requirements of 28 U.S.C. § 2255(h)(2) have not been met.

But this issue will remain for another day. Hall's § 924(c) conviction falls within the elements clause. We deny Hall authorization to proceed on his successive habeas petition for that reason.

---

[2] We recently relied on the separate writings of various justices to help demonstrate that a ruling has not been made retroactive by the Supreme Court. *See In re Sharp*, 969 F.3d 527, 528 (5th Cir. 2020) (per curiam) (citing *Ramos v. Louisiana*, 140 S. Ct. 1390, 1407 (2020) (plurality opinion); *id.* at 1420 (Kavanaugh, J., concurring in part); *id.* at 1348 (Alito, J., dissenting)).

## IV.

The dissent accuses us of committing a "host of grievous errors" in this "federal death penalty case."

But this proceeding has *nothing* to do with Hall's death sentence. Hall was convicted and sentenced to death for the crime of federal kidnapping resulting in death under 18 U.S.C. § 1201(a). And notably, Hall does not question the validity of that conviction, or the resulting sentence of death, anywhere in this proceeding. Instead, Hall brings this third petition to challenge only his separate conviction under 18 U.S.C. § 924(c) for carrying a firearm during a crime of violence, for which he was separately sentenced to 60 months imprisonment.

Nor do we see any error in that 60-month sentence. To begin with, as we explain, that 60-month sentence is fully supported under the elements clause of § 924(c). In fact, we adopt precisely the same approach as the Eighth Circuit in concluding that kidnapping resulting in death inherently involves conduct in reckless disregard to human life, and thereby satisfies the elements clause of § 924(c). *See Ross*, 969 F.3d at 839. And we follow our own en banc precedent in concluding that there is no "realistic probability" that a defendant could be prosecuted for kidnapping resulting in death based on anything less than reckless conduct. *See Castillo-Rivera*, 853 F.3d at 222. The dissent would simply prefer that we ignore circuit decisions on both of these points.

The dissent also criticizes our reliance on 18 U.S.C. § 3591(a)(2), the federal death penalty statute. Specifically, the dissent accuses us of misreading § 3591(a)(2)(C)—claiming that that provision requires only participation in "an act," and not participation in "an act of violence." But that ignores nearly the entire text of § 3591(a)(2)(C). That provision authorizes the death penalty only if the defendant "intentionally participated

in an act, *contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act*." 18 U.S.C. § 3591(a)(2)(C) (emphasis added). Read in full, § 3591(a)(2)(C) plainly involves the use of force. The dissent claims that its atextual reading of § 3591(a)(2)(C) is somehow supported by our decision in *United States v. Williams*, 610 F.3d 271 (5th Cir. 2010). It is not—indeed, *Williams* does not even involve § 3591(a)(2)(C). *See id.* at 284 ("In Williams's case, the sole threshold intent submitted to the jury during the eligibility phase was that contained in 18 U.S.C. § 3591(a)(2)(D).").[3]

And as for the dissent's criticism of our discussion of the residual clause, it ignores the fact that we are simply agreeing with seven respected members of the judiciary that decisions like *Davis* are not automatically retroactive and therefore must be made retroactive by the Supreme Court in

---

[3] The dissent also implies that it is somehow improper for us to decide this case based on the elements clause. It observes in passing that "Hall was charged, tried, and convicted by a jury that was instructed on the definition of that residual clause"— implying (without explanation) that the issue is somehow waived, and that we therefore may not deny authorization for Hall's third habeas petition based on the elements clause. There are at least two problems with this theory. First, the dissent neglects to mention that the trial court instructed the jury on the elements clause as well as the residual clause. To quote the court's instructions to the jury: "The term 'crime of violence' means an offense that is a felony and—(A) has as an element the use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *United States v. Hall*, 4:94-CR-121-Y-2, Dkt. 444 at 10 (N.D. Tex. Oct. 31, 1995). Second, even if Hall was originally convicted based on the residual clause, we have held that any such error is "harmless" so long as the conviction can be upheld under the elements clause. *See, e.g.*, *United States v. Griffin*, 946 F.3d 759, 761 (5th Cir. 2020) (although "the district court recognized that it relied on the residual clause at Griffin's 2008 sentencing . . . reliance on the residual clause was harmless if Griffin's three convictions also satisfied the other, still-valid definitions of 'violent felony.'").

a future case to satisfy 28 U.S.C. § 2255(h)(2). *See Pisciotta*, 748 F. App'x at 635; *Davis*, 139 S. Ct. at 2354 (Kavanaugh, J., dissenting). Instead, the dissent criticizes us for neglecting our decision in *In re Sparks*, 657 F.3d 258, 261–62 (5th Cir. 2011). But *Sparks* confirms our point here—that to satisfy 28 U.S.C. § 2255(h)(2), "multiple holdings" taken together must "necessarily dictate" that a new rule announced by the Supreme Court applies retroactively. *Id.* at 261. Moreover, nothing in *Sparks* allows us to ignore the conclusion of seven respected jurists that decisions like *Davis* and *Dimaya* have *not* been previously made retroactive by the Supreme Court.

* * *

It has been over two decades since Hall was sentenced to death for the brutal killing of an innocent 16-year-old. His conviction has been repeatedly affirmed on appeal, under both direct review and following multiple habeas petitions. It is time—indeed, long past time—for these proceedings to end. Hall's request for authorization to proceed on his successive habeas petition is denied.

JAMES L. DENNIS, *Circuit Judge*, dissenting:

In this federal death penalty case, the majority commits a host of grievous errors to arrive at its conclusion that movant Orlando Hall fails to satisfy the standards for authorization to file a successive habeas petition. First, the majority decides that the 18 U.S.C. § 924(c) conviction that Hall challenges as unconstitutional can be sustained because, in its view, Hall's predicate crime of violence (COV) for kidnapping "plainly satisfies" the elements clause of § 924(c). Thus, the majority decides that, despite § 924(c)'s residual clause having been declared unconstitutional in *United States v. Davis*, 139 S. Ct. 2319 (2019), and despite the fact that Hall was charged, tried, and convicted by a jury that was instructed on the definition of that residual clause, that Hall's trial and conviction could not possibly have been affected by the invalidity of § 924(c)'s residual clause. Lacking any on-point precedent for denying Hall's claim, the majority reaches its erroneous conclusion only by concocting a far more onerous requirement for authorization than the statutorily-mandated prima facie standard and thus erects an unprecedented barrier to authorization. Second, after arriving at its unjustified decision, the majority reels out several pages of dicta that wrongfully and needlessly cast doubt on the unanimous holdings of all four of our sister circuits that have decided that the rule announced in *Davis* applies retroactively so as to authorize successive habeas petitions. In doing so, the majority advances an eccentric reading of 28 U.S.C. § 2255(h)(2), the provision governing the requirements for authorization, that is contrary not only to our well-established circuit precedent but also to the holdings of every other circuit court.

Because I would follow binding circuit precedent in this capital case and join four other federal courts of appeal in holding that *Davis* applies retroactively to successive habeas petitions, and because Hall has made "a sufficient showing of possible merit" that he can benefit from that decision,

*Reyes-Requena v. United States*, 243 F.3d 893, 899 (5th Cir. 2001) (internal quotation marks omitted), I would grant his motion for authorization. The majority errs in holding otherwise, so I must respectfully dissent.

## I.

To receive authorization to file a successive habeas petition, Hall must make a "prima facie" showing that his claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. §§ 2244(b)(3)(C), 2255(h)(2). A prima facie showing is "simply a sufficient showing of possible merit to warrant a fuller exploration by the district court." *Reyes-Requena*, 243 F.3d at 899. Hall claims that his conviction for carrying a firearm during a COV is invalid under the Supreme Court's recent decision in *Davis*, which declared void for vagueness § 924(c)'s "residual clause." Having identified *Davis* as the case on which he relies, the first question is whether that decision has been "made retroactive to cases on collateral review by the Supreme Court." § 2255(h)(2).

In *Teague v. Lane*, 489 U.S. 288, 311 (1989), the Supreme Court announced two types of rules that should be applied retroactively to cases on collateral review: substantive rules of constitutional law (the first *Teague* exception) and watershed rules of criminal procedure (the second *Teague* exception). This case implicates only the first *Teague* exception.

"Substantive rules . . . set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose." *Montgomery v. Louisiana*, 136 S. Ct.718, 729 (2016); *see also Teague*, 489 U.S. at 311 (explaining that substantive rules are those that "place[] certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." (internal quotation marks omitted)). And "[c]ourts must give retroactive

effect to new substantive rules of criminal law." *Montgomery*, 136 S. Ct. at 728, 736 (holding that *Miller v. Alabama*, 567 U.S. 460 (2012), which held as unconstitutional mandatory life imprisonment without parole for juvenile offenders, announced a new substantive rule of constitutional law that must be given retroactive effect).

In *United States v. Reece*, 938 F.3d 630, 635 (5th Cir. 2019), we held that the Supreme Court's decision in *Davis* was substantive and thus applied retroactively to a first habeas petition. "[T]he rule announced in *Davis* meets the standard for a new substantive rule," we reasoned, because its invalidation of § 924(c)'s residual clause "narrow[ed] the scope of conduct for which punishment is now available."

Our conclusion was reinforced by the Supreme Court's twin decisions in *Johnson v. United States*, 135 S. Ct. 2551 (2015), and *Welch v. United States*, 136 S. Ct. 1257 (2016). In *Johnson*, the Court declared that the residual clause of the Armed Career Criminal Act (ACCA)—which is worded similarly to the residual clause in § 924(c)—was void for vagueness. 135 S. Ct. at 2563. Then, in *Welch*, the Court held that *Johnson* established a substantive rule, because it limited the "substantive reach of the A[CCA], altering the range of conduct or the class of persons that the Act punishes." *Welch*, 136 S. Ct. at 1265 (cleaned up). Because *Johnson* announced a substantive rule, the *Welch* Court held that it "has retroactive effect . . . in cases on collateral review." *Id.*

*Davis*, we have recognized, "operates in much the same way" as *Johnson*. *Reece*, 938 F.3d at 635. "[T]he residual clause [of §924(c)] allows for punishment of certain offenses that the elements clause cannot otherwise reach. Consequently, the residual clause's invalidation narrows the scope of conduct for which punishment is now available." *Id.* And because *Davis*,

like *Johnson*, narrows the scope of punishable conduct, it too is "a substantive decision and so has retroactive effect." *Welch*, 136 S. Ct. at 1265.

As noted, *Reece* was decided within the initial habeas petition context, and therefore considered under 28 U.S.C. § 2255(f)(3) whether the right "recognized by the Supreme Court" in *Davis* had been "made retroactively applicable to cases on collateral review." § 2255(f)(3). Motions, like Hall's, for authorization to file a *successive* habeas petition are governed by 28 U.S.C. § 2255(h)(2); this provision contains slightly different statutory language from § 2255(f)(3), requiring that a movant rely on a "new rule of constitutional law, made retroactive to cases on collateral review *by the Supreme Court*." *Id.* § 2255(h)(2) (emphasis added). The question, then, becomes whether the Supreme Court has "made [*Davis*] retroactive." *Id.*

There are two ways the Court can make "a new rule . . . retroactive within the meaning of § 2255(h)(2) [:] (1) the Supreme Court itself must . . . expressly h[o]ld that the new rule is retroactive on collateral review, or (2) the Supreme Court's holdings in multiple cases . . . must necessarily dictate retroactivity of the new rule." *In re Hammoud*, 931 F.3d 1032, 1038–39 (11th Cir. 2019) (cleaned up) (quoting *Tyler v. Cain*, 533 U.S. 656, 666 (2001)).[4] Though the first possibility has not yet occurred with respect to *Davis*, I would conclude—like every other court that has considered this question—that *Davis*'s retroactivity is "necessarily dictate[d]" by the Court's holdings." *Tyler*, 533 U.S. at 666.

In her concurrence in *Tyler v. Cain*, Justice O'Connor employed a syllogism to demonstrate how, despite the absence of an express holding by the

---

[4] "Although *Tyler* was decided in the context of a successive petition filed by a state prisoner and interprets 28 U.S.C. § 2244(b)(2)(A), the decision applies with equal force to the identically worded § 2255(h)(2) standard." *In re Sparks,* 657 F.3d 258, 260 n.2 (5th Cir. 2011) (per curiam).

Court that a rule applies retroactively, "multiple holdings" taken together can "logically dictate the retroactivity of [a] new rule":

> if we hold in Case One that a particular type of rule applies retroactively to cases on collateral review and hold in Case Two that a given rule is of that particular type, then it necessarily follows that the given rule applies retroactively to cases on collateral review. In such circumstances, we can be said to have "made" the given rule retroactive to cases on collateral review.

*Id.* at 668-669 (O'Connor, J., concurring). Applying this syllogism, Justice O'Connor noted that the Court in *Teague* had determined that "a new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Id.* at 669 (quoting *Teague*, 489 U.S. at 307). *Teague*, then, was "Case One" in Justice O'Connor's syllogism. "When the Court holds as a new rule in a subsequent case"—a case following *Teague*—"that a particular species of primary, private individual conduct is beyond the power of the criminal lawmaking authority to proscribe, it *necessarily follows* that this Court has 'made' that new rule retroactive to cases on collateral review." *Id.* (emphasis added). In other words, after *Teague*, whenever the Supreme Court announces a substantive rule—that is, one that "places certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe," *Teague*, 489 U.S. at 307—that rule *necessarily* has been made retroactive by the Court.

In *In re Sparks*, 657 F.3d 258, 262 (5th Cir. 2011), we applied Justice O'Connor's logic in holding that a substantive rule set forth by the Supreme Court necessarily had been made retroactive by the Court. There, a juvenile non-homicide offender who had been sentenced to life imprisonment without the possibility of parole moved for authorization to file a successive § 2255 petition. *Sparks*, 657 F.3d at 259. He argued that his sentence was

unconstitutional under the Supreme Court's decision in *Graham v. Florida*, 560 U.S. 48 (2010), which barred life without parole for the movant's class. *Id.* at 260. We granted authorization, holding that *Graham* established a substantive rule and, consequently, applied retroactively. *Id.* at 261-62. The rule in *Graham*, we explained, fell under the first *Teague* exception, i.e., presented a substantive rule, because it "prohibit[ed] a certain category of punishment for a class of defendants because of their status or offense." *Id.* at 261 (quoting *Penry v. Lynaugh*, 492 U.S. 302, 330, *overruled on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002)). Under the retroactivity principles articulated by Justice O'Connor in *Tyler*, "the combined effect of the holding of *Graham* itself and the first *Teague* exception," was that the Supreme Court, "as a matter of logical necessity," had "made [*Graham*] retroactive on collateral review." *Id.* at 262. Put simply, *Teague*'s rule that substantive decisions apply retroactively plus *Graham*'s announcement of a substantive rule meant that the Court had "made" *Graham* retroactive within the meaning of § 2255(h)(2), even though it had not explicitly said so. *See id.*

As is evident, necessary to the decision in *Sparks* was application of Justice O'Connor's syllogism. *See id.* Because the use of that syllogism formed part of *Sparks*'s holding, we are bound to follow it as this case is indistinguishable from *Sparks* for retroactivity purposes. Applying Justice O'Connor's syllogism here, it is clear that *Davis* applies retroactively. Again, the first *Teague* exception (Case One) establishes that substantive rules necessarily apply retroactively. And *Davis* (Case Two) announces a substantive rule for the reasons set forth above. Therefore, *Davis* must apply retroactively to successive habeas petitions. *See Teague*, 489 U.S. at 307.

Conspicuously failing even to cite *Sparks*—despite the fact that both parties and appointed amicus discuss it repeatedly—the majority implies that the requirements for authorization under § 2255(h)(2) are met only if the Supreme Court has expressly held that a rule applies retroactively. As the

majority puts it, if any "further legal analysis" is required beyond mere application of a Supreme Court pronouncement that a rule applies retroactively, then § 2255(h)(2) is not satisfied. Maj. Op. at 11. That erroneous assertion cannot be squared with *Sparks*. Under the rule of orderliness, we are obliged to follow *Sparks* and, in turn, Justice O'Connor's concurrence in *Tyler*. Those teachings lead to the inescapable conclusion that *Davis* applies retroactively to successive habeas petitions.

This determination, moreover, accords with that reached by every federal court of appeals to have decided *Davis*'s retroactive application to successive habeas petitions. *See In re Mullins*, 942 F.3d 975 (10th Cir. 2019); *In re Matthews,* 934 F.3d 296 (3d Cir. 2019); *In re Hammoud*, 931 F.3d at 1038-39; *In re Franklin*, 950 F.3d 909 (6th Cir. 2020) (mem.). The Sixth, Tenth, and Eleventh Circuits all relied on *Tyler*'s instruction that the combination of multiple Supreme Court decisions can dictate retroactivity. *See In re Franklin*, 950 F.3d at 910-911; *In re Mullins*, 942 F.3d at 977-79; *In re Hammoud*, 931 F.3d at 1038-39. As the Sixth Circuit explained:

> The Supreme Court's decision in *Welch* . . . establishes the retroactivity of *Davis*. *Welch* explained that decisions announce a substantive rule and are thus retroactive when they alter the range of conduct . . . that the law punishes. That occurred in *Johnson v. United States* because it changed the substantive reach of the Armed Career Criminal Act. So too in *Davis*, where the Court narrowed § 924(c)(3) by concluding that its second clause was unconstitutional."

*In re Franklin*, 950 F.3d at 910–11 (cleaned up); *see also In re Mullins*, 942 F.3d at 979 ("Because *Davis* has the same limiting effect on the range of conduct or class of people punishable under § 924(c) that *Johnson* has with respect to the ACCA, *Welch* dictates that *Davis*—like *Johnson*— 'announced a substantive rule that has retroactive effect in cases on collateral review.'" (quoting *Welch*, 136 S. Ct. at 1268)). The reasoning of these courts clearly refutes the

majority's contention that *Davis*'s retroactivity is not necessarily dictated by *Welch*.

In light of the foregoing, it is unsurprising that the Government agrees with the analysis that *Davis* applies retroactively; any other position would be contrary to logic and binding circuit precedent. Of course, the Government's concession does not bind courts, but it is notable that other circuits have found such a concession sufficient reason alone to give a rule retroactive application. *See In re Matthews*, 934 F.3d at 301 (accepting the Government's concession of *Davis*'s retroactivity as sufficient to conclude for authorization purposes that the Supreme Court had made the case retroactive); *Woods v. United States*, 805 F.3d 1152, 1154 (8th Cir. 2015) (per curiam) ("Based on the government's concession [of the retroactivity of *Johnson*], we conclude that Woods has made a prima facie showing that his motion contains 'a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.'" (quoting § 2255(h)(2)).

Based on the reasons above, I conclude that *Davis* has been "made retroactive . . . by the Supreme Court." § 2255(h)(2). I proceed, then, to determine whether Hall can make "a sufficient showing of possible merit" that he can benefit from *Davis*. *Reyes-Requena*, 243 F.3d at 899.

## II.

Hall can receive authorization to file a successive habeas application if he "'makes a prima facie showing that [his] application satisfies the requirements of' [28 U.S.C.] § 2244(b)." *In re Salazar*, 443 F.3d 430, 431 (5th Cir. 2006) (per curiam) (quoting 28 U.S.C. § 2244(b)(3)(c)). Under 28 U.S.C. § 2244(b)(2), Hall must show that his "claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." In other words, Hall needs to make a prima facie showing that his claim relies on *Davis*. *See In re Morris*, 328 F.3d

739, 740 (5th Cir. 2003). Though *Davis* invalidated the residual clause of § 924(c), it left intact its elements clause, *see* 18 U.S.C. § 924(c)(3)(A). To benefit from *Davis*'s rule, then, Hall must make a prima facie showing that he was convicted under § 924(c)'s residual clause. As explained below, he meets this minimal standard. *See Reyes-Requena*, 243 F.3d at 899 (explaining that a "prima facie showing" is "simply a sufficient showing of possible merit to warrant a fuller exploration by the district court").

Under the modified categorical approach, I agree with the majority that Hall was convicted of kidnapping resulting in death, an offense distinct from generic kidnapping. *See* 18 U.S.C. § 1201(a); Maj. Op. at 6. But I depart from its conclusion that this conviction means that Hall is precluded from benefiting from *Davis*. First, § 1201(a), which defines the federal kidnapping offense, criminalizes conduct that does not have "as an element the use, attempted use, or threatened use of physical force" and thus does not satisfy § 924(c)'s elements clause. § 924(c)(3)(A). *See United States v. Walker*, 934 F.3d 375, 379 (4th Cir. 2019) ("Accordingly, because . . . 18 U.S.C. § 1201(a) may be committed without violence, kidnapping clearly does not categorically qualify as a crime of violence under the force [or elements] clause, § 924(c)(3)(A)."); *cf. United States v. Taylor*, 848 F.3d 476, 491 (1st Cir. 2017) (noting that "[t]he government admit[ted] that kidnapping" under § 1201(a) "cannot" qualify as a crime of violence under the force clause); *Knight v. United States*, 936 F.3d 495, 497 (6th Cir. 2019) ("The government concedes that under *Davis* kidnapping in violation of 18 U.S.C. § 1201(a) is not a 'crime of violence' and thus Knight's conviction under § 924(c) for using a firearm during and in relation to kidnapping must be vacated."); *BLACK'S LAW DICTIONARY* (10th ed. 2014) (defining "inveigle" as "[t]o lure or entice through deceit or insincerity"). Section 1201(a) kidnapping, then, is not categorically a COV under § 924(c)'s elements clause.

Second, the majority incorrectly contends that kidnapping resulting in death, as distinguished from kidnapping simpliciter, necessarily satisfies the elements clause. The "death results" portion of § 1201(a) does not contain a *mens rea* requirement. § 1201(a); *see Burrage v. United States*, 571 U.S. 204, 210-14 (2014); *United States v. Hayes*, 589 F.2d 811, 821 (5th Cir. 1979) (discussing the "death results" language of 18 U.S.C. § 242, which criminalizes deprivations of federal rights under color of law, and stating that "no matter how you slice it, if death results does not mean if death was intended" (internal quotation marks omitted)). But "[t]he key phrase in" the elements clause of 18 U.S.C. § 16(a)—a criminal provision identical in wording to § 924(c)'s elements clause and which defines a COV to include "the use . . . of physical force against the person or property of another—most naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) (alterations in original) (internal quotation marks omitted). Put another way, the kidnapping resulting in death offense simply requires but-for causation between the kidnapping and a death, and a death may result from a kidnapping without force or the threat thereof ever being applied. It makes sense, then, that this court has never held that kidnapping resulting in death necessarily involves the use, attempted use, or threatened use of physical force. In short, it is conceivable that a particular kidnapping by inveiglement resulting in unintended death might not satisfy the elements clause of § 924(c) but instead could be found to constitute a COV under § 924(c)'s residual clause, which the Supreme Court declared unconstitutionally vague in *Davis*.

In holding otherwise, the majority leans heavily on the decision of a divided panel of the Eighth Circuit in *United States v. Ross*, 969 F.3d 829, 838-39 (8th Cir. 2020). There, the Eighth Circuit held that kidnapping resulting in death under § 1201(a) necessarily involves the use of force because the act of kidnapping involves, at a minimum, reckless disregard for human life and

when the kidnapping results in a victim's death, "the perpetrator's mental state is sufficient to show that he necessarily 'used' force against the victim." *Ross*, 969 F.3d at 839. This faulty reasoning does not withstand close scrutiny. As established, § 1201(a) kidnapping, though it may require at least the mental state of recklessness, does not necessitate the use of force. For the Eighth Circuit's and the majority's conclusion to stand, then, the "death results" element of a kidnapping resulting in death must require a forceful act. But the application of force requires "volitional conduct." *Voisine v. United States*, 136 S. Ct. 2272, 2279 (2016) (actor must have the "mental state of intention, knowledge, or recklessness" to "use force"); *see also Leocal*, 543 U.S. at 9. By contrast, the death results element under § 1201(a), as the Eighth Circuit majority acknowledged, has no *mens rea* requirement. *See Ross*, 969 F.3d at 839. In short, the death results element simply requires that kidnapping constitute a but-for cause of a death, *see Burrage*, 571 U.S. at 210-14, and therefore could be satisfied without the use of force.

The dissent in *Ross* aptly illustrated this point: "Suppose that an individual gets in a car with a person impersonating an Uber driver and dies . . . in a tragic car accident caused by . . . by jumping out after discovering the driver's true identity." See 969 F.3d at 845 (Stras, J., concurring in the judgment and dissenting in part) (internal citations omitted). This scenario "qualif[ies] as kidnapping by 'inveiglement'" and "'results' in death. And critically," it does not "involve[] the use of force." Id. (internal citation omitted). Failing to appreciate this logic, the majority here accepts fully the Eighth Circuit majority's reply that "[f]orce is necessary to kill the victim when she slams into the . . . pavement" and that this "application of force is not an accident" because the perpetrator acts with reckless disregard for the victim's safety when he intentionally kidnaps her. Id. That the act of kidnapping—which, again, does not require force—may involve reckless disregard for another's safety is no answer to the question of whether force was

used when a victim dies during or after a kidnapping. Inveiglement clearly is not per se a "forceful act[], and nowhere does the court identify any other possible use of force, direct or indirect, by the perpetrator in" the scenario described. 969 F.3d at 845 n.3 (Stras, J., concurring in the judgment and dissenting in part). Thus, the majority's suggestion that kidnapping resulting in death under § 1201(a) requires force is error.

Even though it is entirely possible that a kidnapping resulting in death could be committed without the use of physical force—and thus is not restricted to the elements clause—this is not enough to constitute a prima facie showing, according to the majority. Instead, it holds—rather extraordinarily—that Hall must show a "realistic probability . . . that the [Government] would apply [the] statute to [such] conduct." Maj. Op. at 8. (quoting *United States v. Castillo-Rivera*, 853 F.3d 218, 222 (5th Cir. 2017) (en banc)). The "realistic probability" test is familiar, but not in the context in which the majority deploys it. The realistic probability test is a judge-made rule designed by a badly fractured court of appeals to legalistically but illogically fit more state offenses into federal generic offense definitions to enhance punishments. *See Castillo-Rivera*, 853 F.3d at 222. It ill-fits the end for which it was conceived and has absolutely no place in judging a prima facie showing or a showing of possible merit to warrant a fuller exploration by the district court under §2244(b)(3)(C) as incorporated by § 2255's requirements for second or successive motions for authorization to apply for a writ of habeas corpus. In equating the judicially-created realistic probability test with the far less demanding, statutorily-mandated prima facie standard—a standard we have consistently described as requiring merely a "showing of possible merit," *see, e.g.*, *Reyes-Requena*, 243 F.3d at 899—the majority improperly ratchets up the burden on the movant.

The error in the majority's importation of the realistic probability standard into the habeas context is underscored by our limited

"gatekeeping" role in ruling on motions for authorization. *See United States v. Wiese*, 896 F.3d 720, 723 (5th Cir. 2018). If we find that the prima facie standard for authorization is met, then the petitioner passes through only the first of two jurisdictional gates. The petitioner must still clear a second gate by "*actually prov*[*ing*] at the district court level that the relief he seeks relies" on a new rule. *Id.* (emphasis added). If he cannot, the district court lacks jurisdiction and "must dismiss the motion without reaching the merits." *Id.* We recently held that to prove reliance on a new rule that invalidates a residual clause—that is, that a petitioner's conviction rests on a now-invalid provision—the prisoner must show by a *preponderance of the evidence* in the *district court* that he was indeed convicted under the residual clause. *See United States v. Clay*, 921 F.3d 550, 558–59 (5th Cir. 2019). Nowhere did we mention that a petitioner must have already shown a realistic probability that his conviction fell under the residual clause or imply that any showing beyond the statutorily-required prima facie standard was needed for authorization.

Last, the majority baldly asserts that because Hall was charged with the capital crime of kidnapping resulting in death, his offense necessarily involved force and therefore is a predicate COV under § 924(c)'s elements clause. In other words, the majority contends that all death-penalty eligible offenses under the Federal Death Penalty Act, 18 U.S.C. § 3591, require the use of force. Notably, the majority cites no precedent whatsoever for this proposition. And the federal capital punishment statute distinguishes between "participat[ing] in an act," § 3591(a)(2)(C), and "engag[ing] in an act *of violence*," § 3591(a)(2)(D) (emphasis added). We previously examined this language in *United States v. Williams*, 610 F.3d 271, 284-88 (5th Cir. 2010), and ruled that an "act of violence"—as expressly distinguished from "an act"—necessarily requires "physical force." The reasoning of *Williams*, then, indicates that § 3591(a)(2)(C) could well be satisfied without the use of physical force, strongly undermining the majority's *ipse dixit* that all federal

capital offenses necessarily satisfy § 924(c)'s elements clause. Hall has made the minimal prima facie showing that his predicate COV satisfies solely the residual clause, and it should be left for the district court to determine by a preponderance of the evidence whether in fact his § 924(c) conviction can be sustained.

* * *

For these reasons, I would hold that Hall has made a "sufficient showing of possible merit to warrant a fuller exploration by the district court" and would therefore grant him authorization to file a successive habeas petition. *Reyes-Requena*, 243 F.3d at 899. Because the majority errs in denying authorization, I respectfully dissent.



**A True Copy**
**Certified Oct 30, 2020**

*Tyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**